UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA

Pensacola ~~Roothaway~~ _____ DIVISION

## CIVIL RIGHTS COMPLAINT FORM
### TO BE USED BY PRISONERS IN ACTIONS UNDER 42 U.S.C. § 1983

Bomerio L. Walker ,

Inmate # 108533 .

(Enter full name of Plaintiff)

vs.

CASE NO: 5:12Cv340 RS/GRJ

(To be assigned by Clerk)

Secretary Kenneth Tucker ,

Warden C. Halley ,

Asst. Warden S.D. Sloan ,

~~Officer Officer~~ ,

Captain Weeks .

(Enter name and title of each Defendant.

If additional space is required, use the

blank area below and directly to the right.)

~~Officer Officer~~,
Leutenant Jason McCommas,
Sergeant Timothy Dawson,
Sergeant Kenneth Stephens,
Tameka Jackson,
Alex Richards,
Brian Thomas,
Officer Easton,
Lawrence Young

## ANSWER ALL QUESTIONS ON THE FOLLOWING PAGES:

**I.   PLAINTIFF:**

State your <u>full name</u>, inmate number (if applicable), and full mailing address in the lines below.

Name of Plaintiff:   Romerio L. Walker

Inmate Number   108533

Prison or Jail:   Gulf C.I. Annex

Mailing address:   699 Ike Steele Road

Wewahitchka, Fl. 32465

**II.   DEFENDANT(S):**

State the <u>name</u> of the Defendant in the first line, official position in the second line, place of employment in the third line, and mailing address.  Do the same for <u>**every**</u> Defendant:

(1)   Defendant's name:   Kenneth Tucker

Official position:   Secretary, Fl. D.O.C.

Employed at:   Corporate office Fla. Dept. of Corr

Mailing address:   501 S. Calhoun St.

Tallahassee, Fl. 32399

(2)   Defendant's name:   office Ricard Moores

Official position:   Warden

Employed at:   Central Florida Reception center

Mailing address:   Fred OOO Ocklawa Road

Orlando, Fl. 32829

(3)   Defendant's name:   Warden C. Halley

Official position:   Warden

Employed at:   Gulf C.I. Annex

Mailing address:   699 Ike Steele Road

Wewahitchka, Fl. 32465

<u>**ATTACH ADDITIONAL PAGES HERE TO NAME ADDITIONAL DEFENDANTS**</u>

(See Attached ~~complaint and~~ Additional Defendant list)

2

Additional Defendants...continued page 2 of 2

(4) Assistant Warden S.D. Sloan
    Assistant Warden
    Gulf C.I. Annex
    699 Ike Steele Road
    Wewahitchka, Fl. 32465

(5) Carbee Washburn
    Carbon
    [illegible]
    [illegible]
    [illegible]

(6) Captain Weeks
    Captain
    Gulf C.I. Annex
    699 Ike Steele Road
    Wewahitchka, Fl. 32465

(7) Jason McCommas
    Leutenant
    Gulf C.I. Annex
    (same as above)

(8) Timothy Dawson
    Sergeant
    Gulf C.I. Annex
    (same as above)

(9) Kenneth Stephens
    Sergeant
    Gulf C.I. Annex
    (Same As above)

(10) Tameka Jackson
     Classification Officer
     Gulf C.I. Annex
     (same as above)

(11) Alex Richards
     C.O. I
     Gulf C.I. Annex
     (Same As above)

(12) Brian Thomas
     C.O. I
     Gulf C.I. Annex
     (Same As above)

(13) Officer Easton
     C.O. I
     Gulf C.I. Annex
     (Same As Above)

(14) Lawrence Young
     Classification Officer
     Gulf C.I. Annex
     (Same As Above)

III.    **EXHAUSTION OF ADMINISTRATIVE REMEDIES**

**Exhaustion of administrative remedies is required prior to pursuing a civil rights action regarding conditions or events in any prison, jail, or detention center. 42 U.S.C. § 1997e(a). Plaintiff is warned that any claims for which the administrative grievance process was not completed prior to filing this lawsuit may be subject to dismissal.**

IV.    **PREVIOUS LAWSUITS**

NOTE: FAILURE TO DISCLOSE **ALL** PRIOR CIVIL CASES MAY RESULT IN THE DISMISSAL OF THIS CASE.  IF YOU ARE UNSURE OF ANY PRIOR CASES YOU HAVE FILED, THAT FACT MUST BE DISCLOSED AS WELL.

A.    Have you initiated other actions in **state court** dealing with the same or similar facts/issues involved in this action?
  Yes(X )     No( )

  1.    Parties to previous action:
    (a)    Plaintiff(s): Romerio L. Walker
    (b)    Defendant(s): Polk County

  2.    Name of judge: Dale Durance    Case #: 2010-CA-7609

  3.    County and judicial circuit: 10th Circuit, Polk County

  4.    Approximate filing date: September 8, 2010

  5.    If not still pending, date of dismissal: Pending

  6.    Reason for dismissal: N/A

  7.    Facts and claims of case: Excessive Force

    **(Attach additional pages as necessary to list state court cases.)**
     ✶ See attached ✶

B.    Have you initiated other actions in **federal court** dealing with the same or similar facts/issues involved in this action?

  Yes(X)     No( )

  1.    Parties to previous action:
    a.    Plaintiff(s): Romerio L. Walker
    b.    Defendant(s): Fla. Dept. Of Corrections, Singletary

  2.    District and judicial division: Northern

  3.    Name of judge: Unknown    Case #: Unknown

  4.    Approximate filing date: 1993 - 1994

  5.    If not still pending, date of dismissal: 1995

  6.    Reason for dismissal: Failure to prosecute
    ✶ Five different Action, arose out of Jackson and Ft Walton counties
      (see attached)
      4 of 15

IV. ADDITIONAL   PREVIOUS  LAWSUITS... continued page 2 of 2

A. State Court

Romerio L. Walker v. City Of Bartow, et.al

Honorable Michael McCarthy      Case No. 2011CA-1627

10th Cir., Polk County

Filed April 8, 2011

Pending

False Imprisonment, Conspiracy to False Imprision

B. Federal Court

Between  1992 - 1994 I Filed five different
1983 action against Walton C.I. and Jackson C.I.
and employees. They were filed in the Northern District
Court but I don't remember the division although it may
have been Tallahassee. All five made it past screening
and were in discovery stage when I was released
in December 1994. In 1995 all five were dismissed
because of my failure to file anymore papers.

7.   Facts and claims of case: _Excessive Force, Denial medical Attention, Cruel and Unusual Punishment_

**(Attach additional pages as necessary to list other federal court cases.)**

C.   Have you initiated other actions (*besides those listed above in Questions (A) and (B)*) in **either state or federal court** that relate to the fact or manner of your incarceration (including habeas corpus petitions) or the conditions of your confinement (including civil rights complaints about any aspect of prison life, whether it be general circumstances or a particular episode, and whether it involved excessive force or some other wrong)?

Yes(X)                    No( )

If YES, describe each action in the space provided below. If more than one action, describe all additional cases on a separate piece of paper, using the same format as below.

1.   Parties to previous action:
   a.   Plaintiff(s): _Romeelo L. Walker_
   b.   Defendant(s): _Judge Mark Hoffstad, et al._
2.   District and judicial division: _Middle, Tampa_
3.   Name of judge: _unknown_          Case #: _8:11-CV-00614-SSm-TGW_
4.   Approximate filing date: _August 2011_
5.   If not still pending, date of dismissal: _2011_
6.   Reason for dismissal: _Immunity (Frivolous, Fail State cause)_
7.   Facts and claims of case: _Vindictive prosecution, Judicial Bias_

**(Attach additional pages as necessary to list cases.)**

D.   Have you ever had any actions in **federal court** dismissed as frivolous, malicious, failing to state a claim, or prior to service? If so, identify each and every case so dismissed:

Yes(X)                    No( )

1.   Parties to previous action:
   a.   Plaintiff(s): _Romeelo L. Walker_
   b.   Defendant(s): _Judge Mark Hofstad, et al._
2.   District and judicial division: _Middle District OF Florida, Tampa_
3.   Name of judge: _unknown_          Case Docket # _see above_
4.   Approximate filing date: _2011_     Dismissal date: _2011_
5.   Reason for dismissal: _Immunity (Frivolous, Failure to state case)_

IV   ADDITIONAL   PREVIOUS   LAWSUITS.... page 2 of 4

C.

(Habeas Corpus Petitions)

<u>Second District Court Of Appeal</u>

Phomerio L. Walker v. Lawrence Crow        Case No. 2D03-291
Filed  1-17-03                    Denied 1-24-03
            (No info Available)


Phomerio L. Walker v. Lawrence Crow    Case No. 2D03-669
Filed 2-3-03                    Denied 2-28-03
            (No info Available)


Phomerio L. Walker v. Lawrence Crow    Case No. 2D03-3336
Filed 7-22-03                    Denied 8-20-03
            (No info Available)


Phomerio L. Walker v. Grady Judd, Sheriff  Case No. 2D10-1979
Filed 4-29-10                    Denied 6-4-2010
        Without Prejudice to seek bond in trial Court
        Denial of Bond


Phomerio L. Walker v. Edwin G. Buss   Case No. 2D11-1889
Filed 4-15-11
        Inadequate law Library and Access to Court


Phomerio L. Walker v. State          Case No. 2D11-4088
        Denial of Counsel
    (No other Info Available)


Walker v. Crow                Case No. 2D98- 3518
                    Dismissed Denied  11-2-98
            (No other info available)

IV   Additional Previous Lawsuits ... Continued (page 3 of 4)

C. (Habeas Corpus Petitions)

## Florida Supreme Court

Romerio L. Walker v. State of Florida   Case No. SC03-1535
Filed 8-29-03                          Dismissed 11-21-03
       Dismissed as moot when released
       Denial of Bail


Romerio L. Walker v. Grady C, Sudd Sheriff   Case No. SC10-2072
Filed 10-20-10               Tranferred to Trial Court 11-30-10
       Conviction and sentence without trial or plea


(Postconviction Relief Proceedings)

## 10th Circuit   Polk County

State of Florida v. Romerio L. Walker   Case No. CF05-9702
Filed (originally) 11-4-09                   Denied August, 2011

illegal sentence without trial or plea, ineffective assistance of
counsel, judicial biased, invalid plea

* See also Romeau L. Walker v. Sheriff Grady Sudd et.al. Case No. 2010CA-7610

## Second District Court of Appeal

Romerio L. Walker v. State of Florida
Consolidated Cases 2D11-2097 and 2D11-4473
Filed 4-27-11 and September, 2011
Pending
Appeal of denial of 3.850 Post conviction motion in CF05-9702 above


(Mandamas Petitions)

## Second District Court of Appeal

Romerio L. Walker v. State of Florida   Case No. 2D10-3892
Filed 8-16-10                   Denied 10-01-10
       Reason Unknown
       Speedy Trial Violation

IV   Additional Previous Lawsuits... continued page 8(of 4)

C. (Mandamus Petitions)

### Second District Court Of Appeal

· Rumecio L. Walker v. Sheriff Grady Judd      2D10-5293

Filed 11-2-10                    Cert denied 11-24-10

Reason For Denial Unknown

Appeal of Mandamus challenging deduction of daily subsistence
in 2010CA-448

(Prohibition Petitions)

Second District Court of Appeal

Rumecio L. Walker v. State of Florida   Case No. 2D10-3891

Filed 8-16-10                    Denied 10-18-10

Denied without prejudice to refile later

Speedy trial violation   see also 2D10-5340

* Discharge granted March 21, 2011 by Successor Judge   Lot. No. CF09-8854

Plaintiff has attempted the best he could to list any
litigation he recalls initiating in challenge to any type of
conditions related to any incarcerations. Any unlisted action
were ommitted as an oversight and were any in no manner
intended to hide the action or deceive the court.

Rumecio L. Walker DC#
108533

8-18-12

6.    Facts and claims of case: Vindictive Prosecution,
Judicial Bias

**(Attach additional pages as necessary to list cases.)**

## V.    STATEMENT OF FACTS:

State briefly the FACTS of this case.  Describe how <u>each</u> Defendant was involved and what each person did or did not do which gives rise to your claim.  In describing what happened, state the names of persons involved, dates, and places.  <u>Do not make any legal arguments or cite to any cases or statutes.</u>  You must set forth separate factual allegations in separately numbered paragraphs.  You may make copies of this page if necessary to supply all the facts.  Barring extraordinary circumstances, no more than five (5) additional pages should be attached.  **(If there are facts which are not related to this same basic incident or issue, they must be addressed in a separate civil rights complaint.)**

(See Attach SWORN AFFIDAVIT
And Appendix For More Details)

From as far back as 1992-1994, Plaintiff along with numerous other inmates have been complaining, through grievances and civil suits, about the cruel and unusual punishment and excessive force inflicted by employees of the Florida Department Of Corrections ("D.O.C."). On June 22, 2011, Plaintiff through grievances, initiated a investigation after he reported that during intake at Central Florida Reception Center, he was physically assaulted by Officer Nieves without provocation. Due to his grievances, Plaintiff was targeted by D.O.C. employees who on numerous occasions threatened retaliation against Plaintiff with frivolous disciplinary reports and bodily injury, should Plaintiff continue filing grievances or attempt to file civil suit. Aware that such threats were prohibited by the courts, Plaintiff immediately began grieving the threats, but the complaints went ignored by supervisors and chief executive officers at institutional and corporate level thereby leading to Plaintiff being written frivolous disciplinary reports ("DR's"), placed in confinement, gassed on march 8, 2012, taunted by staff, and repeated warned that any future grievance or civil suits will result in more frivolous DR's and bodily injury. Since being gassed Plaintiff has suffered cruel and unusual conditions that went ungrieved due to fear of retaliation. All complaints went ignored. After

★ Dates, time and specific incidents stated in Sworn Affidavit.

B

10 of 15

being gassed Defendant Young used the incident to intimidate Plaintiff into obeying staff with complaining and even reminded Plaintiff of the incident after he wrongfully ~~erazed~~ confiscated Plaintiff shades and threatened Plaintiff with a ~~g~~ disciplinary report if Plaintiff continued to insist on being provided a confiscation receipt for the shades. The shades were then destroyed when Plaintiff consented by walking off.

Please refer to Sworn Affidavit and Appendix for a complete history of the details of Plaintiffs complaint.

In cases where defendants actually feel they are justified in the use of force or chemical agents, defendants have not hesitated to record and document the whole incident from the warnings through the actual application of chemical agents without a break in the recordings until the inmates have showered and ~~seen~~ been examined by a nurse and the recordings continued until the inmate has been returned to their cell for atleast 10-15 minutes. It is only the cases where staff are aware of the unlawful and unconstitutional nature of their actions, where staff will exclude the actual applying of the chemical agents and only record certain portions of the incident to make their known unlawful actions, appear legal. During those unlawful incidents, staff have been known to not only use force or chemical agents when not justified but have also applied them in excess of rules and procedures.

Staff have adopted a biased and unfair disciplinary proceedings created solely as an instrument and rouse whereby Plaintiff and other inmates are written frivolous disciplinary records aimed at making the known unjustified use of force appear justified. Aware of and unconcerned with the many unjustified ~~crimes~~ of use of force claims, supervisors including the Secretary, Kenneth Tucker have turned a blind eye to what they are aware of going on and ignored grievances reporting the incidents by failing to launch a meaningful investigation into the claims.

✱ see II Statement of Claims and attached Sworn Affidavit and appendix ✱
for detailed information

## VI.   STATEMENT OF CLAIMS:

State what rights under the Constitution, laws, or treaties of the United States you claim have been violated.
Be specific.  Number each separate claim and relate it to the facts alleged in Section V.  **If claims are not
related to the same basic incident or issue, they must be addressed in a separate civil rights
complaint.**

(I) Action on Defendants violation of Plaintiffs Constitutional Rights under the
Eighth and Fourteenth Amendments and under 42 U.S.C. 1983 and also
for conspiracy to deny or deprive Plaintiff of known constitutional rights and
retaliation for exercising constitution Right.
(II) Negligent Training - Defendants have failed to implement and enforce
proper training of employees in the way to handle, deal with, and interact
with inmates, and the proper way to report incidents to supervisors
without resorting to unneeded use of force, or the proper method of
documenting such incidents when force is needed
                    ★ see attached pages 2-4 of 4 continued

## VII.   RELIEF REQUESTED:

State briefly what relief you seek from the Court.  Do not make legal arguments or cite to cases/ statutes.

$1,000,000.00 (one million dollars) in damages. A order requiring all
incidents requiring use of force be videod (unless exigent circumstances
are shown) and a full investigation into reports of excessive force
and retaliation for grievances or suits.

**I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING STATEMENTS OF FACT,
INCLUDING ALL CONTINUATION PAGES, ARE TRUE AND CORRECT.**

August 18, 2012
(Date)

_Bonnie L. Walker_
(Signature of Plaintiff)

### IF MAILED BY PRISONER:

I declare (or certify, verify, or affirm) under penalty of perjury that this complaint was (check one):
☒ delivered to prison officials for mailing or ☐ deposited in the prison's internal mail system on:
the __11th__ day of __October__, 20_17_.

(Signature of Plaintiff)

Revised 03/07

12 of 15

VI. STATEMENT OF CLAIMS... continued page 2 of 4

(III) Inadequate Discipline And Supervision - Although claiming to have investigated several complaints including those referred to herein, Defendants investigation was so inadequate that neither Plaintiff, nor numerous witnesses that would have obviously been in a position to witness portions of the reported incident, were interviewed during the alleged investigation. This insufficient investigation was therefore concluded and dismissed as unfounded. Aware of Defendants customs and practices of tolerating mis-conduct without reprocussions as long as a D.O.C. employee does not come forth, ~~Plainn~~ Defendants have adopted practices and customs of inflicting excessive force and cruel and unusual punishment to control inmates and force them to submit and aquiescence to self serving rules and procedures. This lack of Discipline and supervision was relied upon by defendants when committing the acts which are reported as a violation of Plaintiffs constitution rights herein. Had defendant's enforced their published rules with proper supervision and discipline, the constitutionally violative acts reported herein would not have occurred or at least would have been extinguished before they amounted to bodily injury and the numerous threats and frivolous DR's and confinement reported herein. ~~Defendan~~ Infact some of the employees unfortunate enough to get caught-up in constitutionally violative acts have found themselves transfered to another institution as punishment, where they are allowed to inflict more injury in violation of constitutional prohibitions. Such discipline and supervision is hardly enough to persuade staff to honor the rights of inmates.

IV. Employment and Retention - Defendant's have failed in their obligation and responsibility to care for Plaintiff by

VI. STATEMENT OF CLAIMS... continued page 3 of 4

failing to abscertain by screening and training its employees' ability to interact with inmates or whether its employees' were emotionally and capable of carrying out their reasonably foreseeable duties. Some of the employees are so biased and prejudice that it is common for Plaintiff to be called racially motivated names and it is even more common for staff to threaten bodily injury or confinement as punishment for something as minor as not replying to an officer or other staff the way that person feels you should or even refusing to answer staff that has addressed Plaintiff with a string of demeaning and profane words.

V. Policy and Customs - Defendants have adopted policies and customs whereby complaints made by inmates without verification by staff are so considered unreliable and therefore an investigation of the complaint does not include interview of the complainant or other inmates. DOC Defendants also have adopted and implemented a rule and policy that allows employees to use force without video of the incident as long as their is a recording which only shows that the inmate was warned that force could be used without a video of the force being applied. Aware of the above two policies, Defendants have adopted tactics and customs tollerating the unconstitutional use of force, retaliation and due process violations cited against Plaintiff herein. The use of force incidents would be reduced dramatically if only Defendant would implement a policy making it mandatory that any non-recorded use of force incident be justified be a show of exigent circumstances. And

VI STATEMENT OF CLAIMS... continued page 4 of 4
the unlawful retaliation and due process violations
reported herein would not have occurred had Defendants
implemented a policy and custom of conducting a
thorough investigation into reported incidents with
stricter stricter discipline for found violations.
In failing to properly train, screen, discipline and
supervise its employees, Defendants have acted in
bad faith or in a manner exhibiting wanton and
willful disregard for Plaintiffs human rights and
safety, and showed a deliberate indefference to
violation of his constitution rights.

VI. Conspiracy — It is clear from the sworn
affidavit that Defendants have adopted tactics
whereby they fabricated frivolous accusations against
Plaintiff with full understanding that they had
already determined to deter Plaintiff from further
grievances by use of those frivolous DRs inwhich they
knew would be determined founded by predetermination
of their bias disciplinary hearing team and affirmed on
appeal without a fair consideration on appeal by
Defendants. Defendants had already predetermined to
use physical force should Plaintiff fail to aquiescence to
the retaliation by use of threat and frivolous DR's. This
predetermination unnas also relied upon the use of
frivolous DR's, a biased disciplinary hearing team, and a
unfair appeal consideration, to make their know
unconstitional actions, appear justified. It was this
agreed conspiracy that caused the reported constitutional
violations mentioned herein.

## SWORN AFFIDAVIT
### IN SUPPORT TO Civil RIGHTS COMPLAINT

I, Promerio L. Walker, DC# 108533, do swear and affirm as follows:

I arrived at Central Florida Reception Center to serve the remainder of my eight-year sentence on June 22, 2011. During intake that morning I was struck in the face by Officer Nieves. Officer Nieves was a employee of Central Florida Reception Center and was acting in his official capacity as such when he hit me in the face. I reported his actions to a nurse and she reported it to the Captain, who had me placed in confinement. I was told that a inspector would come to see me within 72 hours. After being in confinement for 9-days, on June 30, 2011, I wrote the Warden and warned them that it was cruel and unusual to punish me for reporting staff abuse. (See app. at Aoo1-B) I was released later after turning in the grievance, and transferred to Gulf C.I. Annex, without having completed orientation.

While at Gulf C.I. Annex, on January 29, 2012, I wrote a grievance because, I had not had a change of cloths in seven days since being placed in confinement, had not been given any of my hygiene from my property, and had not been given my legal material from my property. (See app at A025)

On Febuary 1, 2012, Sergeant Dawson came to my cell (P2-2191) and said he would write me some more disciplinary reports ("DRs") and make me stay in confinement longer, if I continued to write grievances. When I ~~asked~~ threatened to write another grievance reporting

his threats, Sergeant Dawson stated "That's not a threat, it's a promise. Enjoy your stay."

At the time I was in confinement for a DR written by Sergeant Cory Cook, who observed me off my bunk during count, but instead of writing me a DR for the count violation which only carried 15 days confinement, he falsely accused me of disorderly conduct, and the DR hearing team gave me 30 days without considering my defenses. (29-33) On February 3, 2012, I filed a formal grievance because after threatening me, on 2-29-12 Sgt. Dawson came back and searched my property and then lied and said I had all of the items complained of in my 1-29-2012 grievance and on 2-3-12 Lt. McCommas' denied the grievance was received by me. The grievance was handed in 2-6-12. 1202-150-006

On Febuary 8, 2012, I was brought a clean change of blues, socks, and Boxers by Officer Boasman. Later that day, Lt. McCommas came by my cell and stated "I'm tired of your shit". I asked what I had done. Sgt Dawson, who was with him stated "The same thing I told you about that paperwork." I stated "Well I'm good now because the officers brought me a change of clothes earlier today." He said "I know, because I told him to."

On Febuary 12, 2012, after Sgt. Cook threw my property (stationary, bible, personal correspondence, and legal mail) all over the floor I attempted to discuss the matter with him and was insulted which lead to me filing another grievance and forwarding it to the secretary's office. (see 12-6-05981, app. at A007-10) In response I was told that since my complaint was being forwarded for investigation by the Inspector General's office, it was considered approved and upon completion, information will be provided (app. at A011)

During lunch on Febuary 16, 2012, Sgt. Dawson told my roommate tried to provoke a fight between me and my roommate by telling him he could not do any favors for him, because I was writing too many grievances. My roommate was Michael Johnson #W29798

On Febuary 20, 2012, I was summoned to the Administrative building about my Febuary 2, 2012 grievance. Lt. McCommas told me he was sick of me and my grievances and that if I don't stop filing them I would be punished, and that my grievances were not going to change anything. The Ast. ~~Superintendant~~ Warden J.D. Sloan was called to the office and told that I claimed to be able to prove that I was threatened by Sgt. Dawson with retaliation for writing grievances. I personal heard Mr. Sloan state, "I don't care what he can prove." LT. McCommas said he hated people like me who thought they can change things that are not within their control. I was warned that I can file all the lawsuits I wanted because others had tried and no one was going to believe a inmate after several officers claimed he was lieing and that all that was going to happen, was the court after denying my suit, would later issue a order prohibiting further suits. I was told that my other complaints regarding my lack of hygiene and failure to provide me with my legal work was rendered moot by my release from confinement. Before releasing me I was warned that if need be, there would be no problem finding something to write me a DR for on any given day. The grievance was denied ~~accommmmmmm~~ by Ast. Sup. J.D. Sloan on ~~the~~ next day on Febuary 21, 2012 (app. at A026) ~~accoday~~ and on March 1, 2012 I appealed to the Secretary's Office (see 12-6-08411, app at A012 - 33) but on March 15, 2012, the appeal was denied and returned to me beyond the time to resubmit (app. at A034)

The day after my meeting with Lt. and Asst. super., on February 21, 2012, Officer Jamie Linton, stopped me, took my legal work, and gave it to another inmate. When I filed a grievance about her conduct, it was denied because my legal work was returned a week later (Feb. 28, 2012) see app. at A040. When I filed a formal grievance to Warden on March 2, 2012, whereby I argued that the return of my documents does not excuse

Ms Lintons actions and requested disciplinary action against her, it was assigned log number 1203-150-007 and never answered. (see app. at A039-41)

On March 2, 2012, I appealed to the Warden, C. Hadley, the DR teams finding of guilt on a DR that was unsubstantiated and untimely investigated. (see 1203-150-008 at app. at A063-66) The appeal was denied on 3-20-12, after it was asserted that the investigation was begun by a different Sergeant not mentioned at the DR. Hearing (app. at A067). My appeal to the secretary was not was denied on April 10, 2012. (see 12-6-10464, at A062-68)

On March 5, 2012, my attempt to mail legal documents was interrupted by Officer Martin who wanted to know what my legal mail was. Because Officer Martin is not the assigned legal mail personnel, I told him that my legal mail contents were none of his concern. To this Officer Martin told me to return to my dorm because I was not being allowed to mail the documents. To this I told Sgt Martin he will be hearing from me soon by grievance. Officer Martin responded by ordering me to cuff-up and after handcuffing me, Officer Martin told me I was going to confinement for spoken threat to staff. I was escorted to Captain Addison who told him to take me to a security cell after pre-medical so that I can be gassed. After being seen by medical, I was taken to confinement where I was told several times that I was gonna be gassed because of all my grievances. ~~Executed~~

During lunch on March 5, 2012, Sgt. Dawson ~~told my~~ refused to hand me a tray and told my cellmate to grab the tray and the drink. He then closed the food slot and when I asked about my meal, he stated "You refused your meal". I told him he would get some more paperwork and he walked off feeding the other inmates.

That night I told Officer Heaton, the Sergeant and

4 of 36
~~proceedings~~

Captain Fason, that I wanted to go into protective management, due to threats made by staff. When my requests were refused and I was told that protective management would not prevent the Captains from gassing me, I began writing grievances to Administration and the secretary's Office. (see 1203-150-013 at A035 and 12-6-08994 at A037) Neither the Warden's or the Secretary's office acted on the information. For several days I was taunted by staff's promises to gas me, and I stayed terrorized by fear of whether or not I could survive the torture. I kept think back on the last time when I was in the confinement and during or around dinner time, I looked out my door and observed Captain Mashburn walk up the back stairs and while a officer held the camera he counseled the inmates in room 213 for causing a disturbance that I had at no point heard, even though I had been up since dinner reading my bible. After leaving the room, Captain Mashburn returned a couple hours later with the same officer who now held a large can the size of a small fire extinguisher instead of a camera. At this time it was extremely quite on the wing, but I watched in horror as the officers, taking the same route, went directly to room 213, and without saying anything to the inmates, had the control room crack open the door, and they gassed the room, and left after securing the door. When they returned (aprx 5 min later) they coached the inmates into throwing out their blankets by telling them if they did so they would be allowed to shower. Instead of being allowed a shower, they were gassed again once they threw out the sheets. Captain Mashburn laughed and stated "You muslims breath pretty good with them blankets. The next time you think about jacking off on one these females, think about that gas!" The officers left, but come back later when a inmate in another cell yelled "Mashburn, you ain't

nothing but a bitch! Somebody gonna kill your ass one of these days!" To this Mashburn stated "Get another can of that shit. If I'm gonna get killed one day, I might as well ride it out." Captain Mashburn then opened the cell and gassed 213 a third time. When he finished he yelled "Anybody else got something to say." I later learned one of the inmates was John Grisson #317124, because I wrote a sworn affidavit of my observations for him.

On March 8, 2012, three days after promising to gas me, Captain Weeks, similar to Captain Mashburn, came to me cell with a camera operator and went through the ritual of pretending to be counseling me for a desterbance that never occurred. During the act, I stood in front of door so the camera could see I was in compliance with all requests. I even noddeel my head as I answered "yes sir" to any questions directed at me, but even this did not pursuade staff from torturing me. A couple hours after leaving with camera, I observed Captain Weeks return to the wing and fill out a document on a clip board as he talked with Officer Bichards and Sgt. Dawson for several minutes. Inmates were warning me to cover up because they were gonna gas me but I didn't because I knew that because of my health I wouldn't be able to breathe with my head covered. As I prayed for the strength to survive, I watched traumatized as Capt. Week tried to creep up on my cell with a can of gas and no camera.

I turned to face the wall as he opened the food slot and sprayed the gas for a constant 3-5 seconds, and closed the slot. I was coughing, gagging, blowing snot from my nose and because it felt like I was on fire, I kept my eyes clamped shut, made it to the toilet and

drenched my face and body with water from the toilet.
The whole time I was crying and yelling I couldn't breathe,
Captain Weeks asked me was I alright and I stated "No
Sir, I can't breathe," I need a doctor please. I want
write no more grievances." Capt. Weeks replied "I'll come
back in a little bit and check on you." He then left me
on the floor bent over the toilet, in front of the door. When
he returned he stated "Inmate! Back away from the door.)"
So I stood up and stood with my back facing the door
and hands behind my back, thinking I would be cuffed
and allowed a shower. Instead of cuffing me, when the slot
was opened, I was sprayed directly on my naked body for
another 3-5 sec constant burst. (Because it felt like my skin
was on fire, I had stripped completely naked prior to
soaking myself in toilet water after the first spray of gas.)
I was again left crying and pleading for help until Capt.
Weeks returned and stated "You done with your grievances"
I said "Yes sir, I want write no more." Capt. Weeks then
stated "You still gonna sue me?" I said "No sir." He said
"You gonna threaten to write up any more of my officers?" I
said "No sir." He told me to get dressed and when I
attempted to put on my boxers, he stated "Just your pants.
Not your boxers, you got gas all over them. Get on your
Knees with your back to the door." He then told the
Officer to get the camera but wouldn't allow them to film
til I was cuffed and shackled.
    After being allowed a shower and being examined by the nurse,
I was placed in the same cell. Officer Richards later came to
my cell with Capt. Mashburn and were taunting me about
getting gassed. Officer Richards told Mashburn that Captain
Weeks had hit me in the "crack of the ass" when gassing me

while naked the second time. Mashburn, who has previously been threatening to beat me up and split the money when I sue told me "What's up Walker, that shit burned, didn't it. You don't forget our deal did you, remember it's 50/50. Ain't no renigging. I get 50% of your suit and you get the other 50%, but don't forget Dawson. He get's 10% and his 10% comes out of your 50, not mine." To this Officer Richards laughed and stated "Man that's fucked up." Mashburn told me "Shit, the way they say you were Hollering, we should get alot to split."

Officer Richards returned later and told me to let the shit go, no more threats and he will make sure I got out early if there were no more problems and he didn't get no "dumb ass" papers in four or more weeks. The whole time I remained silent during his and Mashburns taunts and sat on my bunk coughing and shaking.

Officer Richards returned later and stated "Alright, it's time to see how you gonna act. I need you to sign a statement about getting gassed." I asked what he wanted me to say. He said "Whatever you want." I wrote "I got gassed twice today," and scribbled some lines. He read it and stated "Works for me", as he left. He came right back and said he want you to write why you got gassed. I asked what he wanted me to say. He said "I don't know. Just tell why." As I was writing he said "You got gassed because you were being disorderly." But I had already wrote "Because I threatened Officers with grievances and suits." I wrote more scribbly lines at the end of that statement also. Richards read it, then told Sgt. Dawson what it said. He then came back and said "I can respect that. Now don't be making no more threats and be done with it." I asked was he

gonna make sure I get out early and don't get no more DRs. He stated "You know I gotta give you a DR for the gas, but I promise to make sure you get out early, but I can't promise that it will be more than 10 days. Now be done wit it." He then stated "You thought it was a game when you called me a faggot at the gate, didn't you?"

For several days my skin burned including my eyes and feet and my back hurt for a couple weeks. Officer Richards wrote me a frivolous DR charging me with participating in or causing a minor disturbance. Sgt Dawson wrote me a frivolous DR for disobeying a verbal order. And Officer Martin wrote me a frivolous DR for verbal disrespect instead of spoken threat.

Due to the threats of punishment for grievances, I appealled the DRs to the Secretary's Office who failed to act on the information / grievances (see 12-6-09524 at A056-58; 12-6-09525 at app. A059-61 and 12-6-10465 at app. A069-72)

I also filed a supplement to 12-6-05981, and informed the Secretary's office that staff had not only fulfilled their previous threats to punish me for writing grievances, but have since made it clear that more punishment was in store if I filed any more grievances or attempted to sue. (see 12-6-10407 at app. at A042-54) But the Secretary's office refused to consider the supplemental Information, along with their current investigation. (see app. at A055)

Because of new threats to gas and beat me, I filed another grievance for once last appeal to the Secretary's office. (see app. at A075-78)

9 of 36

In order to ensure that I understood that more punishment would come to me if I attempted to pursue their actions in civil court, several employees of Gulf C.I. Annex were sent to warn me not to pursue the matter any further.

At approx 10:45 A.M on March 9, 2012, Officer Richards came to my cell to tell me of the two additional D.R.s I had been written to justify me getting gassed. During the discussion, Richards told me that gassing me was not only about the grievances I had been writing. He said it was also because I had threatened to sue if I was gassed for writing grievances. He told me that I "can't be challenging people like that." He warned me to be done wit the whole thing and no further harm would come to me. I informed him that prior to them gassing me I had already initiated a investigation into their threats and I couldn't do anything about that. He told me that he didn't learn of the investigation until after they had gassed me but said he felt they had covered themselves on their end.

During the investigation of the D.R.s I called every inmate on the wing as a witness. I later learned from the witnesses that Officer Richards and Lt. McLemmas used intimidation to convince the witnesses not to give a statement and even tried to convince witnesses to falsely write that I had been causing a disturbance.

That night (March 9, 2012), because my mother had been constantly calling wanting to know why I would not be allowed protective management, Sergeant Epps brought me a witness statement form and after I filled it out he placed on pending Protective Management Status. During the middle of the night, prior to 4:00 A.M. breakfast, I was awakend and moved to single man cell 121. I observed the orderlies go to my previous cell and attempt to clean the walls. The walls had heavy orange looking stains that had runs going

10 of 36

down the wall like water.

Prior to lunch on March 11, 2012, Captain Fason and Sergeant Dawson came to my cell and after summoning me to the door, told me to quit calling and writing my mother, telling her things that will only upset her. Captain Fason told me that I did the things to get myself in prison by myself, so I need to do the time by myself.

After dinner, the officer came and told me that my one man cell was needed for medical purposes. He brought me a face sheet of a white inmate I didn't know and asked if I had a problem with him. I said no, and was moved to cell 120 with inmate Kieth Nash # X76019 ~~Nash date of date~~.

During lunch on March 12, 2012, when Sergeant Dawson placed the tray in the cell, I tried to grab it. He stated "This Nash's", and wouldn't allow me to have the tray. He then grabbed another tray and stated "This one's yours." I grabbed the tray and asked "What's the difference?" He stated "Flavor... personal flavor," and left smiling.

Around 1:10 on the same day Mr. Young came to my cell and informed me again that my mother was constantly calling. During our discussion I informed him that I had warned staff that if they gassed me for grievances I would sue, and that's what I intend to do. He told me I was in no position to be warning anyone of anything and advised me to humble myself and stay out of the way.

At aprox. 10:20 on March 13, 2012, I went to DR court for the three DRs. Captain Weeks (the same Captain that gassed me) was the hearing officer and found me guilty of all three DRs after ignoring all of my defenses as to the validity and timeliness of the investigation. I was given 75 days in confinement. I appealed directly to the

Secretary's Office due to the previously mentioned threats by staff but the Secretary's office refused to review the issue until I first allow the issues to be reviewed by Gulf C.I. Annex. (see 12-6-09524 at A056-58; 12-6-09525 at A059-61; and 12-6-10465 at A069-72). Due to fear of retaliation, I completed the confinement time without filing the grievances to Gulf C.I. Annex.

During lunch on the ~~same~~ next day (march 14, 2012), I stood at door to observe the trays being handed out because Sergeant Dawson was handing them out. Dawson grabbed a tray that was sitting by itself, up on top where the tray lids were placed once a tray was handed out. He handed the tray in my cell and stated "This is your tray Walker, we have to keep yours seperate." He then grabbed a random tray from the bottom and gave it to my roommate. Inmate Israel Williams # 794458 had just moved in my cell they day before and upon witnessing the exchange, he stated "Man what was that about? You better check it to make sure he ain't been through it." I then explained how Dawson has been claiming to be tampering with my trays and that my last roommate had agreed to be a witness. Israel then told me, "Well I heard him that time"; he then gave me his name and DC number.

Later around 12:00 - 1:00 P.M. on the same date, Officer Easton came by my cell to inform me that staff had agreed not to harm me anymore if I don't pursue the matter anymore. He then explained that the situation was like the volcano project from elementry school. He said that each time you add baking soda, the volcano will boil a little each time until it finally boils over, but once it boils over, it has shot it's shot and will not boil again, unless

~~2000 0080 0806~~
12 of 36

someone begins the process of adding baking soda all over again. He told me that filing grievances want help me because someone up front will get the grievance and make a call saying "he filed another grievance", and that how the process to erupt the volcano will start all over again. At this time I had not filed the grievance of the DR's to tallahassee, so when filing them, I went directly to tallahassee, the secretary's office and asked that if they are inclined to report my actions, for retaliation by Gulf C.I. Annex, I would rather they discarded them first. When the secretary refused to investigate the matter but insisted I grieve the matter at Gulf C.I. Annex first (app. at A058, A061, and A072) I understood them to be discarding the grievance instead of reporting me to Gulf C.I. Annex, since it was fully apparent that I could not file to the institution without retaliation.

I had gotten into a habit of refusing trays that I didn't trust. During one encounter on March 15, 2012, During lunch Dawson told the orderly that my food must be served by him (Dawson). I refused the food and Dawson replied "The only day I didn't get a chance to put nut hairs in your food and you turned the meal down." He then told me I should have eaten that meal and stated "You'll eat on the next shift."

On March 16, 2012, I asked Officer Richards was I still on P.M. At the time I was in the first shower waiting on a telephone conference in a unrelated civil case. He grabbed my file and read were I was placed on P.M. (Protective Management) on March 9, 2012 but said I was now on D.C. confinement only. He could find nothing explaining why I was no longer on P.M. He then asked if I would sign a statement

dropping the investigation of staff's threats and
retaliation against me. He said in return he would
talk to Lt. McCommas about giving me concurrent time
for the Dr's on the minor disturbance charge and
ask that I be put in for a management transfer
to somewhere in region one. I also told him that they
had promised to leave me alone if I filed no more
grievances but Dawson was steady playing in my
food. He said Dawson told him about the food
trays, but said Dawson was only "messing with my head".
I refused to drop the investigation but agreed not to
appear for OR court.

Prior to lunch on March 23, 2012, Lt. McCommas and a
guy in civilian cloths came to my cell. The guy in civilian
cloths informed me that my mother had been contacting
the Warden's office worried about me. He said he was
standing in for Warden and asked what was wrong. I
told him "They don't told me not to talk about it." He
asked "They who?" I stated "The officer behind you," and
nodded toward Lt. McCommas. He asked what was going on.
I said "They said they will leave me alone if I be done with
it, so I don't want to push the issue." He told me he would let
my mama know that he talked to me and I am still alive.

While sending out two large envelopes to the Court process
server on March 26, 2012, Sgt. Dawson made a comment to
Ms. Paula Boarders that I was probally filing grievances.
A few minutes after they left, Officer Richards came to my
cell and asked was I up to my old tricks. I asked what
he meant and he told me Dawson saw all the mail I sent
and wanted to know if I was up to my old tricks with the
grievances and suits. He wanted to know if I had left all

14 of 36

that alone. I showed him the March 20, 2012 order in
2D12-962, and that was lying on my bunk with alot of
other papers, and told him the documents were in reference
to my house. I then informed him that they hadn't kept
none of their promises concerning the concurrent time or transfer.
He told me that once I get close to the end of my confinement
time he would get me out early. I asked him why he
had to make up a lie that made me out to be a exciter
of a riot. He stated "We gotta do what we gotta do. If
you try to go to court with that, they gonna shoot you down."

When he left, my roommate, Israel Williams stated "Man,
that's messed up how they play with a man life." I explained
to him that I only brought the issue up to prove a point
to him. Israel had previously told me that I had to of done
something to get gassed because he didn't think that the
"professionals" would risk their jobs gassing me for no reason,
simply because I had filed grievances. After hearing
Richards for himself, Israel began talking about how
Richards would have looked real stupid had I snuck a
recorder in and recorded his statement.

On April 23, 2012, while passing out mail, Officer
Heaton handed me the response to grievance 12-6-10464, and
stated "Walker, I thought you were done with that." I
said, "Yeah, it's from a old grievance." Me and my roommate
Krazy K (room 205) was discussing the fact that staff
had to be discussing me for Heaton to say that, because
I had never spoken to Heaton about being warned not to
file any more grievances, nor had I told him personally
that I would not file anymore. To this, Krazy
K, told me "Ain't nothing that happens on this compound
that Officers Heaton, Davis, Baxton, or Easton, wouldn't
know about." He said there was a few more officers

in that category, but those four would surely know.

I have no doubt that these employees intend to make good of their promises and threats. I have personally witnessed numerous gassing where prior to the gassing I heard no disturbance and during some of the gassings the staff made it obvious by their statements that they were simply punishing the inmate due to unliked actions of the inmate, that occurred well prior to the gassing and actions that had any chance of being quelled by the gassing.

There was the January 24, 2012 gassing of John Grisson mentioned in detail earlier.

There was the incident where I was gassed on March 8, 2012 which was preceeded by officers taunting me and telling me three days ahead that I was gonna be gassed and after refusing to allow me protective management ("PM") the taunts began with Captain Mashburn coming to my cell on March 6, 2012, during lunch asking why I was checking in on him. After I stated that it was because I knew I could not win, Mashburn stated "Hell, I ain't gonna kill ya, I'ma only fuck you up." He then began questioning me about a $100,000.00 suit he heard I had received and told me to "Let me fuck you up, and when you sue, we split it, I don't give a fuck." I stated "You want me to let you beat me up, and then when I sue, you get half the money too?" He then stated "Hell, Dawson can get some too." Dawson, who was with Mashburn on this date looked at me and said "How was that food yesterday?" Upon leaving, Sgt Dawson told me to enjoy my meal, because they had one prepared just for me.

On March 7, 2012, I attempted to send out legal mail without postage, but the mail lady, Ms. Paula Boarders

16 of 36
~~Robbob~~

refused to accept the mail without postage and deduct the
needed funds from my account. So after she left I
yelled for her to come back and I had a few stamps
to put on the large briefs. When she came back and
received the mail I told her I knew it wasn't enough
to cover the postage and ask that the remainder be
deducted from my account. She told me to send a inmate
request to her supervisor because it would have to be
approved by the mail room supervisor. Sgt. Dawson
said he would bring me a request when he finished
making a round with her through the wing to handle
legal mail. A Orderly was later sent around to pass
out requests, but he passed my cell. When I yelled
for him to bring me one he reported me to Sgt. Dawson
who came to my cell and told me to quit yelling on the
door. I explained that the orderly had failed to bring
me a request as promised so he had the orderly to
bring me a request (and after they gassed me the
next day he later wrote me a DR for asking for
the inmate request.) But anyways on the same date
that I was attempting to get the request (March 7, 2012)
Captain Weeks came to my cell after Dawson had the
Orderly to bring me a request and asked which one
was "Hollering" out the door. Because it was long after
the request incident, me and my roommate both said
it wasn't us. Weeks then asked Dawson which one of us
and he said Walker in 117L. Me Weeks then told me
if I Holler out the door trying to get someone attention
again, I will get the wrong kind of attention. Seeing
where he was headed, I told him I was in fear of my
life and had a need of PM. He told me "I don't

17 of 36

give a fuck, If you holler again, you getting sprayed." I said if I was sprayed I would sue. Weeks stated "I don't give a fuck, I been sued before."

On March 8, 2012, I spoke to Asst. Warden, as he was making his round, I explained that several staff had threatened to gass me and I needed PM. He told me to send him a request. I told him I did on March 5, 2012 and he promised to look into it.

Shortly thereafter, Officer Richards came to my cell and knocked until I rolled over and looked at him. He said good morning and when I rolled over he stated "Enjoy your stay" and walked off.

He came back about 15-20 minutes later and stood at my door chanting "Satins seed". When I didn't roll over to face him, he said "Romerio you know that's what you are, Satins seed, that's why your face is all scaley and shit." When I still didn't respond, he walked off.

About 15-20 minutes later I was awaken by Lt. McCommas banging on my door until I rolled over. When I looked up he yelled "put your shirt on". I had on my T-shirt and had my blue shirt over my face, but because it was obvious he was attempting to provoke a argument, I put on my blue shirt without a word. He then yelled "Now fuck with me, I ain't scared of you." I stated "I ain't scared of you." He then to me he will gas me and I stated "Do what you do." He left.

A few minutes later, as Dawson and Richards were cuffing the two inmates in 116 and escorting them to DR Court. The whole time Dawson was looking in my cell, directly at me chanting "Why's everybody always picking

on me." He repeated it about four times, and then Richards said, "When we take his roommate to DR Court, we'll take care of that shit!" Upon hearing this statement, my roommate stated "They act like they glad I didn't refuse OR Court."

When they came to take my roommate to DR Court, officer Richards and Sgt. Dawson began calling me "Devil's seed" and said I was the devil's child. Officer Richards said "We fixing to excercise those demons." I then asked Richards his name and he said "Timothy Dawson."

As they left, Captain Weeks walked up and asked had they generated any paperwork on me and Sgt. Dawson said "Yeah, we been writing him up all morning. He been calling Richards a Pussy ass." I stated "Man you know they lying." Capt. weeks said, "You back here for cursing officer Martin. I happen to know him very well." He then asked me "Are you saying he lying?" and when I said "Yes", he walked off.

A short time later, Capt Weeks came back to my cell and accused me of grabbing my dick when Dawson passed by. I told him that I never did anything like that. He said, "This is what we gonna do. We gonna start the camera and I'm gonna tell you to get on your bunk and we will play it out from there."

Sgt. Dawson came by a few minutes later and asked was it I that was yelling through the vents. I said "No sir!"

Captain Weeks came back with a clipboard, writing on it and looking at my cell, but said nothing and left.

Shortly thereafter, Sgt. Dawson started feeding, but he told me they will feed me later because they "had to prepare mine specially." The Captain then came by and ordered me to come to the door. When I got up and went to door, I observed a officer in the background with a vide camera. Captain Weeks had a clipboard and he was reading through

pretending to be counseling me about a pretentous disturbance. He directed several questions to me in which I replied loudly "Yes sir!" and even knodded my head yes so that the camera would see me in compliance. When he told me to get on my bunk, I replied "Yes sir" and went and sat on my bunk. Seeing that the camera remained on me, I picked up my legal work I had been working on since arising from sleep and returned to it as the camera recorded. Around 10:31 a.m. Captain Weeks announced I had ceased my disorderly conduct and told the camera operator to cease recording. He then called me to the door and asked if I wanted my tray. When I said yes, Dawson brought me a tray with a big grin on his face.

Officer Richards came by shortly and told me to pack up and hand him my cell mates property. I was told they were letting him out so they could gas me. Never having seen a inmate released directly from DC court without returning to his cell, it became clear that they were actually gonna gas me without cause. I packed and handed the property as requested.

Dawson passed by and asked how my food was, and told me to be sure to eat it all.

As they were bring the two inmates back to 116 to shower to get out, Officer Richards was standing there, looking at me, shaking his head. He for some unknown reason said "Okay, Okay. You scared me." As they passed my cell Dawson looked in and said "Hah!!, But I never replied. Officer Richards came back and yelled "Man stop yelling on that door! Stop beating on that door!" He then walked off. When I looked out the door, the inmate across

from me[109] was motioning that he don't know why, but Richards was in front of my door making the statements. It was extremely quiet on the wing.

Richards later came and tried to sneak the lock off of my food flap, but when I looked up, he tried to play it off by asking did my roommate leave some toothpaste. My roommate had been gone for several hours so when I said no, being finished with the lock, he smiled and walked off.

Knowing what was next, I walked to the door everytime I heard the front door open. It wasn't long before Captain Weeks came in and wrote on a clipboard as he talked with Dawson. The guy across from me began telling me to cover up but I watched as Captain Weeks tried to ease up on my cell with a can of gas. He stayed close to the wall until he got to my cell, open the flap and began spraying. (see details in earlier account)

After personally viewing several more gassings, It became clear to me that the camera interview always signalled a gassing but just as in mine and Grisson's case, the camera was never on, during the actuall gassing, unless staff felt that the inmate was actually engaged in conduct justifying the use of physical force.

The March 15, 2012 gassing of Inmate Stuart or stewart because he refuse to cuff up and move from p2-121 to 214 was the only time I recall that a inmate was gassed on camera and he outright refused on camera to cuff up.

On March 22, 2012, I heard what sounded to me

like someone reading the well known script that is now known to me as the prelube to a gassing. When I looked out my door, I observed Captain Fason doing a pre-gas interview as Officer Brock operated the camera. They then proceeded to up the stairs and stopped at room 213 and informed the occupants that they would be sprayed if they continued their disruptive behavior. At the time, nor prior to it, had I heard any type of disturbance or any warning for anyone to cease their actions. Once the interview and camera operator left, I was on my toilet reading my bible when less than a hour later, I clearly heard gas being sprayed and jumped up to see Sgt Stephens spraying a red looking can of gas until it would spray no longer. He sprayed one long constant burst and walked off. I had been on the toilet directly by the door and had heard no disturbance or warnings to cease any actions prior to the gassing (except for the pre-gas interview) All I heard for next five minutes was a lot of coughing and gagging. Then without another word Captain Fason returned with a blue looking can and sprayed another constant burst until the can was empty. A few minutes later Officer Brock was told to bring the camera and once he started filming, Captain Fason announced that Inmate Johnson had ceased his behavior.

On March 29, 2012, a inmate in 112 was banging on his door and yelling until they brough camera and did a pre-gas interview. When the camera left, another inmate kicked his door. When staff approached 112, he told them it wasn't him that time but everytime

staff would leave, the guy next door would bang on his door again. When staff again approach one twelve he was telling them it wasn't him that time either, but as they were talking to him they eased the flap open and sprayed the guy. Lt. McCommas stood to the door talking to the dude, who appeared to be a bug. Lt. McCommas was asking him was he alright and the guy kept repeating "It wasn't me." Lt. McCommas kept asking was he alright and he kept repeating "It wasn't me." Five minutes after the first can they sprayed the guy again and the inmate kept repeating "It wasn't me, It wasn't me". Each time, He was hit with one full three second burst of gas.

On April 1, 2012, I was awakened by the sound of someone talking loudly. When I looked out my door, Officer Richards was holding a camera on Captain Fason who was announcing that inmate Johnson had ceased his disruptive behavior. I never heard any disturbance.

On April 19, 2002, Captain Mashburn began taunting Inmate Green in P2-120 about a argument between him and Officer Brock during breakfast. But it was another shift and around 6-7 P.M. He had Sgt. Stephens and Officer Brock put chains on room 119 and 120 and he gassed both rooms at the same time, he sprayed 6 bursts in 120 and 8 bursts in 119. The bursts were short and sounded like 1-2, 1-2, 1-2 / 1-2, 1-2, 1-2, 1-2

Inmate greene in room 120 was walking back and forth but his roommate was stretched out on the floor crying and begging to be let out. The guy in 119

was pleading saying "I'm sorry sir. Please sir. I want do it no more." Mashburn said, I told you what I would do and for you to stop talking to me like that."

After five minutes had passed he sprayed three more burst in 120 and one more in 119. The guy in 119 was still pleading and Greene's roommate was still on the floor crying to be let out. Mashburn came back and sprayed three more bursts in Greene's room but didn't spray any in 119. When he allowed them to shower, Greene asked him if he had another can. He told Greene he would give him a one hour break and then he'd be back. That night we were awakened to the lights coming on as they were again gassing Greene in 120. He was walking back and forth with no cloths on since they had been taken after the first gassing. He had his boxers covering his face. Captain Johnson came back a few minutes later and gassed him again. When they took him out to shower, his whole body was soaked in gas. I wrote a grievance to the secretary who promised to investigate the incident. (App. at A073-74)

On July 6, 2012, a guy in P2-211 declared a psychological emergency. After doing so Sgt Stephens and another confinement officer kept going to the guys cell because he was biting himself. I couldn't hear their conversations but it didn't appear to be anything more than a calm conversation. Sometime after lunch, Captain Mashburn came by dude cell and began threatening to gas him, if he kept playing games about harming himself. He then left and went to a guy's cell down from me and threatened to tell the guy's wife about some other girl number in his phone. He told the guy I

don't need you no more, I gave you the chance to cooperate but you made me work, now I don't need you because I got everything I need. He went on to talk about playing games and told dude to give him a hour and he will show him how to play games.

Less than a hour later, he came back ~~less the~~ and began a pre-gas interview which ended with him going to cell ~~the~~ 211.

As soon as they finished passing out dinner, Sgt. Stephens went to 211 and was calmly talking for a long time. The guy in 211 must have been whispering because Stephen had his ear to the door listening and spoke with his mouth close to the door. Several minutes later Stephens left and Captain ~~Masburn Mash~~ Mashburn came to the door and asked 211 was he ready. I heard no response, but Mashburn began placing chains on the door and told dude he was through playing games. After chaining door where it would only open about a few inches, Mashburn had ~~the~~ door opened and Officer Cox sprayed the cell with three-one second bursts and slammed the door shut.

As the guy went to coughing, Mashburn yelled "I don't hear your mouth now you fat fucker!" As in other times the gas had been used, the chemicals were so heavy that they flowed in my cell causing me to cough, my nose to run, and my eyes to burn. Mashburn paced back and forth down stairs and yelled "You alright fat ass? You gonna make it?"

Sgt Stephens and Cox then went back and forced cell 211 open, because dude was holding it closed. They sprayed the cell again and slammed door shut. The other confinement officer (name unknown) began calling dude fat ass and telling

dude he was gonna get some more. Cox went back to the door and told dude he was gonna hit him with the next one. The whole time the only sound I heard was the dude's coughing along with alot of coughing from other inmates on the wing.

Mashburn came back and yelled "You ready for round three fat boy? you ready for round three?" He was again pacing back and forth down stairs. When they returned, Sergeant Swortz had a shield and held door open as Cox sprayed the cell. After spraying two bursts, Captain Mashburn yelled "Spray all that shit!" So Cox ended up spraying a total of seven bursts back to back until the can had no pressure left. Mashburn then yelled "Go ahead and die fat ass!" When it was over, Mashburn called for a camera and announced inmate Jones has now ceased his behavior.

Officer Easton came by my cell, look at me, and smiled. He asked how I was doing, but I didn't reply. I was later told by inmate Pye that Mashburn had Killed one inmate with gas. He said that the whole time the guy was being gassed, he was yelling "Psych Doctor! Psych Doctor! They trying to kill me!"

On July 3, 2012, I was placed under investigation due to a cell-phone found in my cell. While escorting me to have a preconfinement physical, I was threatened with use of force by several officers. Officer Eastern told me "you know you gonna get gassed?" He later explained that he didn't get off on gassing people. He told me he would take me somewhere without any witness and spontaneously strike me. He assured me that with his perfect record, no one would take my word over his. I cut him off in front of the nurse by asking did he see any reason

or need for use of force at that point. When he said
no, I told him, that since I was doing nothing
deserving a need for the use of force, I see no
purpose of his conversation. After leaving medical I
was taken to the center fence where we were met by
Captain Mashburn and Sergeant Swortz, whom both
informed me that I would be getting gassed.
Captain Mashburn said I hadn't had enough the last time,
and Sergeant Swortz, who was mad because I had laughed
at him earlier, told me when he returned on friday, he
would be the one to pull the trigger. I looked over on
the benches and observed two inmates known to me as
"KT" and "Foster Brown". To them I stated "Ya'll hear
them officers threatening to gas me for no reason?" Officer
Easton, who then escorted me to confinement, knowing
both inmates by their names, stated "I ain't never
knew _____ or _____ Brown to give a statement
for or against a inmate." When we reached confinement
Sergeant Stephens and Officer Richards informed me that
I would be getting gassed soon. Richards began bragging
about how he had told me that I couldn't sue him
and how I was gonna get gassed again and could
sue all I want because it would only get shot down.
These same thoughts had been expressed earlier by
Easton and Captain Mashburn. Officer Richard made
several attempts to provoke me into saying I would sue
but I kept saying "Man I thought you all said you were
done with it if I was. I ain't suing no one." I was
placed back in cell 117, the same cell I was gassed in
the last time. I could still see gas stains running down
the wall.
On July 8, 2012, Sergeant Stephens came to my cell

and handed some papers through the top of the door. I got off my bunk and grabbed the papers and observed that it was a DR I had been written b for something that never occurred by a officer I never heard of. Normally when serving a DR, the serving officer will open the food slot, call the inmate to the door and hand him a copy of the DR, which would show a date and time of delivery. The officer would then read the DR and begin a investigation which concists of taking the inmates statement along with a list of any witnesses or evidence the inmate wish to be concidered by the hearing team. The inmate would also be questioned about certain rights and waivers associated with the hearing of the DR. But when Stephens just stood their looking at me, I asked who wrote the DR. He then smiled and stated "What? You don't Remember? Tell your daddy to stop calling up here every two hours claiming you getting gassed." He then walked off and returned shortly with a witnesse statement form. He opened the food slot and handed it to my roommate, Charles Anderson #T54612, and told him he had to give a statement since he was in the room with me. Anderson wrote that he had no recollection of the accusations, and Sergeant Stephens left without making any attempt to investigate the DR nor date the time of delivery on the copy he placed in my cell. (app. at A81-82)

The next day I was served another DR where Sergeant Stephens claims that I had cursed him when he attempted to investigate the DR written by Officer Brian Thomas. I called the video from the dorm to evidence that Sergeant Stephens never attempted to investigate the DR. and Anderson wrote a statement saying that the accusations never happened. (app. at A084-85)

At the hearing on July 10, 2012, Officer Thomas DR. was

heard and after reviewing the evidence, the hearing Team (Lt. McCommas and Ms. Tameka Jackson) told me they could find me guilty and run the time concurrent with my current time without no loss of gaintime thereby rendering the DR moot or they can throw the DR out and have the officer to rewrite it in a way I would be found guilty. Obviously I took the first choice. (app. at A083)

On July 17, 2012, A hearing was held on the DR written by Sergeant Stephens and the DR was thrown out and rewritten. Later that day a officer brought me a cell inspection form and asked me to sign it. I asked the officer his name and he said "Officer Thomas." I then asked why he wrote me the frivolous DR, and he asked what DR. I stated for talking on the vent and he asked "When? About two weeks ago?" Both me and Anderson replied "Yeah. About two weeks ago." He then stated "I don't know." I then said "Man I aint do nothing. I aint never spoke to you in life. Why did you have to go and lie on me?" He said "I was only doing what I was told to do." I said "Well I feel you there, are we straight now?" He said "Yeah" and walked down the back stairs. (see app. at A081-82)

On July 21, 2012, while handing out lunch trays, officer Richards backed up and asked me what his buddy Stephens wrote me a DR for. I said "nothing." He asked what I meant nothing and I said "He told me to tell my daddy to stop calling up here claiming I'm getting gassed." He then said "You need to tell your folks to stop calling up here!" I said "I aint told them to call up here and don't know nothing about that." This wasn't true though. On July 13, 2012 and July 16, 2012 I got some letters from my mother and someone name JD Thompson. The letters

29 of 36

informed me that a female had called my mother and after telling her that the information came from her brother, who was on compound with me, she informed my mother that the officers were overheard stating they were planning to gas and beat me.

Officer Richard (on July 21, 2012) then stated "Well you know you stand a pretty good chance of beating his DR, but if I write you one its gonna stick." I then asked "Write me one for what?" Richards stated "You gonna stop?" I asked him was I gonna stop what? Because I said I hadn't done anything. Richards said "You gonna call your people and tell them to stop calling up here or do you want to go there with me." Because I was sure my families' calls were the reason I got the frivolous DR instead of physical punishment, I was not about to tell them to cease their calls, so I told him "Look here, I ain't getting out the box anyways, so if you all want to start writing me frivolous DRs again, then I'll start filing grievances again." Richards stated "So we gonna do it that way then," and walked off. I had my roommate sign another statement and sent a last grievance to the Secretary (app at A075-78)

At DR hearing on July 24, 2012 the hearing team (Lt. Jason McCommas and Ms. Tumeka Jackson) ignored the evidence and found me guilty and gave me thirty more days confinement based on Stephens rewritten report. When I brought up Anderson's statement, the team said they didn't know if Anderson was stating that Stephens accusations never happened or my statement. When I pointed out that Anderson wrote his statement

prior to mine and was never read my statement the team was unconcerned nor would they asked Anderson, (who was present) what he meant. When I pointed out that because me or sergeant Stephens weren't "interviewed until the 20th which was well beyond the required 24 hour period, since the DR was written on the 17th, the team made up a frivolous rule that the DR only has to be handed to the investigator within 24 hours of being written and that the rule requiring the investigation to begin within 24 hours did not require any other action such as a interview of the accused or accuser, for the rule to be satisfied. (see app. at A084-87) I appealed to Warden C. Halley

It is well known at the Gulf C.I. Annex that no inmate is going to beat a DR. The Hearing team's only purpose is to make the finding of guilt appear valid. Officers are even as bold as to tell us that we are wasting their time calling witnesses or evidence because it doesn't matter, because we gonna be found guilty no matter what. Infact on DR Hearing day, Officer Brocks goes around trying to coerce everyone into signing a waiver saying the don't want to appear at the hearing. On July 24, 2012 he made several attempts to get me to sign and when I finally walked away stating "I'm going man!" He became visibly upset and slammed my food slot shut. No matter what defense or evidence I offer at the hearings Lt. McCommas and Ms. Jackson have always ignored it and offered unbelievable excuses as to find me guilty. Lt. McCommas has even been as bold as to tell me, on Febuary 28, 2012, during a hearing on a DR for me in

a unauthorized area, that nothing I said mattered to him. The team has even used conclusions not supported by the evidence to contradict defenses presented by me. During a hearing on January 31, 2012, Ms Jackson asked me how I know that Sergeant Cook didn't think I was dancing when he observed me off my bunk working out on the floor. This conclusion was not consistent with Cooks statement that I was singing "you got me, you got me" in a disorderly manner. On another occasion during the same hearing I brought up the fact that the investigation did not begin within 24 hours because I wasn't served until several days after the DR was written. Ms Jackson stated "Well how you know the investigation didn't begin with Sergeant Cook. To this I asked did the investigator show a date that Cook was interviewed and when she looked and couldn't find a entry stating Cook was interviewed within the 24 hours, she and Lt. McCummas warned me that only they could ask questions and told me to only answer when questioned.

Needless to say, it is very clear that staff at Gulf C.I. Annex have a practice of torturing inmates with gas and physical force aimed at intimidating and punishing them in violation of laws, Department of Corrections rules, and constitutional rights. They then, by use of frivolous DRs and a biased DR team, validate their actions to appear justified at face value. But a adequate investigation would have long since exposed the conspiracy. But because staff are accustomed to the Secretary's practice of turning a blind eye to claims supported only by inmates, staff have gotten bolder and bolder in

Clearly violative, unlawful, and unconstitutional practices of unjustified use of force and biased/prejudiced disciplinary proceedings.

On August 8, 2012, between 3:00-4:00 P.M., as Officer Richards was handing out mail, I noticed that the response to my July 20, 2012 grievance (A075-79) had been opened already. When I pointed it out to Richards, he at first denied any knowledge, but then stated "I thought you was done with that." I asked was he checking my grievances and he said he couldn't help but to see his name at the bottom.(see A075) I acknowledged that I had agreed to leave it alone and wouldn't write any more grievances as long as I was left alone, but I reminded him that it was him and his co-workers who started threatening me again and writing frivolous disciplinary reports which lead me to writing grievances again. Richards then told me if I agreed to stop writing grievances he would tell his co-workers to leave me alone as long as I didn't start something new. When Richards left, I had my roommate write out a statement of his recollection of the conversation,(see A089) and I did the same.

On August 14, 2012, Richards told me that he knew where some of my missing legal work was and who took it, but he told me he had nothing to do with it, and didn't want anything to do with it or giving it back. He also told me that staff had decided they wanted me off the compound as soon as Captain Mashburn returned in about two weeks. When Richards left, I had my roommate write out a statement of his recollection of the conversation,(see A090) and I did the same. (see A091)

On August 15, 2012 Asst. Warden J.D. Sloan denied the appeal I filed against the DR teams September 24, 2012 findings without refuting the merits of my appeal. (see app. at A093-94) I then appealed to the secretary (see app. at A092) but my appeal was also denied by secretary (app. at A093)

On September 2, 2012, sometime after dinner and trays had been picked up, Officer Richards and the orderly came and offered cleaning supplies. As I finished and handed the supplies back, Officer Richards asked if I was done, and when I replied yes he asked if I wanted him to spray my food flap so I could wipe it down from the inside, and I said yes. When I finished he asked was the rag I had wiped with his and I said it was "mine but if I knew the flap was that dirty, I would have used Ya'lls." Richards replied that the rooms were so dirty because they hadn't been cleaned in forever. I stated "Yeah. But you you know I couldn't say anything. I agreed not to do anymore write-ups." To this Richards stated,"I'm glad we came to that agreement. It was a no win situation, you write us up and then we set you up." When he left I told my room-mate "why he had to go and say all that? You know I need you to write it down."(see app. at A096)

On September 14, 2012, while still in the shower after seeing the doctor about the rash I get while in confinement due to my eczema and the institution's refusal to allow me moisturizers, I stopped D.R team leader Ms. Tameka Jackson and voiced my grievance over her statement at the July 24, 2012 D.R. hearing. She stated that the investigation can begin with a phone-call to the reporting officer. Seeing that I was not gonna get any relief on that issue I then stated "Well how about a little mercy, I've done seventy-four (74) days on ninety (90)." To this statement Ms. Jackson stated "How about 90 on 90 since you trying to make a point." She then walked off. I had previously learned on Sept. 10, 2012 that my filed did not show credit for the time I did in A/C confinement nor when I was admitted to the hospital infirmary and

kept in a confinement isolation cell where I slept on the floor for five (5) days. When I informed Richards that I would file a grievance he snapped calling me stupid and said I was only gonna piss someone off trying to do things my way. The next day I filed a grievance (app. at A   ) but officer Richards told me he had talked Ms. Jackson into giving me credit for the infirmary time but not the A/C time.

On September 19, 2012, I received a denial of my grievance to receive credit for the time I was in Administrative Confinement (A/C) prior to the hearing on my D.R. No explanation was given for the denial (app. at A   ).

On September 24, 2012, Richards woke me from my sleep and handed me a bunch of my legal work in reference to several cases. He said they had been kept in a file for a long time but he didn't know who put them there.

On September 25, 2012, I appealed the denial of my grievance to receive credit for my A/C time. After turning it in I heard officer Richards and a inmate yelling at each other and Richards was threatening to gas the inmate because the inmate had been arguing at Richards after observing Richards reading grievances that had been turned in. For some reason I felt it was my grievance so I later asked Richards was he gonna request that I get out since I had eighty-five (85) days on ninenty. He stated "Nah. You like it back here. Keep writing them grievances.

I am tried the best I could to be as detailed an precise as possible in the above stated facts, so as for the fact finder to review and have enough facts to be convinced as I am that my claims are genuinely founded upon clear and convincing acts of

defendants which conclusively show that
defendants have denied me of the rights
stated in my civil Rights complaint.
    I DO swear Under Penalty Of Perjury that
the before is true.

~~September 8~~
October 5, 2012                          Promerio L. Walker
        DATED                            Promerio L. Walker
                                         DC# 108533  01-202L
                                         Gulf C.I. Annex
                                         699 Ike Steele Road
                                         Wewahitchka, Fl. 32465

36 of 36

In The United States District Court
Northern District Of Florida, Pensacola

Romerio L. Walker
   Plaintiff

VS

Kenneth Tucker, Secretary, et al.
   Defendant(s)

Civil Claims Division

Case no: 5:12CV340 RS/GRJ

Appendix To Civil Rights Complaint Sworn
And Affidavit

Romerio L. Walker, pro se
DC#108533   P2-208L
Gulf C.I. Annex
699 Ike Steele Road
Wewahitchka, Fl. 32465

Filed
Rec'd 1016'12USDcFln3H1012 ES



# INDEX TO APPENDIX

| DATE FILED | DOCUMENT | Page(s) |
|---|---|---|
| June 30, 2011 | Inmate Request To CFRC Warden (Inquiry as to release from confinement) | 1 |
| July 4, 2011 | Inmate Request To CFRC Warden (inquiry concern staff abuse investigation) | 2 |
| July 18, 2011 | Grievance to Secretary concerning staff abuse (11-6-23087) | 3 |
| August 3, 2011 | Response (11-6-23087) | 4 |
| July 18, 2011 | Grievance to Secretary concerning staff abuse (11-6-23097) | 5 |
| August 3, 2011 | Response (11-6-23097) | 6 |
| Feb. 10, 2012 | | 7-11 |
| March 1, 2012 | Grievance To Secretary concerning threats of retaliation for grievances (12-6-08411) | 12-33 |
| March 15, 2012 | Response (12-6-08411) | 34 |
| March 5, 2012 | Request For Protective Management to Warden (1203-150-013) | 35 |
| March 7, 2012 | Response (1203-150-013) | 36 |
| March 5, 2012 | Request For Protective Management to Secretary (12-6-08994) | 37 |
| March 27, 2012 | Response (12-6-08994) | 38 |
| March 2, 2012 | Grievance To Warden concerning taking of legal mail by Clinton (1203-150-007) | 39-40 |
| March 6, 2012 | Receipt For (1203-150-007) | 41 |
| March 15, 2012 | Supplemental Grievance to secretary concern staff retaliation (12-6-10407) | 42-54 |
| April 11, 2012 | Response (12-6-10407) | 55 |
| March 15, 2012 | Appeal of 3-5-12 DR To Secretary (12-6-09524) | 56-57 |
| March 27, 2012 | Response (12-6-09524) | 58 |
| March 15, 2012 | Appeal of 3-7-12 DR To Secretary (12-6-09525) | 59-60 |
| March 27, 2012 | Response (12-6-09525) | 61 |

INDEX TO APPENDIX ... continued page 2

| Date Filed | | Page(s) |
|---|---|---|
| March 23, 2012 | Appeal of February 21, 2012 DR To Secretary (12-6-10464) | 62-67 |
| April 10, 2012 | Response (12-6-10464) | 68 |
| March 23, 2012 | Appeal of March 8, 2012 DR To Secretary (12-6-10465) | 69-71 |
| April 4, 2012 | Response (12-6-10465) | 72 |
| April 20, 2012 | Grievance To Secretary concerning gassing of Greene on April 19, 2012 (12-6-14011) | 73 |
| May 8, 2012 | Response (12-6-14011) | 74 |
| July 8, 2012 | Disobeying Verbal Order DR by Thomas | 82-83 |
| July 11, 2012 | Disposition of Disobeying Verbal Order DR | 84 |
| July 8, 2012 | Verbal Disrespect DR by Sgt Stephens | 85-86 |
| July 17, 2012 | Rewritten DR by Stephens | 87-88 |
| July 20, 2012 | Grievance to Secretary concerning continued retaliation and threats (12-6-23440) | 75-78 |
| August 6, 2012 | Response (12-6-23440) | 79 |
| July 24, 2012 | Appeal of July 17, 2012 DR to Warden (1207-150-026) | 80 |
| August 15, 2012 | Response (1207-150-026) | 81 |
| August 20, 2012 | Appeal to Secretary of July 17, 2012 DR (12-6-27024) | 92-94 |
| September 11, 2012 | Response (12-6-27024) | 95 |
| August 8, 2012 | Anderson and My written statement | 89 |
| August 14, 2012 | Anderson Written statement | 90 |
| August 14, 2012 | My written statement | 91 |
| September 2, 2012 | Anderson and My written statement | 96 |

INMATE REQUEST

To: Warden      (Grievance)

From: Romerio L. Walker / 108533 / ME1-214L / unassigned / 6-30-11

On 6-22-11 I was placed in Confinement after I reported that Officer Nieves struck me in the face without provokation. I was told I would only remain in confinement for 2-3 days until the incident is cleared by the inspector. I have been in here 9 days today and have not seen or spoken to the inspector or anyone since 6-22-11. Please tell me the status of the investigation, how long I will continue to be confined and why I am being punished for my grievance of staff abuse. It is clearly a case of cruel and unusual punishment

Respectfully
Romerio L. Walker

A 001

INMATE · REQUEST

To: Warden (Grievance)

From: Romero L Walker | 108533 | M E4-111u | Unassigned | 7-4-11

I was released from admin. confinement Friday 7-1-11. after the conclusion of a investigation into officer Nieves hitting me on 6-22-11. Please send me a copy of the statements, findings and conclusions in the investigation

Thank You very much

Romero A Walker

A 002

STATE OF FLORIDA
DEPARTMENT OF CORRECTIONS

**RECEIVED**

## REQUEST FOR ADMINISTRATIVE REMEDY OR APPEAL

AUG 0 2 2011

DEPARTMENT OF CORRECTIONS
INMATE GRIEVANCES

TO: ☐ Warden   ☐ Assistant Warden   ☒ Secretary, Florida Department of Corrections

From: Walker, Romerio L    D-108533    CFRC
   Last  First  Middle Initial    Number    Institution

---

Part A – Inmate Grievance    11-6-23087

On 6-22-11, upon my entry to CFRC I was struck in the left side of my face by Officer Nieves during my intake. I reported the incident and was placed in administrative confinement pending investigation. Nine days later (6-30-11) I wrote an informal grievance requesting the status of the case and to know why I was being punished for reporting staff abuse. The grievance was addressed to the Warden. I was released from confinement the next day but received no response to the grievance.

On 7-4-11 I forwarded another grievance to the Warden stating that based upon my release from confinement it's apparent that the investigation into my staff abuse claim was completed, therefore I requested a copy of the statements, findings and conclusions in the investigation". I have received no response to either grievance.

I have spoken with several inmates that arrived were in intake during the incident and each inmate has notified me that they were never questioned or notified of a investigation.

Could you please conduct a formal investigation into the incident and forward a copy of the statements, findings and conclusions to me because I do not wish to press charges for the battery, because several inmates have told me that officer nieves has a habit of striking inmates in intake.

7-18-11
DATE

Romerio L Walker D-108533
SIGNATURE OF GRIEVANT AND D.C. #

---

**\*BY SIGNATURE, INMATE AGREES TO THE FOLLOWING # OF 30-DAY EXTENSIONS:**    #  /    Signature

### INSTRUCTIONS

This form is used for filing a formal grievance at the institution or facility level as well as for filing appeals to the Office of the Secretary in accordance with Rule 33-103, Florida Administrative Code. When an appeal is made to the Secretary, a copy of the initial response to the grievance must be attached (except as stated below).

When the inmate feels that he may be adversely affected by the submission of a grievance at the institutional level because of the sensitive nature of the grievance, or is entitled by Chapter 33-103 to file a direct grievance he may address his grievance directly to the Secretary's Office. The grievance may be sealed in the envelope by the inmate and processed postage free through routine institutional channels. The inmate must indicate a valid reason for not initially bringing his grievance to the attention of the institution. If the inmate does not provide a valid reason or if the Secretary or his designated representative feels that the reason supplied is not adequate, the grievance will be returned to the inmate for processing at the institutional level.

Receipt for Appeals Being Forwarded to Central Office

Submitted by the inmate on: 7/20/11    Institutional Mailing Log # D13-320-0711    P. Williams
   (Date)                                      (Received By)

10 G (320)

| DISTRIBUTION: | INSTITUTION/FACILITY | CENTRAL OFFICE |
|---|---|---|
| | INMATE (2 Copies) | INMATE |
| | INMATE'S FILE | INMATE'S FILE - INSTITUTION/FACILITY |
| | INSTITUTIONAL GRIEVANCE FILE | CENTRAL OFFICE INMATE FILE |
| | | CENTRAL OFFICE GRIEVANCE FILE |

Ofc. E. Nieves

A 003

DC1-303 (Revised 2/05)

MAILED/FILED
WITH AGENCY CLERK

AUG 0 5 2011

Department of Corrections
Bureau of Inmate Grievance Appeals

**PART B - RESPONSE**

| WALKER, ROMERIO | 108533 | 11-6-23087 | GULF C.I.- ANNEX | Q1222L |
|---|---|---|---|---|
| INMATE | NUMBER | GRIEVANCE LOG NUMBER | CURRENT INMATE LOCATION | HOUSING LOCATION |

Your request for administrative review has been received, reviewed, and evaluated.

Your allegation was referred to the Office of the Inspector General for review and was dismissed due to no injuries and no witnesses.

Based on the foregoing information, your appeal is denied.

C. Neel

| SIGNATURE AND TYPED OR PRINTED NAME OF EMPLOYEE RESPONDING | SIGNATURE OF WARDEN, ASST. WARDEN, OR SECRETARY'S REPRESENTATIVE | 08/03/2011 DATE |
|---|---|---|

COPY DISTRIBUTION -INSTITUTION / FACILITY
(2 Copies) Inmate
(1 Copy) Inmate's File
(1 Copy) Retained by Official Responding

COPY DISTRIBUTION - CENTRAL OFFICE
(1 Copy) Inmate
(1 Copy) Inmate's File - Inst./Facility
(1 Copy) C.O. Inmate File
(1 Copy) Retained by Official Responding

A004

STATE OF FLORIDA
DEPARTMENT OF CORRECTIONS

REQUEST FOR ADMINISTRATIVE REMEDY OR APPEAL

AUG 01 2011

TO: ☐ Warden    ☐ Assistant Warden    ☒ Secretary, Florida Department of Corrections

From: Walker, Romeio L        D-108533
      Last   First   Middle Initial      Number         Institution

| | |
|---|---|
| Part A – Inmate Grievance | 11-6-23097 |

On 6-22-11, upon my entry to CFRC I was struck in
the left side of my face by officer Nieves during my
intake. I reported the incident and was placed in
administrative confinement pending investigation. Nine
day later (6-30-11) I wrote an informal grievance requesting
the status of the case and to know why I was being punished for
reporting staff abuse. The grievance was addressed to the Warden.
I was released from confinement the next day but received no
response to the grievance.
   On 7-4-11 I forwarded another grievance to the Warden
stating that based upon my release from confinement it's
apparent that the investigation into my staff abuse claim
was completed, therefore I requested a copy of "the
statements, findings and conclusions in the investigation."
I have received no response to either grievance.
   I have spoken with several inmates that
were in intake during the incident and each inmate
has notified me that they were never questioned or
notified of a investigation.
   Could you please conduct a formal investigation into
the incident and forward a copy of the statements,
findings and conclusions to me because I do
wish to press charges for the battery, because
several inmates have told me that officer Nieves has a
habit of striking inmates in intake.

7-18-11                          Romeio L. Walker D-108533
DATE                            SIGNATURE OF GRIEVANT AND D.C. #

*BY SIGNATURE, INMATE AGREES TO THE FOLLOWING # OF 30-DAY EXTENSIONS: _____ / _____
                                                                      #        Signature

INSTRUCTIONS

This form is used for filing a formal grievance at the institution or facility level as well as for filing appeals to the Office of the Secretary in accordance with Rule 33-103, Florida Administrative Code.  When an appeal is made to the Secretary, a copy of the initial response to the grievance must be attached (except as stated below).

When the inmate feels that he may be adversely affected by the submission of a grievance at the institutional level because of the sensitive nature of the grievance, or is entitled by Chapter 33-103 to file a direct grievance he may address his grievance directly to the Secretary's Office.  The grievance may be sealed in the envelope by the inmate and processed postage free through routine institutional channels.  The inmate must indicate a valid reason for not initially bringing his grievance to the attention of the institution.  If the inmate does not provide a valid reason or if the Secretary or his designated representative feels that the reason supplied is not adequate, the grievance will be returned to the inmate for processing at the institutional level.

Receipt for Appeals Being Forwarded to Central Office

Submitted by the inmate on: _____   Institutional Mailing Log #: _____   (Received By) Ofc. Neves
                            (Date)                                                         CFRC

DISTRIBUTION:   INSTITUTION/FACILITY        CENTRAL OFFICE
                INMATE (2 Copies)            INMATE
                INMATE'S FILE                INMATE'S FILE - INSTITUTION/FACILITY
                INSTITUTIONAL GRIEVANCE FILE CENTRAL OFFICE INMATE FILE
                                             CENTRAL OFFICE GRIEVANCE FILE          A 005

DC1-303 (Revised 2/05)



AUG 11 2011

**PART B - RESPONSE**

| WALKER, ROMERIO | | 11-6-23097 | GULF C.I.- ANNEX | Q1222L |
|---|---|---|---|---|
| INMATE | NUMBER | GRIEVANCE LOG NUMBER | CURRENT INMATE LOCATION | HOUSING LOCATION |

Your request for Administrative Remedy or Appeal has not been filed in compliance with Chapter 33-103.006, Inmate Grievance Procedure. You did not provide this office with a copy of the formal grievance filed at the institutional level as required by rule or the reason you provided for by-passing that level of the grievance procedure is not acceptable.

You have indicated you filed an informal grievance at CFRC and did not receive a response.   You are advised that the rule does allow you to proceed to the next level of the grievance process when the response is not received within the required timeframes. However a review of the automated formal log for both CFRC and Gulf C.I. does not reflect a formal grievance was received from you.   It is noted however your allegations of abuse by Officer Nieves were reported to the Office of the Inspector General. It is their responsibility to determine what level of inquiry/investigation will be conducted. You should contact the institutional inspector to find out the results of the investigation. It is also noted you are no longer being housed at CFRC.

Based on the foregoing information, your grievance is returned without action.

G. WELLHAUSEN

| | | 8/3/11 |
|---|---|---|
| SIGNATURE AND TYPED OR PRINTED NAME OF EMPLOYEE RESPONDING | SIGNATURE OF WARDEN, ASST. WARDEN, OR SECRETARY'S REPRESENTATIVE | DATE |

COPY DISTRIBUTION -INSTITUTION / FACILITY

(2 Copies) Inmate

(1 Copy) Inmate's File

(1 Copy) Retained by Official Responding

COPY DISTRIBUTION - CENTRAL OFFICE

(1 Copy) Inmate

(1 Copy) Inmate's File - Inst./Facility

(1 Copy) C.O. Inmate File

(1 Copy) Retained by Official Responding

A006

STATE OF FLORIDA
DEPARTMENT OF CORRECTIONS

## REQUEST FOR ADMINISTRATIVE REMEDY OR APPEAL

MAR 12 2012

TO: ☐ Warden   ☐ Assistant Warden   ☒ Secretary, Florida Department of Corrections

DEPARTMENT OF CORRECTIONS
Central Office Inmate Grievances Annex

From: WALKER R, Romario L    108533    _____
Last   First   Middle Initial    Number    Institution

| Part A – Inmate Grievance | 12-6-08x11 |
|---|---|

Sir, on February 20, 2012 Lt. McCormnes called me to administration and started the conversation with "I am sick of you and your grievances and if you don't stop filing grievances, I get somewhere to put you that you want like." He then asked if I was gonna stop writing grievances and I replied I don't want anymore DR's or confinement time. He then asked what I was grieving now. I explained the attached 2 grievances, he said on the DR, you were found guilty by the DR panel, you're not going to beat that and if you do we will just write you another one because as a matter of fact I have two more to write against inmate grissen as we speak. He then asked what I thought he would do when I wrote the grievances. I said that he intends to do nothing. I will have to go to civil court for relief. He said I can file all the suits I want because it will be my word against theirs and I can't prove nothing and that eventually I will get a order from the court telling me to stop filing suits. He said he hate people like me who always think they can change things when we can't. He told me I can write all the grievances and suits I want because nothing's going to change. He said it will be my word against the officers and what do I expect him to do. He then looked at the grievance I wrote about unfair treatment in confinement where I was denied hygiene and my person legal mail in my property. He said I already talked to you about this, my sergeant said you had all this stuff you were asking for, is that true. I said I didn't have any of my stuff because my property was never inventoried in my presence as can be seen from the property sheet they brought me later that night and I scratched off the part saying my property was inventoried in my presence before I signed it and it also shows all my personal hygiene, radio, and property (k) kept even though I was in administrative confinement only. He said you can't have lotions, shampoo and hair grease for security reasons. I said I didn't get a change of whites or blues but the one time after I wrote

March 1, 2012                          Romario L. Walker 108533
DATE                                   SIGNATURE OF GRIEVANT AND D.C. #

*BY SIGNATURE, INMATE AGREES TO THE FOLLOWING # OF 30-DAY EXTENSIONS: ___ / ___
                                                                      #   Signature

### INSTRUCTIONS

This form is used for filing a formal grievance at the institution or facility level as well as for filing appeals to the Office of the Secretary in accordance with Rule 33-103, Florida Administrative Code. When an appeal is made to the Secretary, a copy of the initial response to the grievance must be attached (except as stated below).

When the inmate feels that he may be adversely affected by the submission of a grievance at the institutional level because of the sensitive nature of the grievance, or is entitled by Chapter 33-103 to file a direct grievance he may address his grievance directly to the Secretary's Office. The grievance may be sealed in the envelope by the inmate and processed postage free through routine institutional channels. The inmate must indicate a valid reason for not initially bringing his grievance to the attention of the institution. If the inmate does not provide a valid reason or if the Secretary or his designated representative feels that the reason supplied is not adequate, the grievance will be returned to the inmate for processing at the institutional level.

Receipt for Appeals Being Forwarded to Central Office

Submitted by the inmate on: _____   Institutional Mailing Log #: _____
                          (Date)

DISTRIBUTION:   INSTITUTION/FACILITY          CENTRAL OFFICE                              (Received By)
                INMATE (2 Copies)             INMATE                          0x0
                INMATE'S FILE                 INMATE'S FILE - INSTITUTION/FACILITY
                INSTITUTIONAL GRIEVANCE FILE  CENTRAL OFFICE INMATE FILE       150
                                              CENTRAL OFFICE GRIEVANCE FILE
DC1-303 (Revised 2/05)                                                        A012

the first grievance and no more the other 26 days of my confinement.
He asked if I got my deodorant, soap, toothbrush and toothpaste,
I said no, I did not have deodorant even though I had two
bottles in my property and they only gave he a one inch square
piece of flat soap only on the three nights we shaver a week,
with no wrag and shreads as towels so the so state pieces of
soap is not enough to even bathe with let alone save for
washing our cloths and face. That's why my face broke and
body broke out so bad. He said well my sergeant said you
did so what do you want me to do. I said I want you to
investigate the issues by interviewing my cell-mate and
other inmates in confinement. He then called Sergeant
Dawson and told me that Sgt. Dawson, whom had previously
directly threatened to write me more D.R. and confinement
time if I continue writing grievances, and then told me
that Sgt. Dawson told him I had all of the items I
requested and more than needed. I said my property
sheet proves I didn't. He looked at the grievance again
and asked if I had my legal work and I said no.
He asked if I wrote Sgt. Von and I said twice like
I said in the grievance. He then called Sgt. Von to come to
his office. He said I don't want you claiming we threatened
to lock you up or gas you for writing grievances, "is that
understood? I said well that's exactly what I thought
you were implying when I first walked in. He said "no
I didn't mean I would put you in confinement or write you
any D.R.'s. I said well Sergeant Dawson told me exactly
that. He said, "well that's your word against my office's
what do you expect me to do." I said I expect you to
investigate it and discipline your officer. He said you
can't prove it. I said there was a witness. He said who?
I said my cell-mate, Moses Anderson. He said that's

A013

hearsay. I said hearsay is when a person testifies to information he did not personal witness such as statements told him that someone else observed being said or done. When a person testifies to something some he personally see's he's a eye witness. He said not under D.O.C. Policy. I said, well that's how it is under Florida Rules of Evidence. He said well your cell mate is a convicted felon, do you expect me to believe two convicted felons over my officer. I remained silent.

He then called the assistant superintendant to his office and had me stand outside as they closed the door. I distinctly heard him state he said he can prove... and the Asst. Sup. said I don't care what he can prove. Shortly thereafter the door was opened and the Asst Super said so you gonna file a c-t-t-l civil suit? I said, sir, I don't want no problems, I'm not trying to get any more Dr.'s or confinement time. The Asst super said you can sue all you want, I have two suits against me now. When I remained silent, everyone's attitude soon changed and everyone began trying to convince me that the problem was moot now because I was no longer in confinement and had I been in confinement still the problems would have been corrected that day and that no one was trying to stop me from filing grievances or threating to gas me or lock me up and that if I had problems in the future to send them a request instead of a grievance and I would get better assistance.

When Sgt. Yon arrived I was again placed outside door and I heard him state yeah he was asking for lotions and shampoo stuff we don't allow them to have in confinement. I was later brought in and told that Sgt. Yon had confirmed that he (Lt. McCommos was correct when he told me that the items I was

denied were not allowed in confinement for security reasons even though shampoo and deodorant may be purchased on canteen. I was told that if they wanted to be nasty they could find something easily to write me up for everyday. Captain Mashburn also came up behind me and said are you through writing grievances or what. I said if I do what are you gonna do, gas me or beat me up. He said did I say that. I said, "You don't remember telling me you were gonna beat my ass when you locked me up on the 23rd." He laughed and said "Did you believe me when I said it." I said I believe you now that I have witnessed you operate in confinement. Someone in an office down the hall said damn Mashburn, your reputation precedes you. He laughed and I said I'm not always bad, I have a good side too. Lt. McCommas to me to ignore the comments when Mashburn left and he then dismissed me.

   My grievance about the untimely investigation of my Jan. 23, 2012 D.R. was denied and all of a sudden Lt. ~~Orr~~ McCommas alleged it was because the investigation of the D.R. began 323 hours after written but never said what actions were considered the initiation of the investigation. 1202-150-004

   My grievance about conditions and treatment in confinement 1202-150-006 was denied after Lt. McCommas straight out lied and said Sgt. Van said he had not received a request for my property even though I personally heard him tell the Lt. he had received the request and the items I were requesting were not allowed in confinement.

   The next day on February 24, 2012 I left the
A015

Law library after receiving copies of legal work pursuant to a written request. I was stopped at the center gate by Officer Jamie Linton who was checking inmate i.d.s of the people directly in front of me. It was during lunch time and inmates were not normally stopped but she all of a sudden asked for inmates to present their i.d.'s. When she seen my name, she said you are the one I want. She asked a why I didn't check in before going to Law Library. I told her that I had forgotten to because it was lunch time and no one else was. She then said, well you just got a walking D.R. She then took my legal work and gave it to a inmate who's last name was Jones and told me to go to my dorm. I wrote a grievance in reference to her taking my legal work and giving it to an inmate against my will.

On Friday, Febuary 24, 2012 I received a D.R. that was served by my Dorm Sergeant Harrison. When coming back from Law Library around 10:00 I was told by her that she had just received a D.R. that she needs to serve on me, so I was not to leave the dorm after lunch. Sgt. Harrison had been off for two days (Wednesday the 22nd and Thursday the 23rd) So when I got the D.R. and seen the allegations, who made them and the date written and investigation begun I knew the D.R. was frivolous and in retaliation for the grievances I had written. The D.R. claim I was in an unauthorized area but failed to state that my only crime was not

AOLL

signing in at center gate and it said the
investigation begun on Feb. 22, 2012 which was
a day that the investigator Sgt. Harrison my
regular Dorm sergeant had been off duty.
   When I went to D.R. court Lt. McCommas
was the decision maker and told me he was tired
of seeing me. He read the D.R. to me and
asked how I wanted to plea. I said I wanted
to acknowledge that I did not sign-in at the
gate but wanted to be heard on my defense
to the charges. He said it doesn't matter
what ever you say. I said well I didn't
sign in at the gate but the D.R. investigation
did not begin until three days after written.
He said the investigation began with the officer
on Feabuary 22, 2012 and it don't matter if you
didn't sign in at gate then you were in a
unauthorized area. Because he had previously
told me that if I beat a D.R. they would
only write me another and because I was aware
that Lt. McCommas was not above lieing I
entered a plea of Not Guilty and stated in that
case since my statements don't matter and not
signing in at gate is in your view being in a
unauthorized area then I plea not guilty. I
was then sentenced to 15-days on gun squad
and I asked Lt. McCommas could I return to
Law Library because I was at Law Library
when told to immediately report to P2 P dorm
squad 2 for D.R. court. and the librarian said
I could return if it was okay with the D.R.
Court. Lt. McComas told me it was okay with

A017

him, he didn't care. So upon leaving D.R. court I stopped Sergeant Davis who was g inside grounds security sergeant around Sgt. Station. It sh

It should be noted that we were in the middle of my D.R. hearing in P. dorm Squad 2, the confinement dorm when the Lt. got a call that the major and others were on the compound. They openly expressed worryation over holding D.R. court for the walk-in in the confinement building. Because we had been placed in handcuffs facing the wall until called for D.R. Court, Lt. McCormmas order that we were to be taking taken out of the confinement and uncuffed. We we then escorted to the Sgt. Station by Lt. McCormmas and the one other female writing notes during the hearing and D.R. Court was commenced in the Sgt. Station without us being in handcuffs facing a wall.

So upon leaving Sgt. station I told Sgt. Davis that Lt. McCormmas had given me permission to return to the Law Library because that's where I was prior to being called. He said go ahead. I said I just wanted to check with you because I didn't want any problems out of Ms. Linton at the gate. When I got to the gate and explained the circumstances to Officer Semie Linton, she asked how many days they gave you on O.R. squad. I said 15 days. She said, well now you got 30 days because you didn't signed out before going to D.R. court so you gonna get another

A018

D.R. for being in an authorized area, I don't care who gave you permission.

The next day on Wednesday, February 29, 2012, when I appeared for D.R court I was taken to a dorm where Ms. Linton was for some uknown reason working. Ms. Linton is assigned to the center gate Monday - Friday. I was handed a pair of boots to put on and when I put my right foot in the boot, my heel was punctured by a small needle like object that was standing straight up in the inside of the boot even after I took the boot off. After hearing me curse out loudly the squad leader had his orderly inspect the boot. Seeing the needle like object striking straight up he said what the fuck and dug the object out with his fingers. He then said I don't see anything. I said man you saw that shit you must have dug it up. He then handed the boot to the squad leader Officer Williams who after inspecting the boot said put some shoe soles in it so he can put them on. When I attempted to put them on a pain shot up my heel so I pull my sock off and noticed the puncture. The order I then asked if I can go to medical to get the area cleaned so it don't get infected by what appeared to be a rusty nail. The orderly then bent down and found something on the floor and said that it was what was in the boot. The squad leader asked if I wanted to declare a medical emergency and I showed him the puncture

A019

hole in my ~~bee~~ heel so he told me to report it
to the sergeant. I was leaving when Officer
Jamie Linton to Officer Williams to make sure
I report back to work.

At medical the nurse told me that she didn't
consider the puncture a medical emergency even
if blood was apparent so she could write it
up and charge me $5.00 but she would not
treat it unless I came back to sick=call
and paid another $5.00. I said well I
rather you write it up so that I can have
a record for a grievance. She said I no
you ain't threatening me with a grievance.
She then reported the incident to a young
guy in a green outfit and he told her to do
a teenic since it was a rusty nail. She said
if I do a tecnic then I might as well
treat him, do vital signs and all. After a
discussion they agreed to do vitals, a techic
and treat the puncture. They then called
Officer Williams and told him to bring the
nail. ~~By the time they~~ The nurse then
took my vitals (blood pressure and temperature)
and wrote my a three day lay-in and told
me that if I am caught off my bunk for
any reason other than to bathe, eat and
use toilet I would get a D.R. I asked
could I get my legal mail. She said if
I go to get my legal mail I would be
written a D.R.

When Officer Williams ~~arv~~ arrived he
told them he had not seen the object but

A 020

that the inmate (his orderly) had found the a
stick on the floor and broke it up so it
couldn't have been a nail. The bed rest
was torn up, the nurse was unsure of what
to do with the tecnic because she had already
signed it out (she said) and my foot was neither
washed, wiped, or bandaged. Mr. Williams
asked could I return the full work and
was told I could even though my foot was
in pain that excalated when I put my heel
down and I was told that I would not
be getting the tecnic and would be charged
$5.00 for the visit and another $5.00 if I
returned to sick-call the next 48 hours but
would receive no treatment for foot unless it
showed swelling or signs of infection. I was
told that even though I hadn't received a
tecnic since 2001, one within 48-72 hours
of the injury was sufficient should I need
it. Medical was fully aware of my medical
condition when authorizing me for work squad.
   I came to jail diagnosed as permanently
disabled by Dr. Eric Ranon. When I left D.O.C.
in 1994 I was determined permanently disabled
by D.O.C. Dr and had medical passes limiting
to light duty with no prolonged standing, sitting,
or walking along with no bending, stooping,
lifting over 5-pounds and working with hands
above head due to spinal surgery and rods
in my back.
   Upon returning to the Dr. squad I was force
to put on the same boots that caused my injury

A021

to my heel and forced to push a non-motored mechanical lawn mower for ~~aror~~ aprox 2 hours.

When complaining to Officer Williams of my pain and medical condition he said you got a bad foot and a bad back anything else. I said I just wanted you to know I was in pain and my medical condition he then had me continue mowing when I said I was not refusing to work.

At the end of the day when the squad was putting away the mechanical mowers I was told to push some laundry carts to center gate dump them and reload them because according to the orderly Officer Linton had specifically ask for me to be given this extra work. I again notified Officer Williams of my medical condition this time infront of the whole squad and told him not to be suprised when he receive my civil suit. He then pulled me to the side and told ~~my~~ me he could give a damn about my medical condition because I far as he was concerned medical had cleared me for work squad so he was within his duty and that I better not ever put him on blast infront of inmates again.

On Thursday the 1st of March around 4:30 a.m. I signed up for sick-call and was told to report to medical on Friday between 6:00 a.m.- 7:00 a.m.

Sir, as I have previously expressed, I fear I am in grave danger. These people have threatend

A022

to do my bodily harm, I have been attacked
by officer nieves at Central Florida Reception
who struck me and was not disciplined nor was
a sufficient investigation done. And now the
people have targeted me and threatened to
due bodily harm and lock me away with
denial of gain-time and no respect whatsoever
for telling the truth or operating under D.O.C.
Policy because the feel their word will not
be denied over mine. They have no respect for
my civil rights because they feel a court will
deny any claims based on lies they are prepared
to tell. The February 21, 2012 D.R. by Ms.
Linton is evidence that they will manufacture
evidence and lie when it's clear that Sgt.
Harrison did not work on the 22nd of February
and ~~can~~ could not have begun the evistigation
on that date because just as she was again
off Yesterday Wednesday Febuary 29, 2012 and
Today, Wednesdays and Thursdays have always
been her day off. Lt. McCommas, the
administrative Leutenant has demonstrated he
will lie at any point necessary to prove a
inmate has no standing. Obviously the
harrasment will not stop in the future. Could
you all please move me somewhere away from
them and their buddies before I am harmed
further.
        I DO SWEAR UNDER PENALTY OF PERJURY
that the before is true.

                        *Romerio B. Walker*
March 1, 2017          Romerio L. Walker
Date Executed          Dc# 108533            A023

STATE OF FLORIDA
DEPARTMENT OF CORRECTIONS

**REQUEST FOR ADMINISTRATIVE REMEDY OR APPEAL**

RECEIVED
ASST. WARDEN'S OFFICE
FEB 0 8 2012
PROGRAMS
GULF C.I.

TO: ☐ Warden   ☒ Assistant Warden   ☐ Secretary, Florida Department of Corrections

From: Walker, Romerio L      108533      Gulf C.I. Annex
     Last   First   Middle Initial   Number      Institution

1202-150-0016

| Part A – Inmate Grievance |
|---|

Sir

On 1-29-12, I wrote an informal grievance addressed to the Warden. I turned it in on 1-30-12 and in it I complained about the cruel and unusual treatment I been subjected to in confinement, because of me being deprived of my hygiene and clean underclothes and my legal mail in which I requested by request to property because of a court ordered deadline. On the night of 1-30-12 I received the blanket I complained of and then on February 1, 2012 Sergeant Dawson approached me about me filing grievances and told me if I continue to send in grievances ("paperwork") then I will be written more D.R.'s and more time back here. When I asked if he was threatening me he said it was not a threat but a promise and for me to enjoy my stay. He then came back with another officer less than a hour later and shook down my property but avoided my roommates. On Feb. 3, 2012 I received the attached response denying my grievance and after Sgt. Dawson searched my property and told me that my whites looked better than most inmates in confinement. But like I told Sgt Dawson, say I have worn the same socks, boxers and T-shirts for the whole 12 days I have been in confinement without them being washed and also I don't have any hygiene other then the state toothpaste they gave me back here even though I have toothpaste, 9 bars ivory soap, three bottles of lotion, two bottles of dandruff shampoo, and two full cans of grease + 2 deodorants in my personal property along with my legal mail. If you will send me two or three bars of my ivory soap, my legal work in the blue canteen bag, my lotion and +2 deodorants dandruff shampoo then I can survive and maybe get rid of this rash and fungus that has broken out on my face, scalp, and body and wash my clothes

Feb. 3, 2012          Romerio L. Walker  108533
DATE                  SIGNATURE OF GRIEVANT AND D.C. #

★★★ Copy of 1-29-12 Grievance & Response attached by staple ★★★

*BY SIGNATURE, INMATE AGREES TO THE FOLLOWING # OF 30-DAY EXTENSIONS:  will consider only if nec
                                                                      #        Signature

**INSTRUCTIONS**

This form is used for filing a formal grievance at the institution or facility level as well as for filing appeals to the Office of the Secretary in accordance with Rule 33-103, Florida Administrative Code. When an appeal is made to the Secretary, a copy of the initial response to the grievance must be attached (except as stated below).

When the inmate feels that he may be adversely affected by the submission of a grievance at the institutional level because of the sensitive nature of the grievance, or is entitled by Chapter 33-103 to file a direct grievance he may address his grievance directly to the Secretary's Office. The grievance may be sealed in the envelope by the inmate and processed postage free through routine institutional channels. The inmate must indicate a valid reason for not initially bringing his grievance to the attention of the institution. If the inmate does not provide a valid reason or if the Secretary or his designated representative feels that the reason supplied is not adequate, the grievance will be returned to the inmate for processing at the institutional level.

**Receipt for Appeals Being Forwarded to Central Office**

Submitted by the inmate on: _____   Institutional Mailing Log #: _____   _____
                            (Date)                                                  (Received By)

                                                                      A024

DISTRIBUTION:    INSTITUTION/FACILITY        CENTRAL OFFICE
                 INMATE (2 Copies)           INMATE
                 INMATE'S FILE               INMATE'S FILE - INSTITUTION/FACILITY    1202-150-0016
                 INSTITUTIONAL GRIEVANCE FILE CENTRAL OFFICE INMATE FILE
                                             CENTRAL OFFICE GRIEVANCE FILE           Security

DC1-303 (Revised 2/05)

STATE OF FLORIDA
DEPARTMENT OF CORRECTIONS

**INMATE REQUEST**

Mail Number: _____
Team Number: _____
Institution: **12-0100**

| TO: (Check One) | ☑ Warden | ☐ Classification | ☐ Medical | ☐ Dental |
|---|---|---|---|---|
| | ☐ Asst. Warden | ☐ Security | ☐ Mental Health | ☐ Other |

| FROM: | Inmate Name | DC Number | Quarters | Job Assignment | Date |
|---|---|---|---|---|---|
| | Romerio L Walker | 108533 | P2-105L | N/A | 1-29-12 |

REQUEST: Sir   Check here if this is an informal grievance ☑

I have been in confinement 9 days without any change of cloths, a blanket, washcloth, or my hygiene even though I have 7 washcloths, soap, shampoo, hairbrush, lotion, dandruff shampoo, deodorant, underwear, t-shirts and socks in my property. My skin and scalp is breaking out and because they only give us 1/4 of a sample size bar of soap when we bathe 3 times a week, because the soap is so small, by the time we bathe there is none left to wash our whites with. It's the middle of the winter and gets really cold without a blanket at night. Such treatment is nothing short of cruel and unusual. The officers back here continuously gas inmates for no reason, Captain Mashborn being a major instrument of the unnecessary gassing. Even though I wrote about my deadline they wont give me legal mail from my property. Romerio L. Walker

All requests will be handled in one of the following ways: 1) Written Information or 2) Personal Interview. All informal grievances will be responded to in writing.

**DO NOT WRITE BELOW THIS LINE**

RESPONSE: Ref.: Security    DATE RECEIVED: _____

Your grievance has been received, reviewed, and evaluated. You were observed on 2-1-2012 to be in possession of all items in the above grievance on 2-1-2012. Based on the information provided your grievance has been denied.

[The following pertains to informal grievances only:]

Based on the above information, your grievance is __Denied__. (Returned, Denied or Approved). If your informal grievance is denied,
you have the right to submit a formal grievance in accordance with Chapter 33-103.006, F.A.C.]

Official (Signature): Jason McEman    Date: 2/01/2012

Original: Inmate (plus one copy)
CC: Retained by official responding or if the response is to an informal grievance then forward to be placed in inmate's file

This form is also used to file informal grievances in accordance with Rule 33-103.005, Florida Administrative Code.    **12-0100**

Informal Grievances and Inmate Requests will be responded to within 10 days, following receipt by the appropriate person.
You may obtain further administrative review of your complaint by obtaining form DC1-303, Request for Administrative Remedy or Appeal, completing the form as required by Rule 33-103.006, F.A.C., attaching a copy of your informal grievance and response, and forwarding your complaint to the warden or assistant warden no later than 15 days after the grievance is responded to. If the 15th day falls on a weekend or holiday, the due date shall be the next regular work day.

DC6-236 (Effective 5/06/11)    Incorporated by Reference in Rule 33-103.019, F.A.C.

A025

**PART B - RESPONSE**

| WALKER, ROMERIO | 108533 | 1202-150-006 | GULF C.I.- ANNEX | O3118L |
|---|---|---|---|---|
| INMATE | NUMBER | GRIEVANCE LOG NUMBER | CURRENT INMATE LOCATION | HOUSING LOCATION |

Your request for administrative remedy or appeal has been received, evaluated and responded to as follows:

Sergeant T. Dawson was interviewed and advised that at no time has he threatened you with more disciplinary reports if you did not stop writing grievances. You were issued the required clothing that is allowed in confinement in 02/09/2012. You will be afforded the opportunity to receive a change of clothing on shower nights in the confinement unit. Comfort items - inmates in confinement shall be afforded at a minimum the following items: toothbrush, toothpaste, a bar of soap, towel (or paper towels) toilet tissue, which was provided. Sgt. Yon was interviewed and further advised that he did not receive a request to receive your legal materials. If legal material is needed while in confinement a request needs to be sent to the Property Sergeant requesting the items needed.

Based on the above information, your grievance is denied.

You may obtain further administrative review of your complaint by obtaining Form DC1-303, Request for Administrative Remedy or Appeal, completing the form, providing attachments as required by 33-103.007(3) (a) and (b), and forwarding your complaint to the Bureau of Inmate Grievance Appeals, 501 South Calhoun Street, Tallahassee, Florida 32399-2500.

J.D. Sloan, Assistant Warden                    C. Halley, Warden

| | | 2/21/12 |
|---|---|---|
| SIGNATURE AND TYPED OR PRINTED NAME OF EMPLOYEE RESPONDING | SIGNATURE OF WARDEN, ASST. WARDEN, OR SECRETARY'S REPRESENTATIVE | DATE |

COPY DISTRIBUTION -INSTITUTION / FACILITY
(2 Copies) Inmate
(1 Copy) Inmate's File
(1 Copy) Retained by Official Responding

COPY DISTRIBUTION - CENTRAL OFFICE
(1 Copy) Inmate
(1 Copy) Inmate's File - Inst./Facility
(1 Copy) C.O. Inmate File
(1 Copy) Retained by Official Responding

A026

**INMATE REQUEST**

**STATE OF FLORIDA**
**DEPARTMENT OF CORRECTIONS**

_Sgt Van_

Mail Number: _____
Team Number: _____
Institution: _____

| TO: (Check One) | ☐ Warden ☐ Asst. Warden | ☐ Classification ☐ Security | ☐ Medical ☐ Mental Health | ☐ Dental ☒ Other _Property_ |
|---|---|---|---|---|

| FROM: | Inmate Name _Romero L Walker_ | DC Number _108533_ | Quarters _PZ-2191 Confinement_ | Job Assignment _Confinement_ | Date _2-8-12_ |
|---|---|---|---|---|---|

**REQUEST**                                    Check here if this is an informal grievance ☐

Sir,
    I have broken out bad in confinement because
of lack of hygiene. Could you please bring me
a bar of soap, shampoo, lotion, toothpaste
blank envelopes (large and small) and all of my
legal mail in the blue canteen bag. Thank you very
much
                        _Romero L Walker_

        (2nd Request)

All requests will be handled in one of the following ways: 1) Written Information or  2) Personal Interview. All informal grievances will be responded to in writing.

_____ **DO NOT WRITE BELOW THIS LINE** _____

**RESPONSE**                              DATE RECEIVED: _____

[The following pertains to informal grievances only:]
Based on the above information, your grievance is _____. (Returned, Denied, or Approved). If your informal grievance is denied, you have the right to submit a formal grievance in accordance with Chapter 33-103.006, F.A.C.]

| Official (Signature): | Date: |
|---|---|

Original: Inmate (plus one copy)
CC: Retained by official responding or if the response is to an informal grievance then forward to be placed in inmate's file

This form is also used to file informal grievances in accordance with Rule 33-103.005, Florida Administrative Code.

Informal Grievances and Inmate Requests will be responded to within 10 days, following receipt by the appropriate person.
You may obtain further administrative review of your complaint by obtaining form DC1-303, Request for Administrative Remedy or Appeal, completing the form as required by Rule 33-103.006, F.A.C., attaching a copy of your informal grievance and response, and forwarding your complaint to the warden or assistant warden no later than 15 days after the grievance is responded to. If the 15th day falls on a weekend or holiday, the due date shall be the next regular work day.

DC6-236 (Effective 5/06/11)
                    Incorporated by Reference in Rule 33-103.019, F.A.C.

A0 27

## Inmate Impounded Personal Property List
### (Please Print)

Inmate's Name: Walker, Romero    Inmate Number: 108553

Institution: Gulf Annex    Date Property Stored: 1-23-12

| Item | Number | Code | Item | Number | Code |
|---|---|---|---|---|---|
| Book & magazine | 3 | S | | | |
| Bath towel | | # | | | |
| Colored shorts | 3 | S | | | |
| Boxers | 3 | S | | | |
| T-shirt | 3 | S | | | |
| Sweat shirt & pants | 1 | S | | | |
| Robe | 1 | S | | | |
| | 1 | S | | | |
| Blanket | 1 | S | | | |
| Candy snack | 1 | S | | | |
| T.V. antenna holder | 1 | S | | | |
| Watch | 1 | S | | | |
| Photos & envelopes | | S | | | |
| Fan & radio & wires | 1 | S | | | |
| | 1 | S | | | |
| Chicken bag (files) | 2 | S | | | |
| | 1 | #K | | | |
| Charles Toner Slater | 1 pr | # | | | |
| | 1 | S | | | |
| Soap & wash rag | 1 | S | | | |
| Books | 1 | S | | | |
| Playing cards | 3 | S | | | |
| | 1 | S | | | |
| Personal bag | 3 cards | S | | | |
| | 1 | S | | | |
| Hair clippers | 1 | S | | | |
| | 1 | S | | | |
| | 1 | S | | | |
| | 1 | | | | |

**II.** Signature of Officer(s) inventorying property:

Date: 1-23-12

Officer's Name-PRINT: M. Fromet    Rank: c/o

Signature of Officer

Date: 1-23-12

Officer's Name-PRINT    Rank: c/o

Signature of Officer

**III.** The personal property listed above was inventoried in my presence and is a true listing of all personal property that I am returning.

Date: 1-23-12

Signature of Inmate    Inmate Number: 108553

**IIII.** I have on this date received all of the above personal property marked #K – Inmate allowed to keep.

Signature of Inmate    Inmate Number: 108553    Date: 1-23-12

Name of Officer issuing property-PRINT    Rank: c/o

Signature of Officer issuing property    c/o

**IV.** I have on this date received all of the above listed personal property which has been stored.

Date

Signature of Inmate    Inmate Number

**V.** Signature of Property Officer who returns property to inmate.

Date

Name of Officer returning stored property-PRINT

Signature of Officer returning stored property    Rank

ORIGINAL – Remains with property until Section V is signed by inmate, then original will be filed in the inmate's Personal Property File.
COPY – To inmate whose property was collected
COPY – Institutional Personal Property File

Symbols indicate:
S – storage
c – contraband/confiscated
#K – Inmate allowed to keep

DC6-220 (Effective 10/06) (Revised 10/08) Incorporated By Reference in Rule 33-602.201, F.A.C.

A028

STATE OF FLORIDA
DEPARTMENT OF CORRECTIONS

REQUEST FOR ADMINISTRATIVE REMEDY OR APPEAL

RECEIVED
ASST. WARDEN'S OFFICE
FEB 08 2012
PROGRAMS
GULF C.I.

TO: ☐ Warden ☒ Assistant Warden ☐ Secretary, Florida Department of Corrections

From: Walker, Romeiro L.      D-108533      Gulf C.I. Annex
     Last   First   Middle Initial        Number        Institution

1202-150-004

| Part A – Inmate Grievance |

Sir,

On 1-23-12 I was written a grievance D.R. by sergeant Cook, for disorderly conduct. The D.R. was served at 20:45 on 1-25-12, 48 hours and 45 minutes after it written and 53 hours after I was placed in confinement. When I appeared before the D.R. comittee I explained that I had unknowingly been working out in my cell with my headphones on when count was announced and was unaware that count was in progress until I turned around and saw sergeant cook standing in the doorway of my cell. I then moved for the D.C. to be dismissed because the investigation did not begin within the required 24 hours. Ms. Jackson then stated, since you want to be technical, how do you know that the investigation didn't begin with sergeant cook. I then asked if there was any statements from sergeant cook other than what's written in the D.R. At this time Captain Addisson told me that I don't get to ask any questions, I only get to answer. Ms. Jackson then said, maybe he interviewed Sgt. cook and Sgt cook simply stated I concur with what's in the D.R. but she was unable to give me a date or time where such was shown to have occurred. She then told me that technically you working out with your headphones on could have been perceived as dancing, and found me guilty and sentenced me to 30 days confinement. The D.R. court's findings are legally limited in what facts and evidence are before the court. Ms. Jackson was without authority to assume the investigation was timely when there was no evidentiary support for such a conclusion. Please reverse the court's finding

2-2-17                              Romeiro L. Walker 108533
DATE                               SIGNATURE OF GRIEVANT AND D.C. #

*BY SIGNATURE, INMATE AGREES TO THE FOLLOWING # OF 30-DAY EXTENSIONS: 01   Romeiro L. Walker
                                                                          #        Signature

INSTRUCTIONS

This form is used for filing a formal grievance at the institution or facility level as well as for filing appeals to the Office of the Secretary in accordance with Rule 33-103, Florida Administrative Code. When an appeal is made to the Secretary, a copy of the initial response to the grievance must be attached (except as stated below).

When the inmate feels that he may be adversely affected by the submission of a grievance at the institutional level because of the sensitive nature of the grievance, or is entitled by Chapter 33-103 to file a direct grievance he may address his grievance directly to the Secretary's Office. The grievance may be sealed in the envelope by the inmate and processed postage free through routine institutional channels. The inmate must indicate a valid reason for not initially bringing his grievance to the attention of the institution. If the inmate does not provide a valid reason or if the Secretary or his designated representative feels that the reason supplied is not adequate, the grievance will be returned to the inmate for processing at the institutional level.

Receipt for Appeals Being Forwarded to Central Office

Submitted by the inmate on _____   Institutional Mailing Log #: _____
                        (Date)

_____                              _____
                                                                (Received By)
                                                                 A□50

DISTRIBUTION:    INSTITUTION/FACILITY          CENTRAL OFFICE
                 INMATE (2 Copies)             *INMATE
                 INMATE'S FILE                 INMATE'S FILE - INSTITUTION/FACILITY   1202-150-004
                 INSTITUTIONAL GRIEVANCE FILE  CENTRAL OFFICE INMATE FILE
                                               CENTRAL OFFICE GRIEVANCE FILE          Gloss. A050

DC1-303 (Revised 2/05)

```
                      FLORIDA DEPARTMENT OF CORRECTIONS      01/24/2012
  ISSO150 (01)         CHARGING DISCIPLINARY REPORT                        PAGE:     1
                            LOG # 150-120090
--------------------------------------------------------------------------
 DC#: 108533   INMATE NAME: WALKER, ROMERIO          INFRACTION
 VIOLATION CODE:  0917   TITLE: DISORDERLY CONDUCT    DATE: 01/23/12
 FACILITY CODE:  150    NAME: GULF C.I.- ANNEX        TIME: 15:34
--------------------------------------------------------------------------
```

I.    STATEMENT OF FACTS
      ON JANUARY 23, 2012 I WAS ASSIGNED AS Q-DORMITORY HOUSING
      SUPERVISOR. AT APPROXIMATELY 3:34PM, I OBSERVED INMATE
      WALKER, ROMERIO DC#108533 ON THE UPPER TIER OF WING 1
      DANCING AS I CONDUCTED COUNT. I THEN INSTRUCTED INMATE
      WALKER TO CEASE HIS BEHAVIOR AT WHICH TIME HE YELLED
      AS IF HE WERE SINGING, "YOU GOT ME!! YOU GOT ME!!" THUS
      GAINING THE ATTENTION OF THE OTHER INMATES HOUSED IN THE
      WING. I INSTRUCTED HIM TO CEASE HIS YELLING TO WHICH HE
      RELUCTANTLY COMPLIED. I THEN BEGAN TO COUNSEL WITH HIM
      CONCERNING HIS BEHAVIOR, AT WHICH TIME HE BEGAN SINGING
      AND DANCING AGAIN. ONLY AFTER EXTENSIVE COUNSELING DID
      INMATE WALKER CEASE HIS DISRUPTIVE BEHAVIOR. INMATE WALKER'S
      ACTIONS DISRUPTED THE NORMAL OPERATIONS OF THE DORMITORY.
      THE SHIFT OIC WAS NOTIFIED AND INSTRUCTED ME TO SUBMIT THIS
      REPORT. INMATE WALKER WAS PLACED IN ADMINISTRATIVE
      CONFINEMENT PENDING CHARGE 9-17 DISORDERLY CONDUCT.


   REPORT WRITTEN: 01/23/12, AT 20:00      BY: CCN25 - COOK, CORY
---------------------------------------------------------------------

II.  INMATE NOTIFICATION OF CHARGES: DATE DELIVERED: _1/25/11_, AT _20_:_45_

          NO HEARING SHALL COMMENCE PRIOR TO 24 HOURS OF DELIVERY OF CHARGES
          EXCEPT WHEN THE INMATE'S RELEASE DATE DOES NOT ALLOW TIME FOR SUCH
          NOTICE OR THE INMATE WAIVES THE 24 HOUR PERIOD AS AUTHORIZED IN RULE
          33-601, FLORIDA ADMINISTRATIVE CODE.

              DELIVERED BY : _55206_ - _____
---------------------------------------------------------------------

NOTICE TO INMATE:
AS AN INMATE BEING CHARGED WITH A VIOLATION OF THE RULES OF PROHIBITED
CONDUCT, YOU ARE ADVISED THE FOLLOWING:
---------------------------------------------------------------------

INVESTIGATION:
AN IMPARTIAL INVESTIGATION WILL BE CONDUCTED ON THIS DISCIPLINARY REPORT.
DURING THE INVESTIGATION OF THE DISCIPLINARY REPORT, YOU WILL BE ADVISED
OF THE CHARGES AGAINST YOU AND YOU MAY REQUEST STAFF ASSISTANCE. DURING
THE INVESTIGATION YOU SHOULD MAKE KNOWN ANY WITNESSES TO THE INVESTIGATING
OFFICER. THE TESTIMONY OF WITNESSES SHALL BE PRESENTED BY WRITTEN STATEMENTS.
SEE RULE 33-601.307(3) FOR COMPLETE INFORMATION REGARDING WITNESSES. YOU WILL
HAVE THE OPPORTUNITY TO MAKE A STATEMENT IN WRITING REGARDING THE CHARGE AND
TO PROVIDE INFORMATION RELATING TO THE INVESTIGATION.
---------------------------------------------------------------------

A030

```
                       FLORIDA DEPARTMENT OF CORRECTIONS      01/24/2012
ISSO150 (01)           CHARGING DISCIPLINARY REPORT                        PAGE:      2
                           LOG # 150-120090
-------------------------------------------------------------------
 DC#: 108533    INMATE NAME: WALKER, ROMERIO        INFRACTION
 VIOLATION CODE:  0917    TITLE: DISORDERLY CONDUCT  DATE: 01/23/12
 FACILITY CODE:  150     NAME:  GULF C.I.- ANNEX     TIME: 15:34
-------------------------------------------------------------------
```

DELIVERY OF CHARGES:
A COPY OF THE CHARGES WILL BE PROVIDED TO YOU AT LEAST 24 HOURS PRIOR
TO THE CONVENING OF THE DISCIPLINARY HEARING UNLESS YOU WAIVE THE WAITING
PERIOD. THE HEARING MAY BEGIN ANY TIME AFTER THE 24 HOUR PERIOD UNLESS
YOU SIGN THE WAIVER.
-------------------------------------------------------------------

DISCIPLINARY HEARING:
THE DECISION WILL BE MADE IN ADVANCE WHETHER THE HEARING WILL BE CONDUCTED
BY THE DISCIPLINARY TEAM OR THE HEARING OFFICER. YOU MAY REQUEST A HEARING
BY THE FULL DISCIPLINARY TEAM RATHER THAN THE HEARING OFFICER. YOU WILL
APPEAR IN PERSON BEFORE THE DISCIPLINARY TEAM/HEARING OFFICER UNLESS YOU
WAIVE THIS APPEARANCE BY SIGNING A WAIVER FORM. YOU WILL BE ADVISED OF
THE CHARGES PLACED AGAINST YOU AND THE RANGE OF PENALTY IF FOUND GUILTY.
YOU MAY REQUEST STAFF ASSISTANCE. THE CHAIRPERSON/HEARING OFFICER WILL READ
THE STATEMENT AND ASK YOU FOR YOUR PLEA. A GUILTY PLEA REQUIRES NO FURTHER
STATEMENT; HOWEVER, YOU MAY MAKE A STATEMENT FOR THE TEAM/HEARING OFFICER
TO CONSIDER. A NO CONTEST PLEA WILL BE TREATED AS A GUILTY PLEA. A REFUSAL
TO ENTER A PLEA WILL BE TREATED AS A NOT GUILTY PLEA. IF YOU ENTER A NOT
GUILTY PLEA, YOU WILL BE ALLOWED TO MAKE A STATEMENT ON YOUR OWN BEHALF,
PRESENT EVIDENCE AND REQUEST STAFF OR INMATE WITNESSES AS DEEMED APPROPRIATE
BY THE TEAM/HEARING OFFICER. AFTER THE TEAM/HEARING OFFICER HAS MADE A
DECISION, YOU WILL BE ADVISED VERBALLY AND IN WRITING AS TO THE DECISION AND
THE EVIDENCE RELIED UPON IN MAKING THAT DECISION. IF YOU ARE FOUND GUILTY, YOU
WILL BE ADVISED VERBALLY AND IN WRITING AS TO THE RECOMMENDED PENALTY.
-------------------------------------------------------------------

APPEAL:
 IF YOU ARE FOUND GUILTY, YOU MAY APPEAL THIS DECISION BY FILING A
 FORMAL GRIEVANCE WITH THE WARDEN OF YOUR FACILITY WITHIN 15 DAYS OF
THE RECEIPT OF WRITTEN NOTICE OF THE TEAM/HEARING OFFICERS DECISION.
FOR INFORMATION REGARDING THE RULES ON DISCIPLINE, REFER TO: 33-601, F. A. C.

```
                  FLORIDA DEPARTMENT OF CORRECTIONS          01/31/12
ISSO158 (14)           DISCIPLINARY REPORT                   PAGE   1
                      HEARING INFORMATION
                     LOG #: 150-120090
------------------------------------------------------------------------------
DC#: 108533   INMATE NAME: WALKER, ROMERIO              P2105L INFRACTION
VIOLATION CODE:  0917   TITLE: DISORDERLY CONDUCT            DATE: 01/23/12
FACILITY CODE:  150     NAME:  GULF C.I.- ANNEX             TIME: 15:34
------------------------------------------------------------------------------
          TEAM    FINDINGS AND ACTION   DATE: 01/31/12, AT: 09:30
       INMATE OFFERED STAFF ASSISTANCE: DECLINED
       INMATE PLEA: NOT GUILTY    FINDINGS: GUILTY
       INMATE PRESENT: YES
    POSTPONEMENT:
    BASIS FOR DECISION:
       BASED ON SERGEANT COOK'S WRITTEN REPORT AND CONFIRMED BY THE
       INVESTIGAITON WHICH STATES IN PART, " I OBSERVED INMATE
       WALKER, ROMERIO DC#108533 ON THE UPPER TIER OF WING 1
       DANCING AS I CONDUCTED COUNT. I THEN INSTRUCTED INMATE
       WALKER TO CEASE HIS BEHAVIOR AT WHICH TIME HE YELLED AS IF
       HE WERE SINGING, "YOU GOT ME!! YOU GOT ME!!" THUS GAINING
       THE ATTENTION OF THE OTHER INMATES HOUSED IN THE WING. I
       INSTRUCTED HIM TO CEASE HIS YELLING TO WHICH HE RELUCTANTLY
       COMPLIED. I THEN BEGAN TO COUNSEL WITH HIM CONCERNING HIS
       BEHAVIOR, AT WHICH TIME HE BEGAN SINGING AND DANCING AGAIN."
       ALL WITNESS STATEMENT WERE READ AND TAKEN INTO
       CONSIDERATION.

 ACTIONS TAKEN:
  DISCIPLINARY CONFINEMENT:  30; PROBATION DAYS SET:   0 CONSECUTIVE

  RESTITUTION:      $.00; INDIV.REVIEW/COUNSEL?: N; CONFISCATE CONTRABAND?: N

 TEAM CHAIRMAN:   JTL11 - JACKSON,TAMEKA L.
 TEAM MEMBERS:    ASA01 - ADDISON,SANDRA            -
------------------------------------------------------------------------------
------------------------------------------------------------------------------
```

2 /9 L

N033

received 2-2-12

) copy)

**PART B - RESPONSE**

| WALKER, ROMERIO | 108533 | 1202-150-004 | GULF C.I.- ANNEX | O3118L |
|---|---|---|---|---|
| INMATE | NUMBER | GRIEVANCE LOG NUMBER | CURRENT INMATE LOCATION | HOUSING LOCATION |

Your request for administrative remedy or appeal has been received, evaluated and responded to as follows:

The disciplinary report you are grieving for the violation of (9-17) Disorderly Conduct, has been thoroughly reviewed and revealed the following. In your grievance you allege your disciplinary report was not processed in accordance with Chapter 33-601. Your disciplinary report was written on 01/23/2012 at 2000 hours; the investigation began on 01/24/2012 at 1900 hours and it was delivered to you on 01/25/2012 at 2045 hours. The hearing team was interviewed and advised you were found guilty based on Sergeant Cook's written report and the information furnished through the investigation. They also advised that the disciplinary process was explained to you at your hearing and you were given an opportunity to make a statement. You have failed to offer any new or additional information that would cause for a reversal of the team's decision.

Based on the above information your grievance is denied.

You may obtain further administrative review of your complaint by obtaining Form DC1-303, Request for Administrative Remedy or Appeal, completing the form, providing attachments as required by 33-103.007(3) (a) and (b), and forwarding your complaint to the Bureau of Inmate Grievance Appeals, 501 South Calhoun Street, Tallahassee, Florida 32399-2500.

J. D. Sloan, Assistant Warden                    C. Halley, Warden

| SIGNATURE AND TYPED OR PRINTED NAME OF EMPLOYEE RESPONDING | SIGNATURE OF WARDEN, ASST. WARDEN, OR SECRETARY'S REPRESENTATIVE | 2.21.12 DATE |
|---|---|---|

COPY DISTRIBUTION -INSTITUTION / FACILITY

(2 Copies) Inmate

(1 Copy) Inmate's File

(1 Copy) Retained by Official Responding

COPY DISTRIBUTION - CENTRAL OFFICE

(1 Copy) Inmate

(1 Copy) Inmate's File - Inst./Facility

(1 Copy) C.O. Inmate File

(1 Copy) Retained by Official Responding

A0339
A033

MAILED/FILED
WITH AGENCY CLERK

MAR 2 9 2012

Department of Corrections
Bureau of Inmate Grievance Appeals

**PART B - RESPONSE**

| WALKER, ROMERIO | 108533 | 12-6-08411 | GULF C.I.- ANNEX | P2120L |
|---|---|---|---|---|
| INMATE | NUMBER | GRIEVANCE LOG NUMBER | CURRENT INMATE LOCATION | HOUSING LOCATION |

Your request for administrative appeal is in non-compliance with Chapter 33-103, Inmate Grievance Procedure, which states, "each grievance must address only one issue or complaint." Your current request for administrative appeal addresses more than one issue and/or complaint.

Upon receipt of this response, if you are within the allowable time frames for processing a grievance, you may resubmit your grievance at your current location in compliance with Chapter 33-103, Inmate Grievance Procedure.

Based on the foregoing information, your grievance appeal is being returned.

G. WELLHAUSEN

_____          _____          3/15/12
SIGNATURE AND TYPED OR PRINTED NAME          SIGNATURE OF WARDEN, ASST. WARDEN, OR          DATE
OF EMPLOYEE RESPONDING                        SECRETARY'S REPRESENTATIVE

COPY DISTRIBUTION -INSTITUTION / FACILITY

(2 Copies) Inmate

(1 Copy) Inmate's File

(1 Copy) Retained by Official Responding

COPY DISTRIBUTION - CENTRAL OFFICE

(1 Copy) Inmate

(1 Copy) Inmate's File - Inst./Facility

(1 Copy) C.O. Inmate File

(1 Copy) Retained by Official Responding

A034

STATE OF FLORIDA
DEPARTMENT OF CORRECTIONS

REQUEST FOR ADMINISTRATIVE REMEDY OR APPEAL

RECEIVED
ASST. WARDEN'S OFFICE

MAR 07 2012

PROGRAMS
GULF C.I.

TO: ☒ Warden ☐ Assistant Warden ☐ Secretary, Florida Department of Corrections

From: Walker, Bumern L    108535    Gulf C.I. Anax
Last  First  Middle Initial    Number    Institution
                                         1203-150-013

| Part A — Inmate Grievance |
|---|

I have

I have asked three times verbally to be allowed to put in for Protective Management because I am in fear of my life, but no one will bring me any papers because they say my request will not protect me from the threats being made by the captains. So I want you to order your captains not to harm me and to allow me to put in for Protective Management.

3-5-17
DATE

Bumern L Walker 108535
SIGNATURE OF GRIEVANT AND D.C.#

*BY SIGNATURE, INMATE AGREES TO THE FOLLOWING # OF 30-DAY EXTENSIONS: 0  Bumern L Walker
# Signature

INSTRUCTIONS

This form is used for filing a formal grievance at the institution or facility level as well as for filing appeals to the Office of the Secretary in accordance with Rule 33-103, Florida Administrative Code. When an appeal is made to the Secretary, a copy of the initial response to the grievance must be attached (except as stated below).

When the inmate feels that he may be adversely affected by the submission of a grievance at the institutional level because of the sensitive nature of the grievance, or is entitled by Chapter 33-103 to file a direct grievance he may address his grievance directly to the Secretary's Office. The grievance may be sealed in the envelope by the inmate and processed postage free through routine institutional channels. The inmate must indicate a valid reason for not initially bringing his grievance to the attention of the institution. If the inmate does not provide a valid reason or if the Secretary or his designated representative feels that the reason supplied is not adequate, the grievance will be returned to the inmate for processing at the institutional level.

Receipt for Appeals Being Forwarded to Central Office

Submitted by the inmate on: _____  Institutional Mailing Log #: _____  _____
(Date)                                                        (Received By)

A 035

| DISTRIBUTION: | INSTITUTION/FACILITY | CENTRAL OFFICE |
|---|---|---|
| | INMATE (2 Copies) | INMATE |
| | INMATE'S FILE | INMATE'S FILE - INSTITUTION/FACILITY |
| | INSTITUTIONAL GRIEVANCE FILE | CENTRAL OFFICE INMATE FILE |
| | | CENTRAL OFFICE GRIEVANCE FILE |

1 203-150-013

DC1-303 (Revised 2/05)

**PART B - RESPONSE**

| WALKER, ROMERIO | 108533 | 1203-150-013 | GULF C.I.- ANNEX | P2117L |
|---|---|---|---|---|
| INMATE | NUMBER | GRIEVANCE LOG NUMBER | CURRENT INMATE LOCATION | HOUSING LOCATION |

Your request for Administrative Remedy or Appeal has been received and is being returned in accordance with F.A.C. Chapter 33-103.014(g). The grievance did not have the attachments required:  informal grievance and response.  In accordance with Chapter 33-103.006(1)(g), the inmate shall attach a copy of his informal grievance and response when filing form DC1-303.

You are grieving that you have "asked three (3) times verbally to be allowed to be placed in Protective Management". This subject requires you to file at the informal level first; however, a copy of your grievance will be sent to Major Segers for his review.

Based on the information above, your grievance is returned.

In order for you to receive administrative review of your complaint, you must correct the stated defects and re-submit the grievance within the time frames set forth in Rule 33-103.011, F.A.C.

J.D. Sloan, Assistant Warden                    J.D. Sloan, Assistant Warden

| | | 3/7/12 |
|---|---|---|
| SIGNATURE AND TYPED OR PRINTED NAME OF EMPLOYEE RESPONDING | SIGNATURE OF WARDEN, ASST. WARDEN, OR SECRETARY'S REPRESENTATIVE | DATE |

COPY DISTRIBUTION -INSTITUTION / FACILITY
(2 Copies) Inmate
(1 Copy) Inmate's File
(1 Copy) Retained by Official Responding

COPY DISTRIBUTION - CENTRAL OFFICE
(1 Copy) Inmate
(1 Copy) Inmate's File - Inst./Facility
(1 Copy) C.O. Inmate File
(1 Copy) Retained by Official Responding

A 036

**STATE OF FLORIDA**
**DEPARTMENT OF CORRECTIONS**

RECEIVED

**REQUEST FOR ADMINISTRATIVE REMEDY OR APPEAL**

MAR 12 2012

TO:  ☐ Warden    ☐ Assistant Warden    ☒ Secretary, Florida Department of Corrections

DEPARTMENT OF CORRECTIONS
INMATE GRIEVANCES

From: Walker, Romero L      108533      Institution
      Last   First   Middle Initial      Number      12-6-08994

---

**Part A – Inmate Grievance**

am being

I have been threatened by Captain Addison and Captain
Mashburn at this institution. Captain Addison has threatened to
mace me and Captain Mashburn is threatening to jump on me
and beat me up. I have verbally and in writing asked for
Protective management five times but no one will bring
me a form because they say it wont protect me from
either captains because I will still be in confinement, they
will still make their rounds and have access to discipline
me. I have previously advised the Inspect General Kelly
Martin of my fears and no one seems to care, so
I am writing as documentation of my concerns and
your failure to protect me. No one seems to be concerned
that I have not caused any disturbance or done
anything to warrant use of force.

---

3-5-12                          Romeo L Walker  108533
DATE                          SIGNATURE OF GRIEVANT AND D.C. #

*BY SIGNATURE, INMATE AGREES TO THE FOLLOWING # OF 30-DAY EXTENSIONS:  O  Romeo Walker
                                                                    #        Signature

**INSTRUCTIONS**

This form is used for filing a formal grievance at the institution or facility level as well as for filing appeals to the Office of the Secretary in accordance with Rule 33-103, Florida Administrative Code.  When an appeal is made to the Secretary, a copy of the initial response to the grievance must be attached (except as stated below).

When the inmate feels that he may be adversely affected by the submission of a grievance at the institutional level because of the sensitive nature of the grievance, or is entitled by Chapter 33-103 to file a direct grievance he may address his grievance directly to the Secretary's Office.  The grievant may be sealed in the envelope by the inmate and processed postage free through routine institutional channels.  The inmate must indicate a valid reason for not initially bringing his grievance to the attention of the institution.  If the inmate does not provide a valid reason or if the Secretary or his designated representative feels that the reason supplied is not adequate, the grievance will be returned to the inmate for processing at the institutional level.

Receipt for Appeals Being Forwarded to Central Office

Submitted by the inmate on: _____   10/6   Capt. Addison
                            (Date)
          Institutional Mailing Log # 12-150-039   M. Potts
                                                   (Received by)
                                                   Capt. Mashburn

DISTRIBUTION:    INSTITUTION/FACILITY        CENTRAL OFFICE
                 INMATE (2 Copies)           INMATE
                 INMATE'S FILE               INMATE'S FILE - INSTITUTION/FACILITY
                 INSTITUTIONAL GRIEVANCE FILE  CENTRAL OFFICE INMATE FILE
                                             CENTRAL OFFICE GRIEVANCE FILE    A037

DC1-303 (Revised 2/05)



WITH AGENCY _____

MAR 2 9 2012

DEPARTMENT OF CORRECTIONS
BUREAU OF INMATE GRIEVANCE APPEALS **PART B - RESPONSE**

| WALKER, ROMERIO | 108533 | 12-6-08994 | GULF C.I.- ANNEX | P2120L |
|---|---|---|---|---|
| INMATE | NUMBER | GRIEVANCE LOG NUMBER | CURRENT INMATE LOCATION | HOUSING LOCATION |

Your request for administrative appeal is in non-compliance with the Rules of the Department of Corrections, Chapter 33-103, Inmate Grievance Procedure. The rule requires that you first submit your appeal at the appropriate level at the institution. You have not done so or you have not provided this office with a copy of that appeal, nor have you provided a valid or acceptable reason for not following the rules.

The institution should be given the opportunity to respond to your issue.

Furthermore, a copy of your grievance has been forwarded to the Warden's office for review.

Upon receipt of this response, you are allowed an additional 15 days from the date this response was mailed (date stamped in upper left corner) to resubmit your grievance at your current location in compliance with Chapter 33-103, Inmate Grievance Procedure. Attach a copy of this response to your re-filed grievance.

Based on the foregoing information, your grievance is returned without action.

T. Bowden

| | | |
|---|---|---|
| SIGNATURE AND TYPED OR PRINTED NAME OF EMPLOYEE RESPONDING | SIGNATURE OF WARDEN, ASST. WARDEN, OR SECRETARY'S REPRESENTATIVE | 3/27/12 DATE |

COPY DISTRIBUTION -INSTITUTION / FACILITY

(2 Copies) Inmate

(1 Copy) Inmate's File

(1 Copy) Retained by Official Responding

COPY DISTRIBUTION - CENTRAL OFFICE

(1 Copy) Inmate

(1 Copy) Inmate's File - Inst/Facility

(1 Copy) C.O. Inmate File

(1 Copy) Retained by Official Responding

A 038

STATE OF FLORIDA
DEPARTMENT OF CORRECTIONS

REQUEST FOR ADMINISTRATIVE REMEDY OR APPEAL   1203- 150- 007

TO: ☒ Warden      ☐ Assistant Warden      ☐ Secretary, Florida Department of Corrections

From: Walker, Romerio  L        108533        Gulf C.I. Annex
      Last    First   Middle Initial      Number         Institution

| Part A – Inmate Grievance |
| --- |

Warden,
    Because I have filed a complaint against Lt.
McCumbes and the Asst. Warden I would like to appeal
to you. As can be seen from the attached grievance. I
filed a complaint requesting the return of my legal mail
that was taken from me by officer Jamie Linton and
given to a inmate without my permission. Because it
is a violation of D.O.C. policy for a officer to take a
inmates legal work and give it to another inmate
without the inmates permission, I asked that officer
Linton be disciplined for her conduct but my complaint
was denied because my legal work was returned four days
after filing the grievance and 7 days after taken by
officer Linton. The return of my legal work does not
excuse her actions. Her actions violated my civil rights
and should not go unpunished

3-7-17                          _Romerio B. Walker_ 108533
DATE                          SIGNATURE OF GRIEVANT AND D.C. #

*BY SIGNATURE, INMATE AGREES TO THE FOLLOWING # OF 30-DAY EXTENSIONS:  0  _Rom Walker_
                                                                      #        Signature

INSTRUCTIONS

This form is used for filing a formal grievance at the institution or facility level as well as for filing appeals to the Office of the Secretary in accordance with Rule 33-103, Florida Administrative Code.  When an appeal is made to the Secretary, a copy of the initial response to the grievance must be attached (except as stated below).

When the inmate feels that he may be adversely affected by the submission of a grievance at the institutional level because of the sensitive nature of the grievance, or is entitled by Chapter 33-103 to file a direct grievance he may address his grievance directly to the Secretary's Office.  The grievance may be sealed in the envelope by the inmate and processed postage free through routine institutional channels.  The inmate must indicate a valid reason for not initially bringing his grievance to the attention of the institution  If the inmate does not provide a valid reason or if the Secretary or his designated representative feels that the reason supplied is not adequate, the grievance will be returned to the inmate for processing at the institutional level.

Receipt for Appeals Being Forwarded to Central Office

Submitted by the inmate on:_____   Institutional Mailing Log #:_____   _____
                          (Date)                                                    (Received By)

DISTRIBUTION:      INSTITUTION/FACILITY          CENTRAL OFFICE
                   INMATE (2 Copies)             INMATE
                   INMATE'S FILE                 INMATE'S FILE - INSTITUTION/FACILITY
                   INSTITUTIONAL GRIEVANCE FILE  CENTRAL OFFICE INMATE FILE
                                                 CENTRAL OFFICE GRIEVANCE FILE     A 039
DC1-303 (Effective 2/05)          Incorporated by Reference in Rule 33-103.019, F.A.C.

STATE OF FLORIDA
DEPARTMENT OF CORRECTIONS

**INMATE REQUEST**

Mail Number: _____
Team Number: _____
Institution: 12-0211

| TO: (Check One) | ☒ Warden ☐ Asst. Warden | ☐ Classification ☐ Security | ☐ Medical ☐ Mental Health | ☐ Dental ☐ Other |
|---|---|---|---|---|

| FROM: | Inmate Name | DC Number | Quarters | Job Assignment | Date |
|---|---|---|---|---|---|
| | Romeio L. Walker | 108533 | 03-1182 | Lib Grds | 2-24-12 |

**REQUEST**     Check here if this is an informal grievance ☒

Sir,
On Febyary 21, 2017, Officer Linton took my legal mail and gave it to an inmate named Janes (last name). As of todays date I have not received my legal mail back. The document are in reference to litigation ~~pase~~ and in sum has a value of $100,000.00 to me. Could you please have offixce Linton return my legal mail and discipline her about giving away my confidential mail to another inmate without my permission. Should her actions cause me to lose + hold Die.
Licible.     Thank you Very much.

All requests will be handled in one of the following ways: 1) Written Information or 2) Personal Interview. All informal grievances will be responded to in writing.

**RECEIVED**
**ASST. WARDEN'S OFFICE**

DO NOT WRITE BELOW THIS LINE

**RESPONSE**   DATE RECEIVED: FEB 28 2012

The Librarian stated you
received your documents
Yesterday 2-28-12

**PROGRAMS
GULF C.I.**

[The following pertains to informal grievances only:]
Based on the above information, your grievance is **Denied** (Returned, Denied, or Approved). If your informal grievance is denied, you have the right to submit a formal grievance in accordance with Chapter 33-103.006, F.A.C.]

Official (Signature): P. Wells          Date: 2-28-12

Security
12-0211

Original: Inmate (plus one copy)
CC: Retained by official responding or if the response is to an informal grievance then forward to be placed in inmate's file

This form is also used to file informal grievances in accordance with Rule 33-103.005, Florida Administrative Code.

Informal Grievances and Inmate Requests will be responded to within 10 days, following receipt by the appropriate person.
You may obtain further administrative review of your complaint by obtaining form DC1-303, Request for Administrative Remedy or Appeal, completing the form as required by Rule 33-103.006, F.A.C., attaching a copy of your informal grievance and response, and forwarding your complaint to the warden or assistant warden no later than 15 days after the grievance is responded to. If the 15th day falls on a weekend or holiday, the due date shall be the next regular work day.

DC6-236 (Effective 5/06/11)        Incorporated by Reference in Rule 33-103.019, F.A.C.

A040

**PART C - RECEIPT (TO BE COMPLETED BY DC STAFF)**

RETURN TO:

| WALKER, ROMERIO | 108533 | 1203-150-007 | GULF C.I.- ANNEX | P2117L |
|---|---|---|---|---|
| NAME | NUMBER | GRIEVANCE LOG NUMBER | CURRENT INMATE LOCATION | HOUSING LOCATION |

I ACKNOWLEDGE RECEIPT THIS DATE OF A GRIEVANCE FROM THE ABOVE INMATE IN REGARD TO THE FOLLOWING SUBJECT:

06O (OTHER        (INST OPER))

| 3/6/12 | 1203-150-007 |
|---|---|
| DATE | GRIEVANCE LOG NUMBER |

A-041

DEPARTMENT OF CORRECTIONS

## REQUEST FOR ADMINISTRATIVE REMEDY OR APPEAL

MAR 23 2012

TO: ☐ Warden   ☐ Assistant Warden   ☒ Secretary, Florida Department of Corrections

From: Walker, Romerio L.        108533         Gulf C.I. Annex
      Last   First   Middle Initial        Number              Institution

| Part A – Inmate Grievance | 12.6.10407 |
|---|---|

Second Supplement to 12-6-05981

Sir / Ms.

On March 1, 2012, I forwarded another grievance to the attention of Kelly Martin in reference to my prior complaint that staff were threatening to use force against me if I continued to write grievances. Well they have carried out their threat and almost killed me because of breathing difficulties I have. I am currently in fear of my life because they have threatened more harm if I continue to file grievances. Should you not move me this time, I can only assume that you don't care or maybe you are the ones they say they keep getting the calls from. I will not continue putting my life in jeopardy. Please see attach notes from 3/5/12 – 3/15/12 for more details

March 15, 2012                    Romerio L. Walker 108533
DATE                              SIGNATURE OF GRIEVANT AND D.C. #

*BY SIGNATURE, INMATE AGREES TO THE FOLLOWING # OF 30-DAY EXTENSIONS:  0   Romerio L. Walker
                                                                        #        Signature

### INSTRUCTIONS

This form is used for filing a formal grievance at the institution or facility level as well as for filing appeals to the Office of the Secretary in accordance with Rule 33-103, Florida Administrative Code. When an appeal is made to the Secretary, a copy of the initial response to the grievance must be attached (except as stated below).

When the inmate feels that he may be adversely affected by the submission of a grievance at the institutional level because of the sensitive nature of the grievance, or is entitled by Chapter 33-103 to file a direct grievance he may address his grievance directly to the Secretary's Office. The grievance may be sealed in the envelope by the inmate and processed postage free through routine institutional channels. The inmate must indicate a valid reason for not initially bringing his grievance to the attention of the institution. If the inmate does not provide a valid reason or if the Secretary or his designated representative feels that the reason supplied is not adequate, the grievance will be returned to the inmate for processing at the institutional level.

Receipt for Appeals Being Forwarded to Central Office      no staff

Submitted by the inmate on: _____   Institutional Mailing Log #:_____
                            (Date)

                                                                    (Received By)

DISTRIBUTION:   INSTITUTION/FACILITY        CENTRAL OFFICE
                INMATE (2 Copies)           INMATE
                INMATE'S FILE               INMATE'S FILE - INSTITUTION/FACILITY       A 042
                INSTITUTIONAL GRIEVANCE FILE CENTRAL OFFICE INMATE FILE
                                            CENTRAL OFFICE GRIEVANCE FILE

DC1-303 (Revised 2/05)

1-23-12   Mashburn told me he thought he was gonna have to whup my ass.
  Was brought to confinement after Sergeant
seen me off my bunk working out with headphones
during count. (3:15 P.M. count)
  He had inmates pack my property and
put it in sally port then had me excorted *escort couldn't even tell asst warden why I was going 2 confine*
to confinement after giving him combination.
  I was not allowed to observe him go
through and inventory my property.
  When property was delivered late that
night I asked delivering officer for my
hygiene, stamps, envelopes, and legal mail after
I noticed he had failed to deliver it. I also
crossed through the statement that my property
had been inventoried in my presence because it
hadn't, then signed property receipt. The delivering
offficer told me I would have to get state
hygiene from confinement staff and write property
for legal mail. So I wroote property and let
them know of my court deadline.
*write mama about confinement and Three Debate*

1-24-12   *wrote mama about P.I. and Package*
  When sergeant was picking up lunch trays I asked
for a toothbrush and toothpase. When he failed to
bring it, I reminded him a hour later but he told
me to leave him alone and get on my bunk.
*Cpt* Mashburn went to confinement cell P2-243 with
another officer carrying a camera speaking to the two
inmates about yelling out cell causing a disturbance.
When the inmates would not give them a reason to gas
them he left and came back about 1 hour later and
without saying anything he opened the door and had
the officer gas the cell and shut the door. They didn't
have camera on the second trip aprox 6:00 P.M. he

*John Grisson 317/24*

A0#3

then waited five minutes and went back to cell
and told the inmates if they take the sheet down he
will let them get a shower. When they took the
sheet down he gassed them again and told them
you muslims breath pretty good with them blankets.
The next time you think about jacking off on
one of these females thank about this.
     Ten minutes later one of the inmates in another
cell yelled Mashburn you aint nothing but a bitch
and somebody gonna kill your ass one of these days.
Mashburn told the officer to go get another can
of that shit, if I am gonna get killed oneday
I might ass well ride it out. He then went
and opened the cell and gassed them again
and yell anybody else got something to say.
Five minutes later he told them to get up
and get ready to shower cause he cant
gas their ass but three times. He said if he
could gas them four times he would. He then
told the officer to go and get the camera. He said man thats
that Fire
     Last week the officer's after handcuffing a
inmate, slammed his face into the wall, splitting
his left eye and mouth open. The inmate was
put into confinement without a D.R. The officer
came to his cell and told asked him whether he
wanted to be done with the incident or take it
to the courts because several officers would testify
against him if he wanted to go to court. They told
him if he wanted to sign a statement saying no one
caused him any harm then it all could be done
with. When the inmate wrote the statement thinking
he would be released from confinement, the officer was
wrote a D.R. for verbal disrespect on the seventh 7th
day and today he was found guilty at D.R. court.   Noty

On 3-5-12 I was placed in confinement because I told Officer Martin I was gonna write him up for not allowing me to mail my legal mail. When he found he couldn't charge me with spoken threat, he falsely said I had ~~called him~~ ~~sent him~~ disrespected his mother when he was told he cold not charge me with the intended spoken threat for threatening to write a grievance against him. Upon taking me to confinement Capt. Addison told him to take me up front to the holding cell in security after my pre confinement medical is done, and they will straighten me out there. At medical Officer Martin was told that the captain had called and said not to take me up front to holding cell, but to bring me directly to confinement. At confinement _At the gate he handcuffed blew kisses at me and I called him a faggot saying suck my ____ me on meal_ Cept. Addison told me ~~please show~~ there was no _restrictions when I get to conf._ bed space open in confinement there ~~was~~ so I would be going to maximum confinement and brought back the next day when a bed opens so they could deal with me. She ~~told me called my so~~ then insulted my mother with the same insult I was accused of insulting Officer Martins mother, but added that my mother was a crack head. I said her's too and she left and arranged for ~~bed~~ another inmate already in confinement to be sent to max unit so she could have me put in his bunk. Officer Dawson said it was so they can gas me. He said it wont be that day though. I was placed in R2 117L and they began feeding. When he got to my cell Sgt Dawson fed my cell-mate but would not give me a meal. When I asked why he said I had said I refuse to eat. I then told him he would get some more paperwork. A long time later he brought me a meal and said here ya go cry baby, he then winked his eye and smiled as he said "enjoy it." I then began examining and smelling the food and he, after observing this, again smiled and said I hope you enjoy your meal walker. ~~F~~ I flushed the meal down toilet.

  ① I was later told by a officer that the Captain A045

had said he was gonna beat my ass. This was said while another officer was giving me my property that had already been inventoried. I later learned that there were my socks, boxers of not the wash cloth that had purchased the day before were had been listed on the property sheet. I sent a request to Sgt. Von to see had they been discarded.

I was later told that mailroom supervise would mail my letters legal letters after she put them in new envelopes.

The next shift I told officer Eaton that I wanted to go on P.M. because of Mashburn and Addisons threat to harm me, placed me in fear of my life. He told me that P.M. want stop them from harming me.

Later the same night (3-5-12) I told the black male Captain I wanted to go on P.M. because of the threats from Addison and Mashburn. He said P.M. want stop them from harming me because I would still be in confinement and they would still have access to me. I said I wanted it any ways and he said I can feel fill out the form but never brought me one.

I then told officer Eaton again and he said I have to talk to captain first so I told him I just did and he said he well when he tells me to I will and that it was out of his hands.

I asked Sergeant (Big curly jams) why no one will bring me a P.M. form. He asked if I was in fear of my life and by whom. And when I told him of Addison and Mashburns threats he asked what the Black captain had said and I told him he said I can fill out the form but it want help protect me from the captain. He said he would see if there were any forms and never brought me one

I wrote 3033 to Warden and Tallahassee                    A046

On 3-6-12, mashburn came to my cell and asked why w/Dawson during lunch
I was checking in on him to P.M. I told him I didn't want
to be harmed. He said "I aint gonna kill ya, I'm
only fuck you up." He then said I'll beat you up and
when you sue we split it 50/50. He said hell Dawson
can get some too. Dawson then looked at me and said
how was that food yesterday. He told me they had a
meal prepared special for me today and to enjoy it.

On 3-7-12 Captain weaks came to my cell and asked
if one of us had been yelling from cell door.
Me and my roommate said no. He asked Dawson who was
yelling and Dawson said I had been yelling so he told my cell mate
to get back on his bunk. He then told me if I yell out
door trying to get someone attention again I will get the
wrong kind of attention. I told him I wanted to go
on P.M. He said he don't give a fuck, if I yell again
I was getting sprayed. I told him I would sue
if I was sprayed for no reason. He said I don't
give a fuck, I been sued before. I stopped psychologist and told him I never
he said it send a request to
Mr Robinson, thinks and told him I don't have

On 3-8-12 I spoke to Asst. Warden and asked
to go on P.M. He said to send him a request in the
grievance box and they will review it.

Officer Buchielson later knocked on my cell door till he
got my attention, he then said good morning, I then rolled
over and put my blue shirt over my head and he said enjoy
your stay and walked off.

He came back 15-20 minutes later and stood at my door
stating "Satan's seed." When I didn't respond he said
Romero you know that's what you are, Satan's seed,
that's why your face is all scaley and shit." He walked
off when I didn't respond.

About 15-20 minutes later Lt. McCommes came to
my cell and banged on the door till I rolled over, he

One and he asked who my classification officer was. I said Jones
he said just write on a piece of paper and said it to Jones
or Mr Robinson

told me to put on my blue shirt. I did even though
I already had on blue pants and T-shirt. When I
put it on he said "now fuck with me, I aint scared
of you." I said I aint scared of you. He told me
he will gas me.

A few minutes later dawson was getting all 116 for
D.R. Court, he stood at my door and he kept saying
four times repeatedly said "why's everybody picking
on me," as he looked at me. Richardson said
"when we take his roommate to D.R. court, we'll
take care of that shit." My cell mate heard the
statement and said, they act like they glad I didn't
refuse D.R. Court.

When they came to take my cell mate to D.R. Court,
Richardson and dawson called me devil's seed and
said I was a child the devils child. Richardson said
we fixing to exercise those demons. I then asked
Richardson his name and he said Timothy Dawson.

Captain Weeks then came back to my cell and asked
they Dawson and Richardson had they been doing
paperwork on me and Dawson said yeah because and
they claimed I had been yelling out my cell
calling Richardson a pussy ass. I said man you
know they lying. Captain Weeks then said you back
here for cursing officer Martin. I happen to know
him very well are you calling him a liar too. I
said yes. He said some of these other officers may
lie but officer Martin is a Christian and I don't
believe he lied.

He then came back later and asked if I had
grabbed my dick when Dawson passed by. When I
denied it, he said this what we gunna do, we gunna
start the camera and I'm gunna tell you to get   A048

on your bunk and we will play it out from there.

Dawson come by again and said "is that you yelling through vents?" I said no sir.

Cpt weaks come back with a clip board writing something at my door and left.

Dawson come by with food cart and told me they would feed me later because they had to prepare my specially.

Captain Weaks come by with camera and began reading from a paper after he had me step to the door. I noticed Richardson holding a camera on my door so everytime something Cpt said required a reply I said Yes sir and nodded yes so camera would see me standing at with hand behind my back and nodding yes. When finished with his script he ordered me on my bunk and I complied and sat where the camera could observe me sitting on bunk. I filled in more notes as camera was on me. When the Captain asked what time it is he was told 10:31. Dawson passed right by my cell with food cart while they were filming. When told the time cpt weaks stated the time and said I had ceased my disruptive behavior. He then asked if I wanted my tray and when I said yes, Dawson brought me a tray with a big smile on his face. I observed ~~Lee from Q-201 leaving Q.B. Court as my tray was handed to me, he was placed in cell 119 two cells down from me.~~

~~total~~ Richardson soon come to my cell and asked me to pack up and hand him my cell mates property and linens. I Did.

Dawson passed by and asked here my food

A049

was and told me to be sure to eat it all.

Richardson come back and yelled "Man stop yelling on that door, Stop beating on that door. When I got up to look a black guy in 109 was motioning with his hands saying he don't know to what was going on but that Richardson was directing his statements at my door, even though there had been no sounds on the wing.

Richardson come back and took the locks of my food slot while trying to throw me off by asking if my room mate had left some toothpaste in the cell. He didn't know that I had seen my cell mate leave straight from the shower after I gave him my cellmates property and when a long time prior.

Captain Weeks later come back to wing and was talking with Dawson and filling out something on a clip board for about 15 minutes. I was watching him the whole time and the guy in 109 was motioning for me to wrap my face up because they were gonna spray me. But I couldn't do that because I am very short on breathing and can't hold my breath too long.

When I seen Captain Weeks grab a big Reel fire extinguisher looking object, I grabbed the watch cloth I had soaked in water and used a folded pillowcase to cover my face, but as soon as my flap was opened, the gas hit me so bad and I flew up off the bunk and ran into the wall. He sprayed for several continuous seconds but seemed like more and probably was. My skin, face, and eyes began burning, snot was running out my nose and I couldn't breath. I began pleading and crying yelling help. A050

I told them about my asma and lung problems but all they said was you can breathe cause you yelling loud enough. I was begging for help and pleading ~~for a long time when he finally came back and~~ when he asked if I was alright. I was bent over the toilet crying and pleading for help and he said I will come back and check on you in a little bit. I stripped butt naked to my socks only. When he came back I was still pleading for help and crying over the toilet splashing toilet water on my face when he told me to back away from door. When I did thinking he was gonna cuff me and allow me a shower as I turned with my back to door to cuff up, he spray me directly in my back for several more long seconds consistantly and closed the flap again. I heard them tell the inmates to get off their doors and someone yelled, you need to put that shit on camera. I was left there pleading and crying for help until the Captain came back and said you done with the grievances. I said yes sir I wont write no more. He said you still gonna sue me, I said no sir. He said you gonna threaten to write up any more of my officers. I said no sir. He told me to put on my pants, not my boxers, ~~because~~ and to get on my knees and back up to door. As I was doing so I heard him tell Richardson ~~someone~~ to wait till I finished before turning on camera. I was cuffed and shackled and then heard the captain making statement to camera about me ceasing my behavior before I was escorted to the shower. I still couldn't breathe and could barely walk because of injuries to my back substained during the incident, ~~I and~~ couldn't see and my skin was on fire. I was allowed a long shower and then ~~handed~~ given a pair of boxers that had a brown stain in their seat as big as my fist. I was given a shredded T-shirt

A051

and blue pants. I was escorted to laundry room by quad 3 and examined by a nurse that only washed my eyes but didn't treat my skin or pains. ~~I tried them tell Richardson not to continue filming to nurse was done but I really couldn't make out the~~ on The camera was filming as I was escorted too and from nurse examination and had been noticed filming me during my shower.

I was placed in same cell I had been gassed in and noticed all my linen was gone and my personal soap, personal socks, personal boxers and personal T-shirt had been taken. I was never given a property sheet for these items. My cell walls were heavily stained orange with darker streaks running down wall. The smell of the gas was still heavy in the air. Richard stood at my door for about 10 minutes trying to be friendly. He asked why I had said Officer Martins Mother sucks and I told him that I didn't, And that Officer Martin heard me tell Nicholes Williams to put my mama up on what they were doing as he was escorting me to jail in cuffs already.

When Richardson left he came back shortly with Captain Mashburn who said that shit burn don't it. He asked if they get my balls. Richardson told him that they had hit me straight up the crack of my ~~assbutt~~ because I had stripped naked. Mashburn ~~said~~ told me not to forget our deal and to remember it was 50/50, no renigging. He told me he get 50% of my suit and I get 50% but that Dawson gets 10% from my 50%. Richardson said that's fucked up.

Richardson came back and told me to let the shit go, no more threats and shit and he will make sure I get out early if I don't get in any more trouble. When I said yes sir, he said okay alright, don't let me get no dumb ass papers 4 weeks or more from now.

A052

I said yes sir, I am done with it.

He came back a short time later and said, alright, it time to see how you gonna act. I need you to sign a statement about getting gassed. I asked what he wanted me to say. He said, whatever you want. I said how about I got gassed, He said that's fine with me. I wrote, "I got gassed twice today" and scribbled some lines so they could add to it later, He read it and said works for me and left.

He came right back and said I want you to write why you got gassed. I again asked what he want me to say. He said I don't know, just tell why. As I was writing he said say you got gassed because you were being disorderly. But I had already wrote "Because I threatened officers with grievances and suits" and scribbled again incase they try to add to it. He read it and told Sgt Dawson what it said. He then told me "I can respect that", now don't be making no more threats and be done with it. I asked if he could keep them from writing any more D.R.'s and he said "You know I got to give you a D.R. for the gas, but I promise to make sure you get out early, but I can't promise that it will be more than 10 day early." He again told me to be done with it. Before he left, He said, you thought it was a game when you called me a faggot at the gate didn't you.

He told me that gassing me wasn't only about me writing grievances it was mostly about me threatening to file a lawsuit if I was gassed for writing grievances. He said by doing so I had challenged the staff and they couldn't allow me to do that.

A-05-3

~~[scribbled out text]~~

Aprox. 2:00, big young officer named Easton came to my cell and explained that I will not get gassed or any other harm again if I didn't write any more grievances. He used a kids volcano school project as a analysis. He explained that when a little baking soda is added the volcano will boil a little and the more baking soda you add makes it boil a little more until you finally get a eruption. But once you get the eruption it's like you have shot your shot and everything goes back to the way it was until the process to start the eruption is repeated. He said filing grievances want help me, it will only cause another eruption because as soon as I file one then someone up front will make a call and say "hey he filed another one and the volcano will start to boil again. He told me that they will not move me because of staff.

During his conversation Dawson kept barging in saying "you can't explain nothing to him, he ain't ever gonna learn. He got lucky with a nurse on his other suit, now he want to take everybody money."

At dinner, I told the skinny young officer that I didn't want the meal, he brought it back and put it in it in my cell and said "You can give it to your roommate, share the wealth."

On March 15, 2012 I refused the meal after Dawson told the runaround that he would give me my tray. When I refused the meal, Dawson later told me you should have eaten that one because today was the first day that I didn't put anything in it

A054



RECEIVED
WITH AGENCY CLERK

APR 13 2012

DEPARTMENT OF CORRECTIONS
INMATE GRIEVANCE APPEALS

**PART B - RESPONSE**

| WALKER, ROMERIO | 108533 | 12-6-10407 | GULF C.I.- ANNEX | P2205L |
|---|---|---|---|---|
| INMATE | NUMBER | GRIEVANCE LOG NUMBER | CURRENT INMATE LOCATION | HOUSING LOCATION |

Your appeal has been reviewed and evaluated. The subject of your grievance is currently under review by the Departmental Staff. At the conclusion of that review appropriate and necessary action will be taken.

As this process was initiated by the Department prior to the receipt of your grievance, your request for action by this office is denied.

T. Bowden

| SIGNATURE AND TYPED OR PRINTED NAME OF EMPLOYEE RESPONDING | SIGNATURE OF WARDEN, ASST. WARDEN, OR SECRETARY'S REPRESENTATIVE | DATE |
|---|---|---|

COPY DISTRIBUTION -INSTITUTION / FACILITY

(2 Copies) Inmate

(1 Copy) Inmate's File

(1 Copy) Retained by Official Responding

COPY DISTRIBUTION - CENTRAL OFFICE

(1 Copy) Inmate

(1 Copy) Inmate's File - Inst./Facility

(1 Copy) C.O. Inmate File

(1 Copy) Retained by Official Responding

A055

STATE OF FLORIDA
DEPARTMENT OF CORRECTIONS

**REQUEST FOR ADMINISTRATIVE REMEDY OR APPEAL**

MAR 23 2012

TO: ☑ Warden   ☐ Assistant Warden   ☑ Secretary, Florida Department of Corrections.

From: Walker, Romeio L.      108533      Gulf C. I.

Last    First   Middle Initial      Number       Institution

Appeal of D.R. Log # 150-120252

Part A – Inmate Grievance      12-6-09524

Sir,

On March 9, 2012 at aprox 8:00 a.m. officer Richards came to my cell P2-117 and told me that he had checked the computer and learned that I would be getting three D.R.s. He said I was written one on 3-5-12 by officer Martin (1-4 Disrespect, Log#150-120252), one by Sgt. Dawson and he had to write one for me getting sprayed the day before. He told me that as soon as they came down he would immediately begin the investigation so that I can possibly go to D.R. court on all three Tuesday, March 13, 2012. ~~when~~ he around 10:45 a.m. on the same day he returned and told me that he had received the last two D.R.s and would serve them shortly. When he served the D.R. by officer Martin, I noticed that the D.R. was written at 11:00 a.m. on March 5, 2012 and that he didn't receive it until March 9, 2012 by his own statements.

Because policy requires that the investigation begin within 24 hours I am requesting that the D.R. be reversed and Dismissed. I brought this to the attention of Capt. Weeks at D.R. court and he advised me to file this appeal, that's why I am writing this appeal. If it is a problem I would rather you act as if you didn't receive this appeal and not gas me again. ~~Don't come around threatening this and that the you can hold em to it. stop the threats~~

I cannot send this appeal to the institutional level because as you can see from another inurstigation 12-6-120264 I have been gassed and written frivolous D.R.s because of prior grievance(s) and threatened with more harm if I file more grievances.

I also don't feel that officer Richards should have been the investigator on this D.R. since he was in the middle of writing the one in 150-120264 and therefore could not conduct a unbiased investigation on my behalf since he needed this to justify the one he wrote, and me being gassed. see attached page

3-15-12              Romeio L Walker 108533
DATE                 SIGNATURE OF GRIEVANT AND D.C. #

*BY SIGNATURE, INMATE AGREES TO THE FOLLOWING # OF 30-DAY EXTENSIONS:  ()  Romeio L Walker
                                                                        #        Signature

**INSTRUCTIONS**

This form is used for filing a formal grievance at the institution or facility level as well as for filing appeals to the Office of the Secretary in accordance with Rule 33-103, Florida Administrative Code. When an appeal is made to the Secretary, a copy of this initial response to the grievance must be attached (except as stated below).

When the inmate feels that he may be adversely affected by the submission of a grievance at the institutional level because of the sensitive nature of the grievance, or is entitled by Chapter 33-103 to file a direct grievance he may address his grievance directly to the Secretary's Office.  The grievance may be sealed in the envelope by the inmate and processed postage free through routine institutional channels. The inmate must indicate a valid reason for not initially bringing his grievance to the attention of the institution.  If the inmate does not provide a valid reason or if the Secretary or his designated representative feels that the reason supplied is not adequate, the grievance will be returned to the inmate for processing at the institutional level.

**Receipt for Appeals Being Forwarded to Central Office**

Submitted by the inmate on: _____   Institutional Mailing Log #: _____       054
                    (Date)                                                    (Received By)    (1-4)

DISTRIBUTION:   INSTITUTION/FACILITY          CENTRAL OFFICE                              3-5-12
                INMATE (2 Copies)             INMATE
                INMATE'S FILE                 INMATE'S FILE - INSTITUTION/FACILITY        150
                INSTITUTIONAL GRIEVANCE FILE  CENTRAL OFFICE INMATE FILE
                                              CENTRAL OFFICE GRIEVANCE FILE               A056

DC1-303 (Revised 2/05)

Continued from Appeal of 150-120252

On 3-13-12 and 3-15-12 I went to D.R.
Court for this D.R. and on 3-15-12 I was given
30 days confinement by Captain Lt. McCommas. I
have already initiated a investigation against L.T.
McCommas for threatening me with frivolous D.R.'s
and other threatened disciplinary action because I
insisted on filing grievances (see grievance dated
March 6, 2012, investigation by Kelly Martin, insp. gen. case
no. 12-6-05981) because of my grievances. I was gassed on
March 8, 2012 by Captain Weaks who was encouraged
by Lt. McCommas. Clearly LT. McCommas was biased and
could not render a fair decision nor remain neutral
and undetached because of his obvious need to see me
found guilty of the D.R.'s so that they can falsely
cover-up the truth, that I was gassed for writing
grievances.

A.057

APR 04 2012

DEPARTMENT OF CORRECTIONS
BUREAU OF INMATE GRIEVANCE APPEALS

205L

| PARKER, ROMERIO | 108533 | 12-6-09524 | GULF C.I.- ANNEX | P2120L |
|---|---|---|---|---|
| INMATE | NUMBER | GRIEVANCE LOG NUMBER | CURRENT INMATE LOCATION | HOUSING LOCATION |

Your request for Administrative Remedy or Appeal has not been filed in compliance with Chapter 33-103.006, Inmate Grievance Procedure. You did not provide this office with a copy of the formal grievance filed at the institutional level as required by rule or the reason you provided for by-passing that level of the grievance procedure is not acceptable.

Grievances involving a disciplinary report should be initiated by submitting a formal grievance (DC1-303 form) to the Warden within 15 days of the hearing being conducted prior to filing to this office. Although this appeal was submitted incorrectly, given the fact that it was received within 15 days of the disciplinary hearing, you will be granted an extension of time to file your grievance correctly concerning DR Log# 150-120252.

The use of force incident you have referenced was reported in accordance with policy. Furthermore, if you fear staff, you need to file an informal grievance to the Colonel. The Colonel should have the opportunity to address these issues regarding staff at the institution.

Upon receipt of this response, you are allowed an additional 15 days from the date this response was mailed (date stamped in upper left corner) to resubmit your grievance at your current location in compliance with Chapter 33-103, Inmate Grievance Procedure. Attach a copy of this response and any relevant attachments to your re-filed grievance.

Based on the foregoing information, your grievance is returned without action.

G. WELLHAUSEN

| | | 3/27/12 |
|---|---|---|
| SIGNATURE AND TYPED OR PRINTED NAME OF EMPLOYEE RESPONDING | SIGNATURE OF WARDEN, ASST. WARDEN, OR SECRETARY'S REPRESENTATIVE | DATE |

COPY DISTRIBUTION -INSTITUTION / FACILITY
(2 Copies) Inmate
(1 Copy) Inmate's File
(1 Copy) Retained by Official Responding

COPY DISTRIBUTION - CENTRAL OFFICE
(1 Copy) Inmate
(1 Copy) Inmate's File - Inst./Facility
(1 Copy) C.O. Inmate File
(1 Copy) Retained by Official Responding

A058

STATE OF FLORIDA
DEPARTMENT OF CORRECTIONS

REQUEST FOR ADMINISTRATIVE REMEDY OR APPEAL MAR 23 2012

TO: ☒ Warden     ☐ Assistant Warden     ☒ Secretary, Florida Department of Corrections

From: Walker, Romeais     L.        108533        Gulf C.I. Annex
      Last    First    Middle Initial        Number        Institution

Appeal of D.R. log # 150-120259

| Part A — Inmate Grievance | 12-6-09525 |

Sir,

On March 9, 2012 at aprox 8:00am. Officer Richards came to my cell P2-117 and told me that he had checked the computer and learned that I would be getting three D.R.s. He said I was written one by officer Martin and that when I came in I pissed someone off and Sgt. Dawson wrote me one, and that he had to write one for me being gassed on the day before. He said that as soon as the D.R.s came down he would investigate them immediately so that I can go to D.R. court on Tuesday (March 13, 2012)

At 9:10 a.m. on March 9, 2012 he returned and told me he had gotten the D.R. written by Sgt. Dawson (6-1 Disobeying a verbal order, Log #150-120259) While serving the D.R., I noticed that the D.R. was written at 12:40 P.M. on March 7, 2012, and that he didn't receive it until March 9, 2012 by his own statements.

Because policy requires that the investigation begin within 24 hours, I am requesting that the D.R. be reversed and dismissed. I brought this to the attention of Capt. Weeks at D.R. court and he advised me to file this appeal, that's why I am writing this appeal. If it is a problem I would rather you act as if you didn't receive this appeal and not gas me again. ~~Because I have been gassed for filing other greivances as you can see in another investigation~~

I cannot send this appeal to the institutional level because as you can see from another investigation 12-6-120264 I have been gassed and written these frivolous D.R.s because of prior greivances and threatened with more harm if I file more greivances

I also don't feel that Officer Richards should have been the investigator on this D.R. since he was in the middle of writing the one in 150-120264 and therefore could not conduct a unbiased investigation on my behalf since he needed this to justify the one he wrote and me being gassed. See attached page

3-15-12                                Romeais L. Walker 108533
DATE                                SIGNATURE OF GRIEVANT AND D.C. #

---

*BY SIGNATURE, INMATE AGREES TO THE FOLLOWING # OF 30-DAY EXTENSIONS:   O    Romeais L. Walker
                                                                      #        Signature

INSTRUCTIONS

This form is used for filing a formal grievance at the institution or facility level as well as for filing appeals to the Office of the Secretary in accordance with Rule 33-103, Florida Administrative Code. When an appeal is made to the Secretary, a copy of the initial response to the grievance must be attached (except as stated below).

When the inmate feels that he may be adversely affected by the submission of a grievance at the institutional level because of the sensitive nature of the grievance, or is entitled by Chapter 33-103 to file a direct grievance he may address his grievance directly to the Secretary's Office. The grievance may be sealed in the envelope by the inmate and processed postage free through routine institutional channels. The inmate must indicate a valid reason for not initially bringing his grievance to the attention of the institution. If the inmate does not provide a valid reason or if the Secretary or his designated representative feels that the reason supplied is not adequate, the grievance will be returned to the inmate for processing at the institutional level.

Receipt for Appeals Being Forwarded to Central Office        A059

Submitted by the inmate on: _____ Institutional Mailing Log #: _____ (Received By)   054
                            (Date)                                                          (6-1)
                                                                                           3-7-12
DISTRIBUTION:    INSTITUTION/FACILITY        CENTRAL OFFICE                                  150
                 INMATE (2 Copies)           INMATE
                 INMATE'S FILE               INMATE'S FILE - INSTITUTION/FACILITY
                 INSTITUTIONAL GRIEVANCE FILE  CENTRAL OFFICE INMATE FILE
                                             CENTRAL OFFICE GRIEVANCE FILE

DC1-303 (Revised 2/05)

Continued from Appeal of 150-120259

Lastly, On 3-13-12 I went to D.R. court for this D.R. and was given 15-days confinement by Captain Weaks. Five days prior to the hearing, Captain Weaks using the allegations of this D.R. and other pretentuous reasons, gas-sprayed me with chemical mace. Because he referred to this D.R. and the other prior to spraying me, he would obviously be a biased hearing officer seeing as how he made it obvious that he felt I was guilty before a investigation had even initiated. Clearly Captain Weaks was biased and could not render a fair decision nor remain neutral and undetached because of his obvious need to see me found guilty of the D.R.'s so that he can falsely cover-up the truth, that I was gassed for writing grievances.

A0G0

MAILED/FILED
WITH AGENCY CLERK

APR 0 4 2012

DEPARTMENT OF CORRECTIONS
BUREAU OF INMATE GRIEVANCE APPEALS

**PART B - RESPONSE**

2052

| WALKER, ROMERIO | 108533 | 12-6-09525 | GULF C.I.- ANNEX | P2120L |
|---|---|---|---|---|
| INMATE | NUMBER | GRIEVANCE LOG NUMBER | CURRENT INMATE LOCATION | HOUSING LOCATION |

Your request for Administrative Remedy or Appeal has not been filed in compliance with Chapter 33-103.006, Inmate Grievance Procedure. You did not provide this office with a copy of the formal grievance filed at the institutional level as required by rule or the reason you provided for by-passing that level of the grievance procedure is not acceptable.

Grievances involving a disciplinary report should be initiated by submitting a formal grievance (DC1-303 form) to the Warden within 15 days of the hearing being conducted prior to filing to this office. Although this appeal was submitted incorrectly, given the fact that it was received within 15 days of the disciplinary hearing, you will be granted an extension of time to file your grievance correctly concerning DR Log# 150-120259.

The use of force incident you have referenced was reported in accordance with policy. Furthermore, if you fear staff, you need to file an informal grievance to the Colonel. The Colonel should have the opportunity to address these issues regarding staff at the institution.

Upon receipt of this response, you are allowed an additional 15 days from the date this response was mailed (date stamped in upper left corner) to resubmit your grievance at your current location in compliance with Chapter 33-103, Inmate Grievance Procedure. Attach a copy of this response and any relevant attachments to your re-filed grievance.

Based on the foregoing information, your grievance is returned without action.

G. WELLHAUSEN

| | | 3/27/12 |
|---|---|---|
| SIGNATURE AND TYPED OR PRINTED NAME OF EMPLOYEE RESPONDING | SIGNATURE OF WARDEN, ASST. WARDEN, OR SECRETARY'S REPRESENTATIVE | DATE |

COPY DISTRIBUTION -INSTITUTION / FACILITY

(2 Copies) Inmate

(1 Copy) Inmate's File

(1 Copy) Retained by Official Responding

COPY DISTRIBUTION - CENTRAL OFFICE

(1 Copy) Inmate

(1 Copy) Inmate's File - Inst./Facility

(1 Copy) C.O. Inmate File

(1 Copy) Retained by Official Responding

A-061

STATE OF FLORIDA
DEPARTMENT OF CORRECTIONS

REQUEST FOR ADMINISTRATIVE REMEDY OR APPEAL

APR 02 2012

TO: ☐ Warden      ☐ Assistant Warden      ☒ Secretary, Florida Department of Corrections

From: Walker, Romerio L.        108533        Gulf C.I. Annex
      Last    First    Middle Initial        Number        Institution

---

Part A – Inmate Grievance        12-6-10464

Sir / Maam
(This is a appeal, not a grievance, so please don't report it as a grievance.)
    I filed a ~~second~~ appeal of this determination of guilt on
this D.R. because the investigation was not begun within 24 hours
of the D.R. being written. At the D.R. Hearing I was told that
the investigation was begun on Feb. 22, 2012 by Sgt. Harrison.
But when I appealled that finding and showed that Sgt. Harrison
did not work on Feb. 22, 2012, then I was told that a Sgt.
Wholey began the investigation on Feb. 23, 2012 and it was
completed by Sgt. Harrison when she returned to work two
days later.
    This is a on going problem at Gulf C.I. Annex where they use
their position to bend the rules at their will. Many of the D.R.'s
written are never investigated within 24 hours of writing them, and
when challenged, inmates are always told the investigation didn't
begin with the inmate but are never told the date, time and nature
of the actions that begin the investigation. Now when finally caught in
their lies, they have changed their story to say there was two
different investigators. I have never heard of them needing or a
rule allowing the use of two investigators for one D.R. Nor does
the respondent give the reason for two investigators or why the
second investigator was the only one listed in the papers served on me.
And if they did need a second, then why choose one who wouldn't be
working for 22 hours. I have already completed the time given, all I
ask now is that the D.R. be reversed and removed from against my record.

March 23, 2012                    Romerio L. Walker 108533
DATE                              SIGNATURE OF GRIEVANT AND D.C. #

---

*BY SIGNATURE, INMATE AGREES TO THE FOLLOWING # OF 30-DAY EXTENSIONS:  O  Rom Walk
                                                                        #        Signature

INSTRUCTIONS

This form is used for filing a formal grievance at the institution or facility level as well as for filing appeals to the Office of the Secretary in accordance with Rule 33-103, Florida Administrative Code. When an appeal is made to the Secretary, a copy of the initial response to the grievance must be attached (except as stated below).

When the inmate feels that he may be adversely affected by the submission of a grievance at the institutional level because of the sensitive nature of the grievance, or is entitled by Chapter 33-103 to file a direct grievance he may address his grievance directly to the Secretary's Office. The grievance may be sealed in the envelope by the inmate and processed postage free through routine institutional channels. The inmate must indicate a valid reason for not initially bringing his grievance to the attention of the institution. If the inmate does not provide a valid reason or if the Secretary or his designated representative feels that the reason supplied is not adequate, the grievance will be returned to the inmate for processing at the institutional level.

Appt

Receipt for Appeals Being Forwarded to Central Office

Submitted by the inmate on: _____   Institutional Mailing Log #: _____        (Received By)   OSA
                            (Date)                                                                              (4-3)

DISTRIBUTION:   INSTITUTION/FACILITY        CENTRAL OFFICE
                INMATE (2 Copies)           INMATE                                    2-21-12
                INMATE'S FILE               INMATE'S FILE - INSTITUTION/FACILITY      150
                INSTITUTIONAL GRIEVANCE FILE CENTRAL OFFICE INMATE FILE
                                            CENTRAL OFFICE GRIEVANCE FILE

DC1-303 (Revised 2/05)                                                                1203-150-00

STATE OF FLORIDA
DEPARTMENT OF CORRECTIONS

**REQUEST FOR ADMINISTRATIVE REMEDY OR APPEAL**

RECEIVED
ASST. WARDEN'S OFFICE

MAR 06 2012

PROGRAMS
Gulf C.I.

TO: ☒ Warden    ☐ Assistant Warden    ☒ Secretary, Florida Department of Corrections

From: Walker, Romein L.          108533          Gulf C.I. Annex
Last   First   Middle Initial       Number           Institution
                                              1203-150-008

| Part A – Inmate Grievance |
|---|

On February 22, 2012 I was written up for being in an unauthorized area without signing in at center gate. At the hearing I moved for dismissal because the investigation did not begin within 24 hours. LT. McCommas told me it don't matter and that the investigation began with the officer who wrote the D.R. so I plead guilty because I had been told by L.T. McCommas that my statements didn't matter. But the investigation of the D.R. could not have begun on the 22nd like alleged because the investigating officer, Sgt. Harrison does not work on Wednesdays and Thursdays because she was off on both Wednesday Feb. 22, 2012, Thursday Febuary 23, 2012, Wednesday Febuary 29, 2012 and Thursday March 1, 2012. Therefore it was impossible for her investigation of the D.R. to begin on her off day that she took off and did not report in at all. Could you therefore reverse the decision of the board and grant my dismissal of the D.R.

March 7, 2012                        Romein D. Walker 108533
DATE                               SIGNATURE OF GRIEVANT AND D.C. #

*BY SIGNATURE, INMATE AGREES TO THE FOLLOWING # OF 30-DAY EXTENSIONS:  O   Romein A. Walker
                                                                        #        Signature

**INSTRUCTIONS**

This form is used for filing a formal grievance at the institution or facility level as well as for filing appeals to the Office of the Secretary in accordance with Rule 33-103, Florida Administrative Code. When an appeal is made to the Secretary, a copy of the initial response to the grievance must be attached (except as stated below).

When the inmate feels that he may be adversely affected by the submission of a grievance at the institutional level because of the sensitive nature of the grievance, or is entitled by Chapter 33-103 to file a direct grievance he may address his grievance directly to the Secretary's Office. The grievance may be sealed in the envelope by the inmate and processed postage free through routine institutional channels. The inmate must indicate a valid reason for not initially bringing his grievance to the attention of the institution. If the inmate does not provide a valid reason or if the Secretary or his designated representative feels that the reason supplied is not adequate, the grievance will be returned to the inmate for processing at the institutional level.

**Receipt for Appeals Being Forwarded to Central Office**

Submitted by the inmate on: _____ Institutional Mailing Log #: _____  _____
                         (Date)                                    (Received By)

DISTRIBUTION:    INSTITUTION/FACILITY          CENTRAL OFFICE                              Class
                 INMATE (2 Copies)             INMATE
                 INMATE'S FILE                 INMATE'S FILE - INSTITUTION/FACILITY    1203-150-008
                 INSTITUTIONAL GRIEVANCE FILE  CENTRAL OFFICE INMATE FILE
                                               CENTRAL OFFICE GRIEVANCE FILE           A-063

DC1-303 (Revised 2/05)

```
                    FLORIDA DEPARTMENT OF CORRECTIONS          02/22/2012
ISSO150 (01)        CHARGING DISCIPLINARY REPORT                            PAGE:      1
                          LOG # 150-120200
------------------------------------------------------------
DC#: 108533    INMATE NAME: WALKER, ROMERIO         | INFRACTION
VIOLATION CODE:  0043   TITLE: BEING IN UNAUTH AREA  | DATE: 02/21/12
FACILITY CODE:  150    NAME:  GULF C.I.- ANNEX       | TIME: 11:45
------------------------------------------------------------
```

I.   STATEMENT OF FACTS
     ON 02-21-12 I WAS ASSIGNED TO THE CENTER GATE.  AT
     APPROXIMATELY 11:45AM, I OBSERVED INMATE WALKER, ROMERIO DC#
     108533 EXIT THE LIBRARY. I THEN QUESTIONED INMATE WALKER
     ABOUT WHY HE WAS IN THE LIBRARY BECAUSE HE WAS NOT SIGNED
     THROUGH THE CENTER GATE. INMATE WALKER STATED TO ME, "I JUST
     GOT OF CONFINEMENT ON FRIDAY AND I HAD TO PICK UP MY STUFF
     SO I WENT, WHEN I GOT DONE EATING."  THE SHIFT OIC WAS
     NOTIFIED OF THIS INCIDENT AND ADVISED ME TO SUBMIT THIS
     REPORT.  INMATE WALKER WILL REMAIN IN OPEN POPULATION
     PENDING THE DISPOSITION OF THIS REPORT FOR 4-3 BEING IN AN
     UNAUTHORIZED AREA.


     REPORT WRITTEN: 02/21/12, AT 12:00     BY: JLM10 - LINTON,JAMIE M
------------------------------------------------------------

II.  INMATE NOTIFICATION OF CHARGES: DATE DELIVERED: 2 /24/ 12 AT 12 25 Pm

          NO HEARING SHALL COMMENCE PRIOR TO 24 HOURS OF DELIVERY OF CHARGES
          EXCEPT WHEN THE INMATE'S RELEASE DATE DOES NOT ALLOW TIME FOR SUCH
          NOTICE OR THE INMATE WAIVES THE 24 HOUR PERIOD AS AUTHORIZED IN RULE
          33-601, FLORIDA ADMINISTRATIVE CODE.

               DELIVERED BY : HBS24 - S. Harrison Sgt.
------------------------------------------------------------

     NOTICE TO INMATE:
     AS AN INMATE BEING CHARGED WITH A VIOLATION OF THE RULES OF PROHIBITED
     CONDUCT, YOU ARE ADVISED THE FOLLOWING:
------------------------------------------------------------

     INVESTIGATION:
     AN IMPARTIAL INVESTIGATION WILL BE CONDUCTED ON THIS DISCIPLINARY REPORT.
     DURING THE INVESTIGATION OF THE DISCIPLINARY REPORT, YOU WILL BE ADVISED
     OF THE CHARGES AGAINST YOU AND YOU MAY REQUEST STAFF ASSISTANCE. DURING
     THE INVESTIGATION YOU SHOULD MAKE KNOWN ANY WITNESSES TO THE INVESTIGATING
     OFFICER. THE TESTIMONY OF WITNESSES SHALL BE PRESENTED BY WRITTEN STATEMENTS.
     SEE RULE 33-601.307(3) FOR COMPLETE INFORMATION REGARDING WITNESSES. YOU WILL
     HAVE THE OPPORTUNITY TO MAKE A STATEMENT IN WRITING REGARDING THE CHARGE AND
     TO PROVIDE INFORMATION RELATING TO THE INVESTIGATION.
------------------------------------------------------------

     DELIVERY OF CHARGES:
     A COPY OF THE CHARGES WILL BE PROVIDED TO YOU AT LEAST 24 HOURS PRIOR
     TO THE CONVENING OF THE DISCIPLINARY HEARING UNLESS YOU WAIVE THE WAITING
     PERIOD. THE HEARING MAY BEGIN ANY TIME AFTER THE 24 HOUR PERIOD UNLESS
     YOU SIGN THE WAIVER.
------------------------------------------------------------

A-064

```
                         FLORIDA DEPARTMENT OF CORRECTIONS      02/22/2012
ISSO150 (01)             CHARGING DISCIPLINARY REPORT                                PAGE:      2
                              LOG # 150-120200
```
--------------------------------------------------------------------
```
DC#: 108533   INMATE NAME: WALKER, ROMERIO      | INFRACTION
VIOLATION CODE:  0043    TITLE: BEING IN UNAUTH AREA   | DATE: 02/21/12
FACILITY CODE:  150     NAME:  GULF C.I.- ANNEX   | TIME: 11:45
```
--------------------------------------------------------------------

DISCIPLINARY HEARING:
THE DECISION WILL BE MADE IN ADVANCE WHETHER THE HEARING WILL BE CONDUCTED
BY THE DISCIPLINARY TEAM OR THE HEARING OFFICER. YOU MAY REQUEST A HEARING
BY THE FULL DISCIPLINARY TEAM RATHER THAN THE HEARING OFFICER. YOU WILL
APPEAR IN PERSON BEFORE THE DISCIPLINARY TEAM/HEARING OFFICER UNLESS YOU
WAIVE THIS APPEARANCE BY SIGNING A WAIVER FORM. YOU WILL BE ADVISED OF
THE CHARGES PLACED AGAINST YOU AND THE RANGE OF PENALTY IF FOUND GUILTY.
YOU MAY REQUEST STAFF ASSISTANCE. THE CHAIRPERSON/HEARING OFFICER WILL READ
THE STATEMENT AND ASK YOU FOR YOUR PLEA. A GUILTY PLEA REQUIRES NO FURTHER
STATEMENT; HOWEVER, YOU MAY MAKE A STATEMENT FOR THE TEAM/HEARING OFFICER
TO CONSIDER. A NO CONTEST PLEA WILL BE TREATED AS A GUILTY PLEA. A REFUSAL
TO ENTER A PLEA WILL BE TREATED AS A NOT GUILTY PLEA. IF YOU ENTER A NOT
GUILTY PLEA, YOU WILL BE ALLOWED TO MAKE A STATEMENT ON YOUR OWN BEHALF,
PRESENT EVIDENCE AND REQUEST STAFF OR INMATE WITNESSES AS DEEMED APPROPRIATE
BY THE TEAM/HEARING OFFICER. AFTER THE TEAM/HEARING OFFICER HAS MADE A
DECISION, YOU WILL BE ADVISED VERBALLY AND IN WRITING AS TO THE DECISION AND
THE EVIDENCE RELIED UPON IN MAKING THAT DECISION. IF YOU ARE FOUND GUILTY, YOU
WILL BE ADVISED VERBALLY AND IN WRITING AS TO THE RECOMMENDED PENALTY.

--------------------------------------------------------------------

APPEAL:
 IF YOU ARE FOUND GUILTY, YOU MAY APPEAL THIS DECISION BY FILING A
 FORMAL GRIEVANCE WITH THE WARDEN OF YOUR FACILITY WITHIN 15 DAYS OF
THE RECEIPT OF WRITTEN NOTICE OF THE TEAM/HEARING OFFICERS DECISION.
FOR INFORMATION REGARDING THE RULES ON DISCIPLINE, REFER TO: 33-601, F. A. C.

A065

```
                    FLORIDA DEPARTMENT OF CORRECTIONS           02/29/12
  ISSO158 (14)           DISCIPLINARY REPORT                    PAGE   1
                         HEARING INFORMATION
                          LOG # 150-120200
-------------------------------------------------------------------------------
 DC#: 108533   INMATE NAME: WALKER, ROMERIO           O3118L INFRACTION
 VIOLATION CODE:  0043   TITLE: BEING IN UNAUTH AREA         DATE: 02/21/12
 FACILITY CODE:  150    NAME:  GULF C.I.- ANNEX             TIME: 11:45
-------------------------------------------------------------------------------
           TEAM    FINDINGS AND ACTION   DATE: 02/28/12, AT: 13:25
         INMATE OFFERED STAFF ASSISTANCE: DECLINED
         INMATE PLEA: GUILTY        FINDINGS: GUILTY
         INMATE PRESENT: YES
    POSTPONEMENT:
    BASIS FOR DECISION:
         BASED UPON INMATE`S GUILTY PLEA.


 ACTIONS TAKEN:
  DISCIPLINARY CONFINEMENT: 0000; PROBATION DAYS SET: 000
 DISCIPLINE SQUAD              15; PROBATION DAYS SET:   0 CONSECUTIVE;

  RESTITUTION:      $.00; INDIV.REVIEW/COUNSEL?: N; CONFISCATE CONTRABAND?: N

  TEAM CHAIRMAN:  BTL41 - FLOYD, TERESA L
  TEAM MEMBERS:   MJW29 - MCCOMAS, JASON              -
-------------------------------------------------------------------------------
-------------------------------------------------------------------------------
```

A-066

**PART B - RESPONSE**

| WALKER, ROMERIO | 108533 | 1203-150-008 | GULF C.I.- ANNEX | P2120L |
|---|---|---|---|---|
| INMATE | NUMBER | GRIEVANCE LOG NUMBER | CURRENT INMATE LOCATION | HOUSING LOCATION |

Your request for administrative remedy or appeal has been received, evaluated and responded to as follows:

A thorough review of the disciplinary report you received for the violation (4-3) Being in an Unauthorized Area has been conducted.  You stated in your grievance, the investigation of your disciplinary report was not initiated within the proper time frame. Your disciplinary report was written on 2/21/2012 at 1200 hours. The investigation was initiated on 2/22/2012 at 1000 hours by Sgt. L. Whaley. It was completed by Sgt. Harrison. The Hearing Team found you guilty based on Officer Linton's written report, the information furnished through the investigation and your plea of guilt. You have failed to offer any new or additional information that would cause for a reversal of the Team's decision.

Based on the above information your grievance is denied.

You may obtain further administrative review of your complaint by obtaining Form DC1-303, Request for Administrative Remedy or Appeal, completing the form, providing attachments as required by 33-103.007(3) (a) and (b), and forwarding your complaint to the Bureau of Inmate Grievance Appeals, 501 South Calhoun Street, Tallahassee, Florida 32399-2500.

J. D. Sloan, Assistant Warden                    C. Halley, Warden

3/20/12

| SIGNATURE AND TYPED OR PRINTED NAME OF EMPLOYEE RESPONDING | SIGNATURE OF WARDEN, ASST./WARDEN, OR SECRETARY'S REPRESENTATIVE | DATE |
|---|---|---|

COPY DISTRIBUTION -INSTITUTION / FACILITY

(2 Copies) Inmate

(1 Copy) Inmate's File

(1 Copy) Retained by Official Responding

COPY DISTRIBUTION - CENTRAL OFFICE

(1 Copy) Inmate

(1 Copy) Inmate's File - Inst./Facility

(1 Copy) C.O. Inmate File

(1 Copy) Retained by Official Responding

MAILED
WITH AGENCY CLERK

APR 2 0 2012

DEPARTMENT OF CORRECTIONS
BUREAU OF INMATE GRIEVANCE APPEALS

**PART B - RESPONSE**

| WALKER, ROMERIO | 108533 | 12-6-10464 | GULF C.I.- ANNEX | P2205L |
|---|---|---|---|---|
| INMATE | NUMBER | GRIEVANCE LOG NUMBER | CURRENT INMATE LOCATION | HOUSING LOCATION |

Your administrative appeal has been reviewed and evaluated. The response that you received at the institutional level has been reviewed and is found to appropriately address the concerns that you raised at the institutional level as well as the Central Office level.

A review of the disciplinary report reflects the investigation was initiated as a statement was obtained from the reporting officer. The investigation does not necessarily begin with the charged inmate. Furthermore, the rule does not prohibit more than one staff member from participating in the investigation.

You have not presented sufficient evidence or information to warrant overturning the disciplinary report.

Your administrative appeal is denied.

G. WELLHAUSEN

| | | 4/10/12 |
|---|---|---|
| SIGNATURE AND TYPED OR PRINTED NAME OF EMPLOYEE RESPONDING | SIGNATURE OF WARDEN, ASST. WARDEN, OR SECRETARY'S REPRESENTATIVE | DATE |

COPY DISTRIBUTION -INSTITUTION / FACILITY

(2 Copies) Inmate

(1 Copy) Inmate's File

(1 Copy) Retained by Official Responding

COPY DISTRIBUTION - CENTRAL OFFICE

(1 Copy) Inmate

(1 Copy) Inmate's File - Inst./Facility

(1 Copy) C.O. Inmate File

(1 Copy) Retained by Official Responding

A-068

STATE OF FLORIDA
DEPARTMENT OF CORRECTIONS

REQUEST FOR ADMINISTRATIVE REMEDY OR APPEAL

APR 02 2012

TO: ☐ Warden    ☐ Assistant Warden    ☒ Secretary, Florida Department of Corrections

From: _Walker, Romeris L_    _108533_    _Gulf C.F. Annex_
      Last   First   Middle Initial        Number        Institution

| Part A – Inmate Grievance | 12-6-10465 |

Dear Sir,

I have been gassed for writing grievances and promised more harm if I write anymore grievances. This is not a grievance, it's a appeal of the D.R. hearing finding of guilt but I cannot go through the institution because they say as long as I don't file anymore grievance or lawsuit, they want harm me again. If you have a problem with this appeal, please discard it instead of reporting me to the institution.

I was gassed by Captain Weeks on 2-8-12 and this fabricated D.R. was written to justify the use of chemical agents. I was already in confinement for a D.R. written on 2-5-17 when this occurred. When the D.R. was delivered the next day, I called all the inmates in confinement, the use of force video, still video mounted from ceilings and Inspector Kelly Martin of the Inspector General office as witnesses and evidence. Contrary to what the information sheet says, I plead not guilty and told them that I personally witnessed Officer Richards go around with witness statements intimidating the witnesses. He skipped cells 112-116, 103-106, 120-122, and 201. Because I was in cell 117 I could not observe his actions at 213-222. But I did hear him stating "You want to write a statement... I need you to write a statement for old boy that got gassed yesterday... He's calling everybody on the wing." I observed him get statements from 108, 109, 118, and 208. During his conversations at 118 or 119, I heard him state "I will see what I can do for you, but I can't promise much."

At the D.R. hearing I objected to officer Richards participation in the investigation of the D.R. written by him and C.p.t. Weeks hearing of a D.R. based on and needed to justify him having wrongfully used chemical agents.

_Feb. 23, 2012_                          _Romeris L. Walker 108533_
DATE                                    SIGNATURE OF GRIEVANT AND D.C. #

*BY SIGNATURE, INMATE AGREES TO THE FOLLOWING # OF 30-DAY EXTENSIONS:   _0_   _Romeris L. Walker_
                                                                         #        Signature

INSTRUCTIONS

This form is used for filing a formal grievance at the institution or facility level as well as for filing appeals to the Office of the Secretary in accordance with Rule 33-103, Florida Administrative Code. When an appeal is made to the Secretary, a copy of the initial response to the grievance must be attached (except as stated below).

When the inmate feels that he may be adversely affected by the submission of a grievance at the institutional level because of the sensitive nature of the grievance, or is entitled by Chapter 33-103 to file a direct grievance he may address his grievance directly to the Secretary's Office. The grievance may be sealed in the envelope by the inmate and processed postage free through routine institutional channels. The inmate must indicate a valid reason for not initially bringing his grievance to the attention of the institution. If the inmate does not provide a valid reason or if the Secretary or his designated representative feels that the reason supplied is not adequate, the grievance will be returned to the inmate for processing at the institutional level.

Receipt for Appeals Being Forwarded to Central Office

A069

Submitted by the inmate on: _____    Institutional Mailing Log #: _____    (Received By) ___054___
                              (Date)                                                              (2-3)

DISTRIBUTION:   INSTITUTION/FACILITY          CENTRAL OFFICE
                INMATE (2 Copies)             INMATE                                    2-8-12
                INMATE'S FILE                 INMATE'S FILE - INSTITUTION/FACILITY
                INSTITUTIONAL GRIEVANCE FILE  CENTRAL OFFICE INMATE FILE                150
                                              CENTRAL OFFICE GRIEVANCE FILE

DC1-303 (Revised 2/05)

against me. The Hearing was postponed when it was realized that no one had reviewed the videos or contacted the inspector general's office. I was later told that the hearing team was not going to review the use of force video because they already knew it did not show any evidence of the conduct alleged by the D.R. and they were not going to review 8 hours of still video. And even though no one ever conducted another interview of possible witnesses (I know this because no one came around with any more statement forms, nor was my cell-mate questioned even though he was three cells down in 114 when I was gassed) or reviewed the videos and contacted the inspector general's office, I was found guilty by Captain Weeks and Ms. Floyd.

I understand that by the time this appeal is determined I will have completed the 30 days confinement. But because of the obvious biased and unneutral investigation, biased, and improper hearing, I am asking that the D.R hearing decision be reversed and the findings of guilty be removed from against me.

Thank you for you time and consideration.

Romeil D. Walls

A070

```
                    FLORIDA DEPARTMENT OF CORRECTIONS   120        03/20/12
    ISSO158 (14)            DISCIPLINARY REPORT                     PAGE   1
                            HEARING INFORMATION
                            LOG # 150-120264
--------------------------------------------------------------------------------
   DC#: 108533   INMATE NAME: WALKER, ROMERIO          P2120L INFRACTION
   VIOLATION CODE:  0023   TITLE: PART.IN DISTURBANCE          DATE: 03/08/12
   FACILITY CODE:  150    NAME:  GULF C.I.- ANNEX             TIME: 12:22
--------------------------------------------------------------------------------
            TEAM   FINDINGS AND ACTION   DATE: 03/13/12, AT: 10:40
         INMATE OFFERED STAFF ASSISTANCE: DECLINED
         INMATE PLEA: NO PLEA      FINDINGS: GUILTY
         INMATE PRESENT: YES
     POSTPONEMENT:
         03/13/2012 HEARING POSTPONED
         POSTPONED DUE TO TECHNICAL ERROR .
     BASIS FOR DECISION:
         BASED ON OFFICER RICHARDS' WRITTEN REPORT AND CONFIRMED BY
         THE INVESTIGATION WHICH STATES IN PART, " I/M.WALKER,ROMERIO
         #108533(P2-117L) BEGAN YELLING OBSCENITIES AT STAFF FROM
         HIS CELL. I ORDERED I/M WALKER TO CEASE HIS ACTIONS, TO
         WHICH, HE STATED "YA'LL SCARED OF AN EDUCATED MAN HUH?
         SCARED I MIGHT SUE YOUR ASS!" I AGAIN ORDERED I/M WALKER TO
         CEASE HIS ACTIONS TO NO AVAIL.  I/M WALKER CONTINUED HIS
         DISORDERLY BEHAVIOR, YELLING AND CAUSING OTHER INMATES IN
         THE CONFINEMENT UNIT TO JOIN HIM IN HIS DISRUPTIVE
         BEHAVIOR." ALL WITNESS STATEMENTS WERE READ AND TAKEN INTO
         CONSIDERATION. ALL EVIDENCE: DC6-2028 DISPOSITION OF
         VIDEOTAPE OR AUDIOTAPE EVIDENCE WAS REVIEWED AND TAKEN INTO
         CONSIDERATION.

   ACTIONS TAKEN:
    DISCIPLINARY CONFINEMENT:   30; PROBATION DAYS SET:   0 CONSECUTIVE

    RESTITUTION:       $.00; INDIV.REVIEW/COUNSEL?: N; CONFISCATE CONTRABAND?: N

    TEAM CHAIRMAN:   BTL41 - FLOYD, TERESA L
    TEAM MEMBERS:    WPA12 - WEEKS,PHILIP A            -
--------------------------------------------------------------------------------
--------------------------------------------------------------------------------
```

A071



**PART B - RESPONSE**

WALKER, ROMERIO        106538        150-120465        GULF C.I.- ANNEX        P2205L
INMATE              NUMBER      GRIEVANCE LOG NUMBER      CURRENT INMATE LOCATION      HOUSING LOCATION

Your request for Administrative Remedy or Appeal has not been filed in compliance with Chapter 33-103.006, Inmate Grievance Procedure. You did not provide this office with a copy of the formal grievance filed at the institutional level as required by rule or the reason you provided for by-passing that level of the grievance procedure is not acceptable.  The institution should be afforded the opportunity to respond to your issue concerning DR Log# 150-120264.

Furthermore, your allegations of excessive force and reprisal were reported in accordance with policy.  A copy of this appeal will be forwarded to the Use of Force Unit, Central Office, for review and appropriate action.

Upon receipt of this response, you are allowed an additional 15 days from the date this response was mailed (date stamped in upper left corner) to resubmit your grievance at your current location in compliance with Chapter 33-103, Inmate Grievance Procedure.  Attach a copy of this response and any relevant attachments to your re-filed grievance.

Based on the foregoing information, your grievance is returned without action.

G. WELLHAUSEN

_____          _____          4/4/12
SIGNATURE AND TYPED OR PRINTED NAME          SIGNATURE OF WARDEN, ASST. WARDEN, OR          DATE
OF EMPLOYEE RESPONDING                              SECRETARY'S REPRESENTATIVE


COPY DISTRIBUTION -INSTITUTION / FACILITY

(2 Copies) Inmate

(1 Copy) Inmate's File

(1 Copy) Retained by Official Responding


COPY DISTRIBUTION - CENTRAL OFFICE

(1 Copy) Inmate

(1 Copy) Inmate's File - Inst./Facility

(1 Copy) C.O. Inmate File

(1 Copy) Retained by Official Responding

A0 72

STATE OF FLORIDA
DEPARTMENT OF CORRECTIONS

RECEIVED
MAY - 3 2012
DEPARTMENT OF CORRECTIONS
INMATE GRIEVANCES

**REQUEST FOR ADMINISTRATIVE REMEDY OR APPEAL**

TO: ☐ Warden    ☐ Assistant Warden    ☒ Secretary, Florida Department of Corrections

From: Walker, Romello L.    108533    Gulf C.I. Annex
Last   First   Middle Initial    Number    12-6-14011    Institution

Part A – Inmate Grievance

I have been gassed for filing grievances to the warden at Gulf C.I. Annex and told I will be harmed or gassed again should I file any more grievances to the Warden or his staff.

On this last night 4-19-12 around 6-7 P.M., Captain Mashburn chained the doors of cell 119 and 120 so he could gas them because he didn't like the way they talked to them when he questioned them about cursing out officer Brock at breakfast on that morning. Brock had promised to get them when he came to work that night. On the first gas Mashburn hit cell 120 with 8 bursts and 119 with 6 bursts. He then went from cell to cell picking at them for coughing and told 119 it must be his first time getting gassed. They were begging for Mashburn to let them out but one of the inmates in 120 (Green) did not beg. Mashburn hit his cell with 3 more bursts and 119 with one more burst. They were still begging to be let out and apologizing for cursing (except Green in 120) Mashburn hit 120 with three more bursts but not cell 119 before letting them shower. While in the shower Green asked if Mashburn had another can of gas. Because my cell was directly across from 120 me and my roommate were coughing violently and blowing snot from the effects of the gas.

Around 11:30 P.M. I heard the white female captain on the next shift telling Green in 120 that she was gonna gas him again if he didn't clean his cell. She told him he could see the psych if he cleaned his cell. He cleaned the cell but and we all went to sleep. Early in the morning, before breakfast we woke to the lights being turned on. When we began coughing and our nose running we observed Green in 120 butt naked and appeared to have been gassed. As we were watching him walking back and forth coughing (but not causing any disturbance) I observed the white female captain gas 120 as a officer opened the food slot. The whole wing was on their doors coughing by then. Green was alone in his cell because his roommate was removed after the first gassing with Mashburn.

I never heard any disturbance and feel all those involved need to be fired because gassing us in the middle of the night was cruel and unusual punishment.

April 20, 2012    Romello L. Walker
DATE    SIGNATURE OF GRIEVANT AND D.C. #    150

*BY SIGNATURE, INMATE AGREES TO THE FOLLOWING # OF 30-DAY EXTENSIONS:  10h    0    Romello L. Walker
# Signature

INSTRUCTIONS
This form is used for filing a formal grievance at the institution or facility level as well as for filing appeals to the Office of the Secretary in accordance with Rule 33-10 Florida Administrative Code. When an appeal is made to the Secretary, a copy of the initial response to the grievance must be attached (except as stated below).

When the inmate feels that he may be adversely effected by the submission of a grievance at the institutional level because of the sensitive nature of the grievance, or is entitled by Chapter 33-103 to file a direct grievance he may address his grievance directly to the Secretary's Office. The grievance may be sealed in the envelope by the inmate and processed postage free through routine institutional channels. The inmate must indicate a valid reason for not initially bringing his grievance to the attention of the institution. If the inmate does not provide a valid reason or if the Secretary or his designated representative feels that the reason supplied is not adequate, the grievance will be returned to the inmate for processing at the institutional level.

Receipt for Appeals Being Forwarded to Central Office

Submitted by the inmate on: _____  Institutional Mailing Log #: _____  _____
(Date)    (Received By)

DISTRIBUTION:    INSTITUTION/FACILITY    CENTRAL OFFICE    A-073
INMATE (2 Copies)    INMATE
INMATE'S FILE    INMATE'S FILE - INSTITUTION/FACILITY
INSTITUTIONAL GRIEVANCE FILE    CENTRAL OFFICE INMATE FILE
CENTRAL OFFICE GRIEVANCE FILE

DC1-303 (Effective 2/05)    Incorporated by Reference in Rule 33-103.019, F.A.C.

FILED
WITH AGENCY CLERK

MAY 10 2012

DEPARTMENT OF CORRECTIONS
BUREAU OF INMATE GRIEVANCE APPEALS

**PART B - RESPONSE**

| WALKER, ROMERIO | 108533 | 12-6-14011 | GULF C.I.- ANNEX | Q2215L |
|---|---|---|---|---|
| INMATE | NUMBER | GRIEVANCE LOG NUMBER | CURRENT INMATE LOCATION | HOUSING LOCATION |

Your appeal has been reviewed and evaluated. The issue of your complaint has been referred to the investigative section of the Office of the Inspector General for appropriate action. Upon completion of necessary action, information will be provided to appropriate administrators for final determination and handling.

As action has been initiated, you may consider your appeal approved from that standpoint.

J. Adams

| SIGNATURE AND TYPED OR PRINTED NAME OF EMPLOYEE RESPONDING | SIGNATURE OF WARDEN, ASST. WARDEN, OR SECRETARY'S REPRESENTATIVE | 5/8/12 DATE |
|---|---|---|

COPY DISTRIBUTION -INSTITUTION / FACILITY
(2 Copies) Inmate
(1 Copy) Inmate's File
(1 Copy) Retained by Official Responding

COPY DISTRIBUTION - CENTRAL OFFICE
(1 Copy) Inmate
(1 Copy) Inmate's File - Inst./Facility
(1 Copy) C.O. Inmate File
(1 Copy) Retained by Official Responding

A074

STATE OF FLORIDA
DEPARTMENT OF CORRECTIONS

RECEIVE~

REQUEST FOR ADMINISTRATIVE REMEDY OR APPEAL

DEPARTMEN ~ ~ ~

TO: ☐ Warden      ☐ Assistant Warden      ☒ Secretary, Florida Department of Corrections

From: Walker, Romeen   L.          108533          Gulf C.I. Annex
      Last    First    Middle Initial          Number          Institution

| Part A – Inmate Grievance | 2-6-23440 |

To Whom it may concern,

Dear recipient, I have filed several grievances notifying your office
that I have been the victim of cruel and unusual punishment and a
conspiracy to deny me my right to grievances and the redress of a wrong before
the courts. These people have gassed me and straight up warned me that if
I continued writing grievances or tried to sue they would gass me again,
beat me and write me more frivolous DRs. In order to prevent this I
have complied with their demand that I not send them any more grievances
or initiate a suit in return for them leaving me alone. Yet they have not kept
their end of the bargain. They did let me out of confinement early as promised
but have continued to harass and provoke me with their unauthorized
actions inwhich I have been afraid to grieve. I have been afraid to grieve the following:

   One day while walking through center gate to lunch, classification officer Lawrence
Young stopped me at the center gate, took my canteen ordered shades, because I wore
them through gate, and when I asked for a confiscation receipt, he told me that if he gave
me one, I had to get a DR also. He then reminded me of the threats officers made while
I was in confinement and broke my shades.

   On another day officers made me stand in rain for 46 minutes to get legal mail and
threatened me confinement me if I refused mail or stood out of rain under building overhang.

   I was forced to wear one set of unassigned cloths from January 23, 2012 - The end of May

   On June 2, 2012, Captain Mashburn, Sgt. Swartz, Sgt. Stephens, and officer Richards again began
threatening to gas me. They told me that I can file all the suits I want because the court has
been under investigation for several year and nothing will ever become of it. Officer
Richards bragged that he had told me that I couldn't sue him and that they were
                                                                    next page →

_____     1 of 34
2-28-12                              Romeen A. Walker 108533
DATE                                 SIGNATURE OF GRIEVANT AND D.C. #

*BY SIGNATURE, INMATE AGREES TO THE FOLLOWING # OF 30-DAY EXTENSIONS: 0 Romeen A. Walker
                                                                      #        Signature

INSTRUCTIONS

This form is used for filing a formal grievance at the institution or facility level as well as for filing appeals to the Office of the Secretary in accordance with Rule 33-103,
Florida Administrative Code. When an appeal is made to the Secretary, a copy of the initial response to the grievance must be attached (except as stated below).          150

When the inmate feels that he may be adversely affected by the submission of a grievance at the institutional level because of the sensitive nature of the grievance, or is
entitled by Chapter 33-103 to file a direct grievance with the Secretary, he may address his grievance directly to the Secretary's Office. The grievance may be sealed in the envelope by the
inmate and processed postage free through routine institutional channels. The inmate must indicate a valid reason for not initially bringing his grievance to the attention of
the institution. If the inmate does not provide a valid reason or if the Secretary or his designated representative feels that the reason supplied is not adequate, the grievance
will be returned to the inmate for processing at the institutional level.

CAS P-B
Receipt for Appeals Being Forwarded to Central Office          AO 75

Submitted by the inmate on: _____     Institutional Mailing Log #: _____
                    (Date)                                                  (Received By)
                                                                      Capt. Mashburn
DISTRIBUTION:   INSTITUTION/FACILITY          CENTRAL OFFICE          Sgt. Swartz
                INMATE (2 Copies)             INMATE
                INMATE'S FILE                 INMATE'S FILE - INSTITUTION/FACILITY     Sgt. Stephens
                INSTITUTIONAL GRIEVANCE FILE  CENTRAL OFFICE INMATE FILE
                                              CENTRAL OFFICE GRIEVANCE FILE            Ofc. Richards

DC1-303 (Revised 2/05)

gonna put that fire to me again. Sgt swartz told me when
he come back on Friday, he was gonna be the one to pull
the trigger. Officer Easton stated that he get nothing
out of gassing people, he was more of a hands on person. He
said he would get me somewhere by myself and spontaneously
strike me when there were no witnesses, then it would be my
word against his and no one would believe me because he was
a perfect candidate with his spotless record. Mashburn told
me that he was gonna gas me because I hadn't had
enough the last time. He told me I could sue all I went
because it wasn't gonna change nothing and no one would
believe me. I looked over on benches at inmates known to me as
"KJ" and "Buster Brown" and stated "Ya'll hear these officers
threatening to gas me for no reason." Officer Easton, knowing both
inmates by their real names, stated, "I ain't never knew ——— or ———
to give a statement for or against a inmate. ~~Because these~~
   Because these inmates had been standing around and overheard
enough of the conversation, one of them got a message to another
inmate that knew me and my mother. He ~~and~~ had his sister
call my mother and told her of the threats. I was
unaware of this until later when on July 8, 2012, Sgt.
Stephens came to my door and placed some papers at the
top. I got up and grabbed the papers and learned that a
Officer Brian Thomas had written me a frivolous D.R.
Sgt Stephens made no attempt to interview me and didn't
even give a time of the investigation. I asked who wrote the
D.R. and he smiled and stated "What? You don't remember?
Tell your daddy to stop calling up here every two hours claiming
you getting gassed." He then walked off. On 7-13-12, I
received mail from home and was informed that a
lady had called my mother and informed her of the

threats being made by the officers.

On 7-9-17, I received another DR from Sgt Stephens that was dismissed because he mis-identified me as being in my cell-mates bunk and because the investigators did not review the video footage I requested to be reviewed. The DR was rewritten within a hour of being dismissed.

Aprox 2:30-2:40 P.M. on the same day (7-17-20) an officer brought me a cell inspection form to sign. When I learned he was officer Thomas, I asked why he lied on me and wrote me a DR when I had never met or spoken to him prior to the 17th. He said "I don't know, I was only doing what I was told to do."

On todays date, officer Richards stood outside my door repeating "Romecio Romecio." These incidents are similar to the incidents leading to me getting gassed on March 8, 2012. That incident was also preceeded by frivolous DR's and Officer Richards taunting me outside my door.

You guys were warned of their threats and took no action before, even though you claim to have launched several investigations that were dismissed without interviewing any witnesses including me.

I really hope you realize the seriousness of the situation this time and take action before I am forced to suffer too much longer.

                                    Thomas A. Weller

                              3 of 4

\*\*\*  Do to the apparent sensitive nature of this complaint and the fact that the asst. and superintendant's office were accused in the prior investigation, I have bi-passed the institutional level grievance procedure.

A077

## Supplemental Incident

On 7-21-12, while handing out lunch trays, Richards (officer) backed-up and asked me what his buddy wrote me a DR. for. I said "Nothing". He asked me what I meant and I said "He told me to tell my daddy to stop calling up here claiming I'm getting gassed." Officer Richards then told me "You need to tell your folks to stop calling up here." I told him that I didn't know nothing about them calling up here. Officer Richards then told me "You know you stand a pretty good chance of beating his D.R., but if I write you one it's gonna stick." I asked him why would he write me one and he asked if I was going to stop. I said "stop what? I ain't done nothing." He asked if I was going to tell my people to stop calling up here or did I want to go there with him. I told him "look here, I ain't getting out of the box anyways, so if you all want to start writing me frivolous DR's again, then I have no choice but to start filing grievances again." He said "Okay, so we do it that way then," and walked off.

Thomerie A. Walker 7-21-12

FILED WITH AGENCY CLERK

AUG 0 8 2012

Department of Corrections
Bureau of Inmate Grievance Appeals

**PART B - RESPONSE**

| WALKER, ROMERIO | 108533 | 12-6-23440 | GULF C.I.- ANNEX | P2208L |
|---|---|---|---|---|
| INMATE | NUMBER | GRIEVANCE LOG NUMBER | CURRENT INMATE LOCATION | HOUSING LOCATION |

Your request for administrative appeal is in non-compliance with the Rules of the Department of Corrections, Chapter 33-103, Inmate Grievance Procedure. The rule requires that you first submit your appeal at the appropriate level at the institution. You have not done so or you have not provided this office with a copy of that appeal, nor have you provided a valid or acceptable reason for not following the rules.

The institution should be given the opportunity to respond to your issue.

Furthermore, a copy of your grievance has been forwarded to the Warden's office for review.

If in fact you did submit a grievance at the appropriate local level, and this appeal to the Central Office was receipted within 15 days of the date of the response you received, you are allowed an additional 15 days from the date this response was mailed (date stamped in upper left corner), to submit a new appeal at the next appropriate level and attach a copy of the required grievance. This office will not review an appeal that was not filed within the time frames established by rule.

Based on the foregoing information, your grievance is returned without action.

J. Moore

| SIGNATURE AND TYPED OR PRINTED NAME OF EMPLOYEE RESPONDING | SIGNATURE OF WARDEN, ASST. WARDEN, OR SECRETARY'S REPRESENTATIVE | 8/6/12 DATE |
|---|---|---|

COPY DISTRIBUTION -INSTITUTION / FACILITY

(2 Copies) Inmate

(1 Copy) Inmate's File

(1 Copy) Retained by Official Responding

COPY DISTRIBUTION - CENTRAL OFFICE

(1 Copy) Inmate

(1 Copy) Inmate's File - Inst./Facility

(1 Copy) C.O. Inmate File

(1 Copy) Retained by Official Responding

A 079

STATE OF FLORIDA
DEPARTMENT OF CORRECTIONS

JUL 26 2010

REQUEST FOR ADMINISTRATIVE REMEDY OR APPEAL   PROGRAMS
                                               GULF C.I.

TO: ☒ Warden      ☐ Assistant Warden      ☐ Secretary, Florida Department of Corrections

From: Walker Romario L        108533        Gulf C.I. Annex
      Last  First  Middle Initial   Number        Institution

                                    1207-150-086

**Part A – Inmate Grievance**

I would like to appeal the D.R. hearings finding in DR Log # 150-170727.

1. First, the DR was written on my at 7-17-12 at 13:00. It was served on me at 9:45 A.M. on 7-10-12 and Sgt Stephens Cascaddia to investigate report) I was interviewed during the 13:00 hours on 7-10-12. Upon being informed at this by Ms. Jackson, I moved for dismissal because the investigation was not timely begun within 24 hours. To this, the hearing team (Ms. Jackson and Lt. McCormac) informed me that the investigation begun when the investigator received the D.R., and not when he actually began interviewing people. I was told that the investigator received the D.R. during the 10:00 hours on 7-18-12 and therefore the investigation was considered commenced within 24 hours.

2. Witness Carlos Anderson testified that "this never took place" when he was asked to give a statement by the investigator. I also called the video as evidence, but the investigator did not find anything on the video to support either my or Sgt Stephens statement. In finding me guilty, the team found that their decision was based on the sgt's written report and the investigation (because it has been brought to their attention that a finding of guilty cannot rely solely on the written report when there are witnesses and evidence presented) when asked how the investigation cited above supported their conclusion, the hearing team found that even though the video does not support the sgt's statement, it does not support mine either. And when questioned regarding the witness statement, the DR team claimed they did not know whether the witness was stating the incident reported in D.R. never took place or my written statement, even though I pointed out the witness could not have been referring to my statement since it was written after witness's and never shown or read to him. Anderson was present had they desired to speak to him. The video evidence was not viewed by any of the DR Team members.

7-24-12
DATE                                    Romario L. Walker
                                        SIGNATURE OF GRIEVANT AND D.C. #

*BY SIGNATURE, INMATE AGREES TO THE FOLLOWING # OF 30-DAY EXTENSIONS:        0    1 Romario L. Walker
                                                                              #        Signature

**INSTRUCTIONS**

This form is used for filing a formal grievance at the institution or facility level as well as for filing appeals to the Office of the Secretary in accordance with Rule 33-, Florida Administrative Code. When an appeal is made to the Secretary, a copy of the initial response to the grievance must be attached (except as stated below).

When the inmate feels that he may be adversely affected by the submission of a grievance at the institutional level because of the sensitive nature of the grievance, or is entitled by Chapter 33-103 to file a direct grievance he may address his grievance directly to the Secretary's Office. The grievance may be sealed in the envelope by inmate and processed postage free through routine institutional channels. The inmate must indicate a valid reason for not initially bringing his grievance to the attention of the institution. If the inmate does not provide a valid reason or if the Secretary or his designated representative feels that the reason supplied is not adequate, the grievance will be returned to the inmate for processing at the institutional level.

**Receipt for Appeals Being Forwarded to Central Office**

Submitted by the inmate on:_____   Institutional Mailing Log #:_____
                    (Date)                                        (Received By)

DISTRIBUTION:    INSTITUTION/FACILITY        CENTRAL OFFICE
                 INMATE (2 Copies)           INMATE
                 INMATE'S FILE               INMATE'S FILE - INSTITUTION/FACILITY
                 INSTITUTIONAL GRIEVANCE FILE  CENTRAL OFFICE INMATE FILE        A 080
                                             CENTRAL OFFICE GRIEVANCE FILE
DC1-303 (Effective 2/05)        Incorporated by Reference in Rule 33-103.019, F.A.C.
                                    1207-150-026

**PART B - RESPONSE**

| WALKER, ROMERIO | 108533 | 1207-150-026 | GULF C.I.- ANNEX | P2208L |
|---|---|---|---|---|
| INMATE | NUMBER | GRIEVANCE LOG NUMBER | CURRENT INMATE LOCATION | HOUSING LOCATION |

Your request for administrative remedy or appeal has been received, evaluated and responded to as follows:

You are grieving the disciplinary report your received for the violation (1-4) Disrespect of Official. Ms. Jackson and Lt. McComas were interviewed and advised that you were not informed that the investigation of your disciplinary report began with the investigating officer receiving the disciplinary report. Your disciplinary report was written on 7/17/2012 at 1300 hours. The investigation began on 7/18/2012 at 1030 hours. The hearing team found you guilty based on Sergeant Stephens written report and the information furnished through the investigation. You listed inmate Anderson, Carlos #T54612 as a witness and he provided a statement. It was taken into consideration by the team in establishing their findings of guilt. You also listed the video surveillance as evidence. The video tape was reviewed and it was concluded that based upon the review of the identified tape or the capabilities of the particular taping equipment, the tape requested does not provide evidence to support your statements. You have failed to offer any new or additional information that would cause for a reversal of the team's decision.

Based on the above information your grievance is denied.

You may obtain further administrative review of your complaint by obtaining Form DC1-303, Request for Administrative Remedy or Appeal, completing the form, providing attachments as required by 33-103.007(3) (a) and (b), and forwarding your complaint to the Bureau of Inmate Grievance Appeals, 501 South Calhoun Street, Tallahassee, Florida 32399-2500.

J. D. Sloan, Assistant Warden                          C. Halley, Warden

| SIGNATURE AND TYPED OR PRINTED NAME OF EMPLOYEE RESPONDING | SIGNATURE OF WARDEN, ASST. WARDEN, OR SECRETARY'S REPRESENTATIVE | 8/15/12 DATE |
|---|---|---|

COPY DISTRIBUTION -INSTITUTION / FACILITY
(2 Copies) Inmate
(1 Copy) Inmate's File
(1 Copy) Retained by Official Responding

COPY DISTRIBUTION - CENTRAL OFFICE
(1 Copy) Inmate
(1 Copy) Inmate's File - Inst./Facility
(1 Copy) C.O. Inmate File
(1 Copy) Retained by Official Responding

A081

FLORIDA DEPARTMENT OF CORRECTIONS                    07/08/2012
ISSO150 (01)              CHARGING DISCIPLINARY REPORT                    PAGE:      1
                              LOG # 150-120702
--------------------------------------------------------------------------------
DC#: 108533   INMATE NAME: WALKER, ROMERIO           INFRACTION
VIOLATION CODE:  0061   TITLE: DISOBEYING ORDER       DATE: 07/07/12
FACILITY CODE:  150     NAME: GULF C.I.- ANNEX        TIME: 17:30
--------------------------------------------------------------------------------
I.    STATEMENT OF FACTS
      ON 7-712 I WAS ASSIGNED AS CONFINEMENT HOUSING OFFICER.
      AT APPROXIMATELY 5:30PM WHILE CONDUCTING A ROUTINE SECURITY
      CHECK I APPROACHED CELL (P2-117) WHICH HOUSES INMATE WALKER,
      ROMERIO DC#108533 (P2-117U) AND INMATE ANDERSON, CHARLES
      DC#T54612 (P2-117L). I OBSERVED AND HEARD INMATE WALKER
      TALKING TO AN UNIDENTIFIED INMATE THROUGH THE VENTILATION
      SYSTEM. I GAVE INMATE WALKER A VERBAL ORDER TO CEASE HIS
      ACTIONS INMATE WALKER COMPLIED. AT APPROXIMATELY 6:00PM
      I AGAIN OBSERVED INMATE WALKER TALKING TO AN
      UNIDENTIFIED INMATE WHILE CONDUCTING A SECURITY CHECK. I
      GAVE INMATE WALKER ANOTHER VERBAL ORDER TO CEASE HIS
      ACTIONS TO WHICH HE COMPLIED. INMATE ANDERSON WAS PRESENT
      DURING THIS INCIDENT BUT REMAINED UNINVOLVED. SHIFT OIC
      WAS NOTIFIED AND INSTRUCTED ME TO SUBMIT THIS REPORT.
      INMATE WALKER WILL REMAIN IN ADMINISTRATIVE CONFINEMENT
      PENDING DISPOSITION OF THIS REPORT FOR CHARGE (6-1)
      DISOBEYING A VERBAL ORDER.


      REPORT WRITTEN: 07/07/12, AT 18:30        BY: TBW06 - THOMAS,BRIAN W.
--------------------------------------------------------------------------------

II.   INMATE NOTIFICATION OF CHARGES: DATE DELIVERED: _7 / 8 / 12_ AT __:__

         NO HEARING SHALL COMMENCE PRIOR TO 24 HOURS OF DELIVERY OF CHARGES
         EXCEPT WHEN THE INMATE'S RELEASE DATE DOES NOT ALLOW TIME FOR SUCH
         NOTICE OR THE INMATE WAIVES THE 24 HOUR PERIOD AS AUTHORIZED IN RULE
         33-601, FLORIDA ADMINISTRATIVE CODE.

              DELIVERED BY : _SKE17_ - _____
--------------------------------------------------------------------------------

NOTICE TO INMATE:
AS AN INMATE BEING CHARGED WITH A VIOLATION OF THE RULES OF PROHIBITED
CONDUCT, YOU ARE ADVISED THE FOLLOWING:
--------------------------------------------------------------------------------

INVESTIGATION:
AN IMPARTIAL INVESTIGATION WILL BE CONDUCTED ON THIS DISCIPLINARY REPORT.
DURING THE INVESTIGATION OF THE DISCIPLINARY REPORT, YOU WILL BE ADVISED
OF THE CHARGES AGAINST YOU AND YOU MAY REQUEST STAFF ASSISTANCE. DURING
THE INVESTIGATION YOU SHOULD MAKE KNOWN ANY WITNESSES TO THE INVESTIGATING
OFFICER. THE TESTIMONY OF WITNESSES SHALL BE PRESENTED BY WRITTEN STATEMENTS.
SEE RULE 33-601.307(3) FOR COMPLETE INFORMATION REGARDING WITNESSES. YOU WILL

```
                       FLORIDA DEPARTMENT OF CORRECTIONS        07/08/2012
ISSO150 (01)            CHARGING DISCIPLINARY REPORT                         PAGE:      2
                             LOG # 150-120702
------------------------------------------------------------------------
DC#: 108533   INMATE NAME: WALKER, ROMERIO              INFRACTION
VIOLATION CODE:  0061    TITLE: DISOBEYING ORDER        DATE: 07/07/12
FACILITY CODE:  150     NAME: GULF C.I.- ANNEX          TIME: 17:30
------------------------------------------------------------------------
HAVE THE OPPORTUNITY TO MAKE A STATEMENT IN WRITING REGARDING THE CHARGE AND
TO PROVIDE INFORMATION RELATING TO THE INVESTIGATION.
------------------------------------------------------------------------
```

DELIVERY OF CHARGES:
A COPY OF THE CHARGES WILL BE PROVIDED TO YOU AT LEAST 24 HOURS PRIOR
TO THE CONVENING OF THE DISCIPLINARY HEARING UNLESS YOU WAIVE THE WAITING
PERIOD. THE HEARING MAY BEGIN ANY TIME AFTER THE 24 HOUR PERIOD UNLESS
YOU SIGN THE WAIVER.

------------------------------------------------------------------------

DISCIPLINARY HEARING:
THE DECISION WILL BE MADE IN ADVANCE WHETHER THE HEARING WILL BE CONDUCTED
BY THE DISCIPLINARY TEAM OR THE HEARING OFFICER. YOU MAY REQUEST A HEARING
BY THE FULL DISCIPLINARY TEAM RATHER THAN THE HEARING OFFICER. YOU WILL
APPEAR IN PERSON BEFORE THE DISCIPLINARY TEAM/HEARING OFFICER UNLESS YOU
WAIVE THIS APPEARANCE BY SIGNING A WAIVER FORM. YOU WILL BE ADVISED OF
THE CHARGES PLACED AGAINST YOU AND THE RANGE OF PENALTY IF FOUND GUILTY.
YOU MAY REQUEST STAFF ASSISTANCE. THE CHAIRPERSON/HEARING OFFICER WILL READ
THE STATEMENT AND ASK YOU FOR YOUR PLEA. A GUILTY PLEA REQUIRES NO FURTHER
STATEMENT; HOWEVER, YOU MAY MAKE A STATEMENT FOR THE TEAM/HEARING OFFICER
TO CONSIDER. A NO CONTEST PLEA WILL BE TREATED AS A GUILTY PLEA. A REFUSAL
TO ENTER A PLEA WILL BE TREATED AS A NOT GUILTY PLEA. IF YOU ENTER A NOT
GUILTY PLEA, YOU WILL BE ALLOWED TO MAKE A STATEMENT ON YOUR OWN BEHALF,
PRESENT EVIDENCE AND REQUEST STAFF OR INMATE WITNESSES AS DEEMED APPROPRIATE
BY THE TEAM/HEARING OFFICER. AFTER THE TEAM/HEARING OFFICER HAS MADE A
DECISION, YOU WILL BE ADVISED VERBALLY AND IN WRITING AS TO THE DECISION AND
THE EVIDENCE RELIED UPON IN MAKING THAT DECISION. IF YOU ARE FOUND GUILTY, YOU
WILL BE ADVISED VERBALLY AND IN WRITING AS TO THE RECOMMENDED PENALTY.

------------------------------------------------------------------------

APPEAL:
IF YOU ARE FOUND GUILTY, YOU MAY APPEAL THIS DECISION BY FILING A
FORMAL GRIEVANCE WITH THE WARDEN OF YOUR FACILITY WITHIN 15 DAYS OF
THE RECEIPT OF WRITTEN NOTICE OF THE TEAM/HEARING OFFICERS DECISION.
FOR INFORMATION REGARDING THE RULES ON DISCIPLINE, REFER TO: 33-601, F. A. C.

```
                    FLORIDA DEPARTMENT OF CORRECTIONS              07/11/12
ISSO158 (14)             DISCIPLINARY REPORT                       PAGE   1
                         HEARING INFORMATION
                         LOG # 150-120702        208C
-----------------------------------------------------------------------------
DC#: 108533   INMATE NAME: WALKER, ROMERIO          P2117U INFRACTION
VIOLATION CODE:  0061   TITLE: DISOBEYING ORDER          DATE: 07/07/12
FACILITY CODE:  150    NAME:  GULF C.I.- ANNEX           TIME: 17:30
-----------------------------------------------------------------------------
          TEAM    FINDINGS AND ACTION   DATE: 07/10/12, AT: 10:38
       INMATE OFFERED STAFF ASSISTANCE: DECLINED
       INMATE PLEA: NOT GUILTY   FINDINGS: GUILTY
       INMATE PRESENT: YES
    POSTPONEMENT:
    BASIS FOR DECISION:
       BASED ON OFFICER THOMAS' WRITTEN REPORT AND CONFIRMED BY THE
       INVESTIGATION WHICH STATES IN PART, "WHILE CONDUCTING A
       ROUTINE SECURITY CHECK I APPROACHED CELL (P2-117) WHICH
       HOUSES INMATE WALKER, ROMERIO DC#108533 (P2-117U) AND INMATE
       ANDERSON, CHARLES DC#T54612 (P2-117L). I OBSERVED AND HEARD
       INMATE WALKER TALKING TO AN UNIDENTIFIED INMATE THROUGH THE
       VENTILATION SYSTEM. I GAVE INMATE WALKER A VERBAL ORDER TO
       CEASE HIS ACTIONS INMATE WALKER COMPLIED. AT APPROXIMATELY
       6:00PM I AGAIN OBSERVED INMATE WALKER TALKING TO AN
       UNIDENTIFIED INMATE WHILE CONDUCTING A SECURITY CHECK. I
       GAVE INMATE WALKER ANOTHER VERBAL ORDER TO CEASE HIS ACTIONS
       TO WHICH HE COMPLIED." ALL WITNESS STATEMENTS WERE READ AND
       TAKEN INTO CONSIDERATION.


 ACTIONS TAKEN:
  DISCIPLINARY CONFINEMENT:  30; PROBATION DAYS SET:   0 CONCURRENT

  RESTITUTION:      $.00; INDIV.REVIEW/COUNSEL?: N; CONFISCATE CONTRABAND?: N

  TEAM CHAIRMAN:   JTL11 - JACKSON,TAMEKA L.
  TEAM MEMBERS:    MJW29 - MCCOMAS, JASON              -
-----------------------------------------------------------------------------
-----------------------------------------------------------------------------
```

A085

```
                        FLORIDA DEPARTMENT OF CORRECTIONS          07/08/2012
 ISSO150 (01)            CHARGING DISCIPLINARY REPORT                           PAGE:      1
                              LOG # 150-120706
-------------------------------------------------------------------
 DC#: 108533   INMATE NAME: WALKER, ROMERIO            INFRACTION
 VIOLATION CODE:  0014    TITLE: DISRESP.TO OFFICIALS  DATE: 07/08/12
 FACILITY CODE: 150      NAME:  GULF C.I.- ANNEX       TIME: 11:25
-------------------------------------------------------------------
```

I.   STATEMENT OF FACTS
     ON 7-8-12 I WAS ASSIGNED AS CONFINEMENT HOUSING SUPERVISOR.
     AT APPROXIMATELY 11:25AM I WAS ATTEMPTING TO INVESTIGATE
     A D.R. ON INMATE WALKER, ROMERIO DC#108533 DC#108533 IN
     P2-117U, WHEN HE BECAME AGITATED AND STATED, "YA'LL
     FUCKING BITCHES, YOU NEED TO LEAVE MY FUCKING CELL NOW
     BITCH!" I GAVE INMATE WALKER SEVERAL VERBAL ORDERS TO
     CEASE HIS DISRESPECTFUL BEHAVIOR. INMATE WALKER CONTINUED
     TO YELL OBSCENITIES TOWARDS ME. ONLY AFTER EXTENSIVE
     COUNSELING BY MYSELF DID INMATE WALKER CEASE HIS
     DISRESPECTFUL BEHAVIOR. INMATE ANDERSON, CHARLES DC#T54612
     WHO IS HOUSED IN P2-117L, WAS PRESENT DURING THIS INCIDENT
     BUT REMAINED UNINVOLVED. INMATE WALKER WILL REMAIN ON HIS
     CURRENT STATUS OF ADMINISTRATIVE CONFINEMENT PENDING THE
     DISPOSITION OF THIS REPORT FOR THE CHARGE OF 1-4 DISRESPECT
     TO OFFICIALS.


     REPORT WRITTEN: 07/08/12, AT 12:00      BY: SKE17 - STEPHENS, KENNETH E.
     ------------------------------------------------------------------

II.  INMATE NOTIFICATION OF CHARGES: DATE DELIVERED: 7/9/12 AT 2:44

         NO HEARING SHALL COMMENCE PRIOR TO 24 HOURS OF DELIVERY OF CHARGES
         EXCEPT WHEN THE INMATE'S RELEASE DATE DOES NOT ALLOW TIME FOR SUCH
         NOTICE OR THE INMATE WAIVES THE 24 HOUR PERIOD AS AUTHORIZED IN RULE
         33-601, FLORIDA ADMINISTRATIVE CODE.

                 DELIVERED BY : _____ - M Nixon Sgt
         ------------------------------------------------------------------

     NOTICE TO INMATE:
     AS AN INMATE BEING CHARGED WITH A VIOLATION OF THE RULES OF PROHIBITED
     CONDUCT, YOU ARE ADVISED THE FOLLOWING:
     ------------------------------------------------------------------

     INVESTIGATION:
     AN IMPARTIAL INVESTIGATION WILL BE CONDUCTED ON THIS DISCIPLINARY REPORT.
     DURING THE INVESTIGATION OF THE DISCIPLINARY REPORT, YOU WILL BE ADVISED
     OF THE CHARGES AGAINST YOU AND YOU MAY REQUEST STAFF ASSISTANCE. DURING
     THE INVESTIGATION YOU SHOULD MAKE KNOWN ANY WITNESSES TO THE INVESTIGATING
     OFFICER. THE TESTIMONY OF WITNESSES SHALL BE PRESENTED BY WRITTEN STATEMENTS.
     SEE RULE 33-601.307(3) FOR COMPLETE INFORMATION REGARDING WITNESSES. YOU WILL
     HAVE THE OPPORTUNITY TO MAKE A STATEMENT IN WRITING REGARDING THE CHARGE AND
     TO PROVIDE INFORMATION RELATING TO THE INVESTIGATION.
     ------------------------------------------------------------------

```
                                FLORIDA DEPARTMENT OF CORRECTIONS      07/08/2012
ISSO150 (01)                    CHARGING DISCIPLINARY REPORT                        PAGE:      2
                                    LOG # 150-120706
----------------------------------------------------------------------------
DC#: 108533    INMATE NAME: WALKER, ROMERIO            INFRACTION
VIOLATION CODE:  0014    TITLE: DISRESP.TO OFFICIALS   DATE: 07/08/12
FACILITY CODE:  150      NAME:  GULF C.I.- ANNEX       TIME: 11:25
----------------------------------------------------------------------------
```

DELIVERY OF CHARGES:
A COPY OF THE CHARGES WILL BE PROVIDED TO YOU AT LEAST 24 HOURS PRIOR
TO THE CONVENING OF THE DISCIPLINARY HEARING UNLESS YOU WAIVE THE WAITING
PERIOD. THE HEARING MAY BEGIN ANY TIME AFTER THE 24 HOUR PERIOD UNLESS
YOU SIGN THE WAIVER.

----------------------------------------------------------------------------

DISCIPLINARY HEARING:
THE DECISION WILL BE MADE IN ADVANCE WHETHER THE HEARING WILL BE CONDUCTED
BY THE DISCIPLINARY TEAM OR THE HEARING OFFICER. YOU MAY REQUEST A HEARING
BY THE FULL DISCIPLINARY TEAM RATHER THAN THE HEARING OFFICER. YOU WILL
APPEAR IN PERSON BEFORE THE DISCIPLINARY TEAM/HEARING OFFICER UNLESS YOU
WAIVE THIS APPEARANCE BY SIGNING A WAIVER FORM. YOU WILL BE ADVISED OF
THE CHARGES PLACED AGAINST YOU AND THE RANGE OF PENALTY IF FOUND GUILTY.
YOU MAY REQUEST STAFF ASSISTANCE. THE CHAIRPERSON/HEARING OFFICER WILL READ
THE STATEMENT AND ASK YOU FOR YOUR PLEA. A GUILTY PLEA REQUIRES NO FURTHER
STATEMENT; HOWEVER, YOU MAY MAKE A STATEMENT FOR THE TEAM/HEARING OFFICER
TO CONSIDER. A NO CONTEST PLEA WILL BE TREATED AS A GUILTY PLEA. A REFUSAL
TO ENTER A PLEA WILL BE TREATED AS A NOT GUILTY PLEA. IF YOU ENTER A NOT
GUILTY PLEA, YOU WILL BE ALLOWED TO MAKE A STATEMENT ON YOUR OWN BEHALF,
PRESENT EVIDENCE AND REQUEST STAFF OR INMATE WITNESSES AS DEEMED APPROPRIATE
BY THE TEAM/HEARING OFFICER. AFTER THE TEAM/HEARING OFFICER HAS MADE A
DECISION, YOU WILL BE ADVISED VERBALLY AND IN WRITING AS TO THE DECISION AND
THE EVIDENCE RELIED UPON IN MAKING THAT DECISION. IF YOU ARE FOUND GUILTY, YOU
WILL BE ADVISED VERBALLY AND IN WRITING AS TO THE RECOMMENDED PENALTY.

----------------------------------------------------------------------------

APPEAL:
 IF YOU ARE FOUND GUILTY, YOU MAY APPEAL THIS DECISION BY FILING A
 FORMAL GRIEVANCE WITH THE WARDEN OF YOUR FACILITY WITHIN 15 DAYS OF
THE RECEIPT OF WRITTEN NOTICE OF THE TEAM/HEARING OFFICERS DECISION.
FOR INFORMATION REGARDING THE RULES ON DISCIPLINE, REFER TO: 33-601, F. A. C.

```
                          FLORIDA DEPARTMENT OF CORRECTIONS     07/17/2012
 ISSO150 (01)              CHARGING DISCIPLINARY REPORT                        PAGE:      1
                               LOG # 150-120727
---------------------------------------------------------------------------------
 DC#: 108533   INMATE NAME: WALKER, ROMERIO          INFRACTION
 VIOLATION CODE:  0014   TITLE: DISRESP.TO OFFICIALS  DATE: 07/08/12
 FACILITY CODE:  150      NAME:  GULF C.I.- ANNEX     TIME: 11:25
---------------------------------------------------------------------------------
```

I.   STATEMENT OF FACTS
     ON 7-08-12 I WAS ASSIGNED AS CONFINEMENT HOUSING SUPERVISOR.
      AT APPROXIMATELY 11:25AM I WAS ATTEMPTING TO INVESTIGATE
     A DR ON INMATE WALKER, ROMERIO DC# 108533 IN P2-117L,
     WHEN HE BECAME AGGITATED AND STATED, "YA'LL FUCKING
     BITCHES, YOU NEED TO LEAVE MY FUCKING CELL NOW BITCH." I
     GAVE INMATE WALKER SEVERAL VERBAL ORDERS TO CEASE HIS
     DISRESPECTFUL BEHAVIOR. INMATE WALKER CONTINUED TO YELL
     OBSCENITIES TOWARDS ME. ONLY AFTER EXTENSIVE COUNSELING
     BY MYSELF DID INMATE WALKER CEASE HIS DISRESPECTFUL
     BEHAVIOR. INMATE ANDERSON, CHARLES DC# T54612 WHO IS
     HOUSED IN P2-117L WAS PRESENT DURING THIS INCIDENT, BUT
     REMAINED UNINVOLVED. INMATE WALKER WILL REMAIN ON HIS
     CURRENT STATUS IN ADMINISTRATIVE CONFINEMENT PENDING THE
     DISPOSITION OF THIS REPORT FOR THE CHARGE OF (1-4)
     DISRESPECT TO OFFICIALS. THIS DR REPLACES LOG #15020120706
     DUE TO TECHNICAL ERRORS.


     REPORT WRITTEN: 07/17/12, AT 13:00     BY: SKE17 - STEPHENS, KENNETH E.
---------------------------------------------------------------------------------

II.  INMATE NOTIFICATION OF CHARGES: DATE DELIVERED: 7 /20 /12, AT 9 :45A

          NO HEARING SHALL COMMENCE PRIOR TO 24 HOURS OF DELIVERY OF CHARGES
          EXCEPT WHEN THE INMATE'S RELEASE DATE DOES NOT ALLOW TIME FOR SUCH
          NOTICE OR THE INMATE WAIVES THE 24 HOUR PERIOD AS AUTHORIZED IN RULE
          33-601, FLORIDA ADMINISTRATIVE CODE.

                    DELIVERED BY : CCP2S    - CN Cool Cascl
---------------------------------------------------------------------------------

     NOTICE TO INMATE:
     AS AN INMATE BEING CHARGED WITH A VIOLATION OF THE RULES OF PROHIBITED
     CONDUCT, YOU ARE ADVISED THE FOLLOWING:
---------------------------------------------------------------------------------

     INVESTIGATION:
     AN IMPARTIAL INVESTIGATION WILL BE CONDUCTED ON THIS DISCIPLINARY REPORT.
     DURING THE INVESTIGATION OF THE DISCIPLINARY REPORT, YOU WILL BE ADVISED
     OF THE CHARGES AGAINST YOU AND YOU MAY REQUEST STAFF ASSISTANCE. DURING
     THE INVESTIGATION YOU SHOULD MAKE KNOWN ANY WITNESSES TO THE INVESTIGATING
     OFFICER. THE TESTIMONY OF WITNESSES SHALL BE PRESENTED BY WRITTEN STATEMENTS.
     SEE RULE 33-601.307(3) FOR COMPLETE INFORMATION REGARDING WITNESSES. YOU WILL
     HAVE THE OPPORTUNITY TO MAKE A STATEMENT IN WRITING REGARDING THE CHARGE AND
     TO PROVIDE INFORMATION RELATING TO THE INVESTIGATION.
---------------------------------------------------------------------------------

FLORIDA DEPARTMENT OF CORRECTIONS          07/17/2012
ISSO150 (01)              CHARGING DISCIPLINARY REPORT                          PAGE:      2
                              LOG # 150-120727
-------------------------------------------------------------------------------
DC#: 108533    INMATE NAME: WALKER, ROMERIO          INFRACTION
VIOLATION CODE:  0014     TITLE: DISRESP.TO OFFICIALS   DATE: 07/08/12
FACILITY CODE:  150      NAME:  GULF C.I.- ANNEX       TIME: 11:25
-------------------------------------------------------------------------------

DELIVERY OF CHARGES:
A COPY OF THE CHARGES WILL BE PROVIDED TO YOU AT LEAST 24 HOURS PRIOR
TO THE CONVENING OF THE DISCIPLINARY HEARING UNLESS YOU WAIVE THE WAITING
PERIOD. THE HEARING MAY BEGIN ANY TIME AFTER THE 24 HOUR PERIOD UNLESS
YOU SIGN THE WAIVER.
-------------------------------------------------------------------------------

DISCIPLINARY HEARING:
THE DECISION WILL BE MADE IN ADVANCE WHETHER THE HEARING WILL BE CONDUCTED
BY THE DISCIPLINARY TEAM OR THE HEARING OFFICER. YOU MAY REQUEST A HEARING
BY THE FULL DISCIPLINARY TEAM RATHER THAN THE HEARING OFFICER. YOU WILL
APPEAR IN PERSON BEFORE THE DISCIPLINARY TEAM/HEARING OFFICER UNLESS YOU
WAIVE THIS APPEARANCE BY SIGNING A WAIVER FORM. YOU WILL BE ADVISED OF
THE CHARGES PLACED AGAINST YOU AND THE RANGE OF PENALTY IF FOUND GUILTY.
YOU MAY REQUEST STAFF ASSISTANCE. THE CHAIRPERSON/HEARING OFFICER WILL READ
THE STATEMENT AND ASK YOU FOR YOUR PLEA. A GUILTY PLEA REQUIRES NO FURTHER
STATEMENT; HOWEVER, YOU MAY MAKE A STATEMENT FOR THE TEAM/HEARING OFFICER
TO CONSIDER. A NO CONTEST PLEA WILL BE TREATED AS A GUILTY PLEA. A REFUSAL
TO ENTER A PLEA WILL BE TREATED AS A NOT GUILTY PLEA. IF YOU ENTER A NOT
GUILTY PLEA, YOU WILL BE ALLOWED TO MAKE A STATEMENT ON YOUR OWN BEHALF,
PRESENT EVIDENCE AND REQUEST STAFF OR INMATE WITNESSES AS DEEMED APPROPRIATE
BY THE TEAM/HEARING OFFICER. AFTER THE TEAM/HEARING OFFICER HAS MADE A
DECISION, YOU WILL BE ADVISED VERBALLY AND IN WRITING AS TO THE DECISION AND
THE EVIDENCE RELIED UPON IN MAKING THAT DECISION. IF YOU ARE FOUND GUILTY, YOU
WILL BE ADVISED VERBALLY AND IN WRITING AS TO THE RECOMMENDED PENALTY.
-------------------------------------------------------------------------------

APPEAL:
IF YOU ARE FOUND GUILTY, YOU MAY APPEAL THIS DECISION BY FILING A
FORMAL GRIEVANCE WITH THE WARDEN OF YOUR FACILITY WITHIN 15 DAYS OF
THE RECEIPT OF WRITTEN NOTICE OF THE TEAM/HEARING OFFICERS DECISION.
FOR INFORMATION REGARDING THE RULES ON DISCIPLINE, REFER TO: 33-601, F. A. C.

ON August 8, 2012

While during Mail pass out Officer Richards slip in a reciept and a Grievance Respond to my roommate Inmate Romerio walker while we were house in P2-2084 as walkin he were walking off My roommate ask him who open this and read it and officer Richards stated I thought you were done. My roommate stated Y'all the one threant threaten to spay me ~~for~~ ~~easy~~ and officer Richard stated if you dont write no more grievance I tell Mashburn, swartz, stephens, to leave you alone, but if you keep writing them were coming.

Carlee Amleeann   DC# T54612   8-8-2012

August 8, 2012  3:00-4:00 P.M. (right before dinner)

Officer Richards was passing out mail when I noticed that the response To my grievance was already opened. I asked Richards who opened and read my Grievance and he stated "I don't know what you're talking about." He then told me "I thought you was done with that" I said "what, you trying to see what I wrote." He stated I can't help but to notice my name at the bottom. I then looked and seen that his name was at the bottom with Mashburn, Swartz and stephens. I said "Yeah, I told you I was through with it but You Stephens and the rest kept talking about how you were gonna spray me and you were bragging about how I can't sue you..." He then put his hand to his lips and said "shhhhh" and when I stopped talking he said "If you done with it, then I'll tell mashburn, stephens and swartz to leave you alone." I said "I kept telling you before that I was done with it, but you all the ones kept threatening to gas me..." He put his fingers to his lips again and said "Shhhhh". And when I stopped talking He said "Are you done with it." I said "yeah I'm done with it. Are you? He said "I'll tell them to leave you alone but if you start something else with them, that's between you all." He then left.

Carnie A. Walker

A089

(Gave me two trays at dinner)

August 14, 2012
While Officer Richards was passing out lunch tray trays
he came to our Room and told my Roommate Romeiro
Walker DC# ___ that he needed to talk to him later
while picking up trays Officer Richards come back
10 minutes later and told my Roommate that Mashburn
is out this week and when he come back that he's
going to talk to him and try to get him transfer
and my Roommate said that fine as long as it
not the main unit and officer Richards said no they
want you gone too another compound and then he
ask my Roommate are you missing some legal work
and my Roommate said yeah and he said Imagine
that and then he said ain't its about the
suit on the sheriff offices and my Roommate
said yeah and but it don't have anything to
do with y'all I seen it yesterday and I know
who got it, but I don't have nothing to do with
that I aint touching it I'm out of that that on
them, but let me hollar at the other shift and
see what I can come up with.

Carlos OnlerArm       DC# T54612

August 14, 201

A 090

August 14, 2012

While passing out lunch trays today, Officer Richards told me he needs to talk to me later.

After picking up trays, Officer Richards came back to my cell and asked was I missing some legal works and I said yes. He then asked if it had something to do with my suits against the sheriffs and I said yes. He smiled and said imagine that. I then asked why would they be concerned with those documents seeing they don't concern no one at Gulf C.I. Annex. Richards then told me that he knows where they are at and who has them but he ain't getting involved. He said that Mashburn will be out this week through next week but when comes back they are gonna get rid of me. I'll still He said he don't think it will be Close Management ("CM") because they have to many people from here already aproved and waiting on bed space at CM, but they want me transferred. I said, that fine with me as long as it ain't to the main unit. He said "No, they want you off the compound, they want you transferred to another camp." I said that what I want also. He then told me, I know who got your stuff and where it's at but I don't want anything to do with it "I ain't touching that, I ain't gonna be the one to give it back." I said I have written four requests to get it back but I haven't gotten any response. He said I will talk to the other shifts and see what's up. He then left and the guys in 202 called me and wanted to know why he was breaking down ("copping dueces") like that. I also had my roommate write down his recollection of what was said and then wrote this statement. I have not read his yet

August 14, 2012          Samuel A. Weller     A091

STATE OF FLORIDA
DEPARTMENT OF CORRECTIONS

RECEIVED

REQUEST FOR ADMINISTRATIVE REMEDY OR APPEAL

AUG 27 2012

DEPARTMENT OF CORRECTIONS
BUREAU OF INMATE GRIEVANCES

TO: ☐ Warden   ☐ Assistant Warden   ☒ Secretary, Florida Department of Corrections

From: Walker, Romeen L.   108533   Gulf C.I. Annex
    Last  First  Middle Initial    Number      Institution

Part A – Inmate Grievance    1210 21024

Dear Sir,

On July 24, 2012 I filed a appeal of the disciplinary teams finding of guilt on the attend DR I received for verbal disrespect. The appeal was denied but the grounds for the denial do not dispute the claims made on my appeal. In denying my appeal the Warden's office found that my argument as to the timeliness of the investigation is disputed because of the investigation beginning at 1030 hours on 7-18-07, but does not say how the investigation began. This does not dispute my argument which also showed that the investigator received the DR at 1030 hours on 7-18-12 but did not interview me until or the writing officer until 7-20-12 rendering the investigation untimely.

Also, I showed that the only other evidence was the video which was never viewed by the DR team and a statement from Carlos Anderson. Because there was no evidence substantiating or disputing my claims on the video and because Carlos Anderson wrote that the claims made in the DR never happened, I argued that the team could not have considered the evidence produced during the investigation. Yet the Warden's office ignored these claims by simply stating the evidence was considered but provided no reason as to why the DR team didn't view the video themselves or why they believed the sgt over all other evidence.

Because the denial of my appeal does not dispute arguments made on my appeal I am requesting that the team findings be reversed

8-20-12
DATE

Romeen A. Walker 108533
SIGNATURE OF GRIEVANT AND D.C. #

*BY SIGNATURE, INMATE AGREES TO THE FOLLOWING # OF 30-DAY EXTENSIONS:

O  Romeen A. Walker
#      Signature

INSTRUCTIONS

This form is used for filing a formal grievance at the institution or facility level as well as for filing appeals to the Office of the Secretary in accordance with Rule 33-103, Florida Administrative Code. When an appeal is made to the Secretary, a copy of the initial response to the grievance must be attached (except as stated below).

When the inmate feels that he may be adversely affected by the submission of a grievance at the institutional level because of the sensitive nature of the grievance, or is entitled by Chapter 33-103 to file a direct grievance he may address his grievance directly to the Secretary's Office. The grievance may be sealed in the envelope by the inmate and processed postage free through routine institutional channels. The inmate must indicate a valid reason for not initially bringing his grievance to the attention of the institution. If the inmate does not provide a valid reason or if the Secretary or his designated representative feels that the reason supplied is not adequate, the grievance will be returned to the inmate for processing at the institutional level.

DR 05-A  150

Receipt for Appeals Being Forwarded to Central Office

Submitted by the inmate on: _____   Institutional Mailing Log #: _____
      (Date)

(Received By)
7/8/12   (1-4)
    A92

DISTRIBUTION:   INSTITUTION/FACILITY      CENTRAL OFFICE
            INMATE (2 Copies)            INMATE
            INMATE'S FILE              INMATE'S FILE - INSTITUTION/FACILITY
            INSTITUTIONAL GRIEVANCE FILE    CENTRAL OFFICE INMATE FILE
                                  CENTRAL OFFICE GRIEVANCE FILE

DC1-303 (Effective 2/05)          Incorporated by Reference in Rule 33-103.019, F.A.C.   1207-150-0216

STATE OF FLORIDA
DEPARTMENT OF CORRECTIONS

JUL 26 2012

**REQUEST FOR ADMINISTRATIVE REMEDY OR APPEAL**   PROGRAMS
GULF C.I.

TO: ☒ Warden      ☐ Assistant Warden      ☐ Secretary, Florida Department of Corrections

From: Walker, Rosemario L.    108533    Gulf C.I. Annex
    Last  First  Middle Initial    Number      Institution

1202-150-086

---

**Part A – Inmate Grievance**

I would like to appeal the D.R. hearings finding in D.R. Log # 150-120727.

1. First, the DR was written on 7-17-12 at 1310. It was served on me at 9:45 A.M. on 7-20-12 and Sgt. Stephens (according to investigative report) was interviewed during the 1300 hours on 7-20-12. Upon being informed of this by Ms. Jackson, I moved for dismissal because the investigation was not timely begun within 24 hours. To this, the hearing team (Ms. Jackson and Lt. McCrimon) informed me that the investigation begins when the investigator received the D.R., and not when he actually began interviewing people. I was told that the investigator received the D.R. during the 1000 hours on 7-18-12 and therefore the investigation was considered commenced within 24 hours.

2. Witness Carlos Anderson testified that "this never took place" when he was asked to give a statement by the investigator. I also called the video as evidence, but the investigator did not find anything on the video to support either my or Sgt. Stephens statement. In finding me guilty, the team found that their decision was based on the Sgt's written report and the investigation (because it has been brought to their attention that a finding of guilty cannot rely solely on the written report when there are witnesses and evidence presented) when asked how the investigation cited above supported their conclusion, the hearing team found that even though the video does not support the Sgt's statement, it does not support mine either. And when questioned re-garding the witness statement, the DR team claimed they did not know whether the witness was stating the incident reported in D.R. never took place or my written statement, even though I pointed out the witness could not have been referring to my statement since it was written after witness's and never shown or read to him. Anderson was present had they desired to speak to him. The video evidence was not viewed by any of the DR Team members.

7-24-12                                      [signature]
DATE                                         SIGNATURE OF GRIEVANT AND D.C. #

---

*BY SIGNATURE, INMATE AGREES TO THE FOLLOWING # OF 30-DAY EXTENSIONS:     0   [signature]
                                                                   #      Signature

**INSTRUCTIONS**

This form is used for filing a formal grievance at the institution or facility level as well as for filing appeals to the Office of the Secretary in accordance with Rule 33-10 Florida Administrative Code. When an appeal is made to the Secretary, a copy of the initial response to the grievance must be attached (except as stated below).

When the inmate feels that he may be adversely affected by the submission of a grievance at the institutional level because of the sensitive nature of the grievance, or entitled by Chapter 33-103 to file a direct grievance he may address his grievance directly to the Secretary's Office.  The grievance may be sealed in the envelope by the inmate and processed postage free through routine institutional channels.  The inmate must indicate a valid reason for not initially bringing his grievance to the attention of the institution.  If the inmate does not provide a valid reason or if the Secretary or his designated representative feels that the reason supplied is not adequate, the grievance will be returned to the inmate for processing at the institutional level.

**Receipt for Appeals Being Forwarded to Central Office**

Submitted by the inmate on: _____   Institutional Mailing Log #: _____
             (Date)                                                      (Received by)

| DISTRIBUTION: | INSTITUTION/FACILITY | CENTRAL OFFICE | |
|---|---|---|---|
| | INMATE (2 Copies) | INMATE | A93 |
| | INMATE'S FILE | INMATE'S FILE - INSTITUTION/FACILITY | |
| | INSTITUTIONAL GRIEVANCE FILE | CENTRAL OFFICE INMATE FILE | |
| | | CENTRAL OFFICE GRIEVANCE FILE | |

DC1-303 (Effective 2/05)            Incorporated by Reference in Rule 33-103.019, F.A.C.

1202-150-086

**PART B - RESPONSE**

| WALKER, ROMERIO | 108533 | 1207-150-026 | GULF C.I.- ANNEX | P2208L |
|---|---|---|---|---|
| INMATE | NUMBER | GRIEVANCE LOG NUMBER | CURRENT INMATE LOCATION | HOUSING LOCATION |

Your request for administrative remedy or appeal has been received, evaluated and responded to as follows:

You are grieving the disciplinary report your received for the violation (1-4) Disrespect of Official. Ms. Jackson and Lt. McComas were interviewed and advised that you were not informed that the investigation of your disciplinary report began with the investigating officer receiving the disciplinary report. Your disciplinary report was written on 7/17/2012 at 1300 hours. The investigation began on 7/18/2012 at 1030 hours. The hearing team found you guilty based on Sergeant Stephens written report and the information furnished through the investigation. You listed inmate Anderson, Carlos #T54612 as a witness and he provided a statement. It was taken into consideration by the team in establishing their findings of guilt. You also listed the video surveillance as evidence. The video tape was reviewed and it was concluded that based upon the review of the identified tape or the capabilities of the particular taping equipment, the tape requested does not provide evidence to support your statements. You have failed to offer any new or additional information that would cause for a reversal of the team's decision.

Based on the above information your grievance is denied.

You may obtain further administrative review of your complaint by obtaining Form DC1-303, Request for Administrative Remedy or Appeal, completing the form, providing attachments as required by 33-103.007(3) (a) and (b), and forwarding your complaint to the Bureau of Inmate Grievance Appeals, 501 South Calhoun Street, Tallahassee, Florida 32399-2500.

J. D. Sloan, Assistant Warden

C. Halley, Warden

| SIGNATURE AND TYPED OR PRINTED NAME OF EMPLOYEE RESPONDING | SIGNATURE OF WARDEN, ASST. WARDEN, OR SECRETARY'S REPRESENTATIVE | 8/15/12 DATE |
|---|---|---|

COPY DISTRIBUTION -INSTITUTION / FACILITY
(2 Copies) Inmate
(1 Copy) Inmate's File
(1 Copy) Retained by Official Responding

COPY DISTRIBUTION - CENTRAL OFFICE
(1 Copy) Inmate
(1 Copy) Inmate's File - Inst./Facility
(1 Copy) C.O. Inmate File
(1 Copy) Retained by Official Responding

A94

MAILED/FILED
WITH AGENCY CLERK

SEP 1 4 2012

Department of Corrections
Bureau of Inmate Grievance Appeals

**PART B - RESPONSE**

| WALKER, ROMERIO | 108533 | 12-6-27024 | GULF C.I.- ANNEX | P2208L |
|---|---|---|---|---|
| INMATE | NUMBER | GRIEVANCE LOG NUMBER | CURRENT INMATE LOCATION | HOUSING LOCATION |

Your administrative appeal has been reviewed and evaluated. The response that you received at the institutional level has been reviewed and is found to appropriately address the concerns that you raised at the institutional level as well as the Central Office level.

The Team did not simply state that you were found guilty, "Based on the officer's statement." The Team went on to cite the specific details as reflected by the eye-witnessing reporting officer. This is in compliance with Departmental Rule 33-601, Inmate Discipline.

Your administrative appeal is denied.

J. Moore

| SIGNATURE AND TYPED OR PRINTED NAME OF EMPLOYEE RESPONDING | SIGNATURE OF WARDEN, ASST. WARDEN, OR SECRETARY'S REPRESENTATIVE | DATE |
|---|---|---|

COPY DISTRIBUTION -INSTITUTION / FACILITY

(2 Copies) Inmate

(1 Copy) Inmate's File

(1 Copy) Retained by Official Responding

COPY DISTRIBUTION - CENTRAL OFFICE

(1 Copy) Inmate

(1 Copy) Inmate's File - Inst./Facility

(1 Copy) C.O. Inmate File

(1 Copy) Retained by Official Responding

A 95

While doing cell clean up officer Richards came to door and ask was we done cleaning our Room and stated that I know these rooms our dirty and that the Room haven't been clean for a long time and my Roommate Romeiro Walker DC# _____ stated that I know I can't write y'all up so I got to sit back and wear it and officer Richards stated I'm glad we had that agreement because if you write us up we set you up It's a No win situation.

September 2, 2012                    Carlos Anderson
                                     DC# T5460

    On September 2, 2012, sometime after dinner and trays had been picked up, Officer Richards and the run around (orderly) came around with cleaning supplies. When I finished cleaning my cell officer Richards asked if I was done and when I replied Yes he asked if I wanted him to spray my food flap so I could wipe it down from inside I said yes. When I finished he asked was the rag I used mine or his and I said it was "mine, but if I knew the flap was that dirty I would have used Ya'll's." Richards replied that the rooms were so so dirty because they hadn't been cleaned in forever. I stated "Yeah. But you know I couldn't say anything. I agreed not to do anymore write-ups." Richards stated "I'm glad we come to that agreement. It was you write us up and then we set you up. It was a no win situation." When he left I told my roommate "why he had to go and say all that. You know I need you to write it down." A-96
                                     Romeio A. Walker



Hasler
10/11/2012
US POSTAGE  $05.60⁰
ZIP 32465
011D11631232

Hasler
10/15/2012
US POSTAGE  $00.05⁰
ZIP 32465
011D11631232

FROM A
RECTIONAL
UTION

LEGAL MAIL

ROMERio L. Welker
DC # 108533  01-207C
Gulf C.I. Annex
699 Ike Steele Road
Weiwahitchka, Fl. 32465

U.S. District Court
Clerk office
1 North Palafox St.
Pensacola, Florida 32502